UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE SANDS,

                              Plaintiff,                    1:17-cv-09215 (LAK)

        - against –

                                                           ECF Case
BAUER MEDIA GROUP USA, LLC


                              Defendant.


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY AGAINST DEFENDANT FOR
COPYRIGHT INFRINGEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ......................................................................... 1

UNCONTROVERTED FACTS ......................................................................... 3

ARGUMENT ……………………………………………………………………..6


POINT I:  PLAINTIFF READILY ESTABLISHES HIS INFRINGEMENT CLAIM ........ 6

   A.  PLAINTIFF OWNS VALID COPYRIGHTS ............................................................ 6

   B.  DEFENDANT COPIED SANDS' WORK WITHOUT AUTHORIZATION....................................... 7


POINT II:  THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW ......................... 8

   A.  THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE................................................. 9

     (1)  *Defendant's Secondary Use is Not Transformative*...................................................... 9

      (a)  The Newsworthiness of the Photographs is Not Dispositive .................................... 9

      (b)  The Photographs Here Are Not Themselves "the Subject of the Story" ................. 11

      (c)  Defendant Has Not Transformed the Original Intended Use of the Photographs; Nor Altered Their Meaning ........................................................................ 12

     (2)  *Defendant's Use is Commercial Rather Than Non-Profit* .......................................... 13

   B.  THE SECOND FACTOR WEIGHS AGAINST FAIR USE BECAUSE THE PHOTOGRAPHS ARE CREATIVE IN NATURE ........................................................................ 14

   C.  THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT UNNECESSARILY PUBLISHED FULL-COLOR REPRODUCTIONS OF THE IMAGES ............................................ 14

   D.  THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET .................................. 16

     (1)  *Defendant's Secondary Use Functioned As An Actual Market Replacement*.............. 16

     (2)  *Defendant's Secondary Use Curtailed the Potential Market for the Copyright* .......... 17

**POINT III:    THE FIRST AMENDMENT DEFENSE SHOULD BE DISMISSED AS LEGALLY INCOGNIZABLE AND DUPLICATIVE** .................................. **18**

**POINT IV:    DEFENDANT'S LICENSE DEFENSES SHOULD BE DISMISSED** .......... **19**

    A.   THERE IS NO EVIDENCE ON RECORD TO SUPPORT AN EXPRESS LICENSE THEORY ............ 19

    B.   THERE IS NO EVIDENCE ON RECORD TO SUPPORT AN IMPLIED LICENSE THEORY ............ 20

    C.   DEFENDANT'S THEORY OF A SUB-LICENSE BASED ON MS. RATAJKOWSKI'S INSTAGRAM ACCOUNT IS FACTUALLY GROUNDLESS AND LEGALLY MERITLESS ................................. 21

    D.   THERE IS NO EVIDENCE TO SUPPORT THE DEFENSE OF RELEASE ..................................... 21

**POINT V:    DEFENDANT'S CHALLENGES TO THE VALIDITY OF SANDS' COPYRIGHTS (DEFENSES # 2-5) SHOULD BE DISMISSED** .................. **22**

**POINT VI:    DEFENDANT'S BOILERPLATE DEFENSES SHOULD BE DISMISSED** **22**

CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*ABKCO Music, Inc. v. Sagan*,
    No. 15 CIV. 4025 (ER), 2018 WL 1746564, at *18 (S.D.N.Y. Apr. 9, 2018) ....................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ..................................................................................... 24

*Associated Press v. Meltwater U.S. Holdings*,
    931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) .....................................................passim

*Balsley v. LFP, Inc.*,
    691 F.3d 747, 761 (6th Cir.2012) ....................................................................... 16

*Barcroft Media, Ltd. v. Coed Media Group, LLC*,
    No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. 2017) ..........................10, 11

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2017 WL 5032993, at
    *6 (S.D.N.Y. Nov. 2, 2017) ............................................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ..................................................................................... 24

*Blanch v. Koons*,
    467 F.3d 244, 251 (2d Cir. 2006) ..............................................................9, 13, 14

*Bourne v. Walt Disney Co.*,
    68 F.3d 621, 631 (2d Cir.1995) ........................................................................... 19

*Broadcast Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*,
    746 F. Supp. 320, 329 (S.D.N.Y. 1990) ............................................................. 24

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
    196 F. Supp. 3d 395, 406 n.6 (S.D.N.Y. 2016) ..............................................passim

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
    902 F.2d 829, 845 (11th Cir.1990) ..................................................................... 18

*Campbell v. Acuff– Rose Music, Inc.*,
    510 U.S. 569, 579 (1994) ..............................................................................passim

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
    372 F.3d 471, 482 (2d Cir. 2004) ....................................................................... 22

**CASES (continued…)**

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
   150 F.3d 132, 137 (2d Cir. 1998)..........................................................6, 7, 8

*DeCarlo v. Archie Comic Publ'ns, Inc.,*
   127 F.Supp.2d 497, 509 (S.D.N.Y.2001) ............................................ 23

*Design Options Inc. v. BellePointe, Inc.,*
   940 F.Supp. 86, 92 (S.D.N.Y 1996).................................................... 20

*Eclaire Advisor Ltd. v. Daewoo Engineering Co.,*
   375 F.Supp.2d 257, 260 (S.D.N.Y. 2005) .......................................... 24

*Eldred v. Ashcroft,*
   537 U.S. 186, 190 (2003) ................................................................... 19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340, 361 (1991)...................................................................... 6

*Fitzgerald v. CBS Broad., Inc.,*
   491 F.Supp.2d 177, 185 (D.Mass.2007).........................................12, 17

*Fonar Corp. v. Domenick,*
   105 F.3d 99, 105 (2d Cir. 1997)............................................................ 7

*Goodman v. Universal Beauty,*
   17-cv-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. March 9, 2018) ............................... 7

*Graham v. James,*
   144 F.3d 229, 236 (2d Cir. 1998).......................................................... 19

*Great Minds v. Fedex Office & Print Servs., Inc.,*
   886 F.3d 91, 94 (2d Cir. 2018)............................................................. 19

*Harper & Row v. Nation Enterprises,*
   471 U.S. 539, 560 (1985).................................................................passim

*In re Zeman,*
   No. 09-52559-C, 2010 WL 3123144, at *1 (Bankr. W.D. Tex. Aug. 6, 2010)...................... 22

*Infinity Broadcast Corp. v. Kirkwood,*
   150 F.3d 104, 108 & n. 2 (2d Cir. 1998) .........................................12, 15

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
   413 F.3d 257 (2d Cir. 2005).................................................................. 6

**CASES (continued…)**

*Kienitz v. Sconnie Nation LLC*,
   766 F.3d 756, 759 (7th Cir. 2014) ........................................................ 15

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446, 464, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010) ........................................... 25

*Konangataa v. Am. Broadcasting Companies, Inc.*,
   No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ..................... 11

*L.A. Printex Industries, Inc. v. G&G Multitex, Inc.*,
   No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13, 2010) .................... 21

*Lipton v. Nature Co.*,
   71 F.3d 464, 471 (2d Cir. 1995) ........................................................ 6

*Miller v. Glenn Miller Productions, Inc.*,
   454 F.3d 975, 988 (9th Cir. 2006) ........................................................ 21

*Monge v. Maya Magazine, Inc.*,
   688 F.3d 1164, 1170 (9th Cir. 2012) ........................................................ 8

*Monster Communications, Inc. v. Turner Broadcasting*,
   935 F.Supp. 490, 494 (S.D.N.Y. 1996) ........................................................ 14

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295, 307 (3d Cir. 2011) ........................................................ 10, 11

*New Era Publications Intern., ApS v. Henry Holt and Co., Inc.*,
   873 F.2d 576, 584 (2d Cir. 1989) ........................................................ 19

*Nunez v. Caribbean Int'l News Corp.*,
   235 F.3d 18, 25 (1st Cir. 2000) ........................................................ 11

*NXIVM Corp. v. Ross Inst.*,
   364 F.3d 471, 478 (2d Cir. 2004) ........................................................ 9, 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. __, 134 S.Ct. 1962, 1974 (May 19, 2014) ........................................................ 23

*Psihoyos v. National Examiner*,
   No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ........................ passim

*Psihoyos v. Pearson Educ., Inc.*,
   855 F. Supp. 2d 103, 124 (S.D.N.Y. 2012) ........................................................ 20

**CASES (continued…)**

*Republic of Ecuador v. Chevron Corp.,*
   638 F.3d 384, 400 (2d Cir.2011)..................................................................... 23

*Richard Feiner & Co., Inc. v. H.R. Industries, Inc.,*
   10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) ......................................................... 13

*Ringgold v. Black Entertainment Television, Inc.,*
   126 F.3d 70, 79 (2d Cir. 1997)....................................................................9, 16

*Rogers v. Koons,*
   960 F.2d 301, 307 (2d Cir. 1992)................................................................6, 15

*Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.,*
   672 F.2d 1095, 1099 (2d Cir.), *cert. denied*, 459 U.S. 826, (1982) ...................... 19

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.,*
   489 F.3d 474, 481 (2d Cir.2007)..................................................................... 18

*Scholz Design, Inc. v. Sard Custom Homes, LLC,*
   691 F.3d 182, 186 (2d Cir. 2012) ..................................................................... 6

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,*
   642 F.Supp.2d 167, 194 (S.D.N.Y.2009) ......................................................... 23

*Sony Corp. of America v. Universal City Studios, Inc.,*
   464 U.S. 417, 450 (1984)................................................................................ 17

*State of New York v. United Parcel Serv., Inc.,*
   160 F. Supp. 3d 629, 646 (S.D.N.Y. 2016......................................................... 24

*Stewart v. Abend,*
   495 U.S. 207 (1990) ........................................................................................ 8

*Swatch Group Management Services Ltd. v. Bloomberg L.P.,*
   756 F.3d 73, 85 (2d Cir. 2014)........................................................................ 10

*Torain v. Clear Channel Broad., Inc.,*
   651 F. Supp. 2d 125, 145 (S.D.N.Y. 2009) ....................................................... 22

*Whimsicality, Inc. v. Rubie's Costume Co., Inc.,*
   891 F.3d 452, 455 (2d Cir. 1989)...................................................................... 7

## STATUTES

17 U.S.C. § 106 ................................................................................................ 18

17 U.S.C. § 107 .................................................................................................. 8

17 U.S.C. § 107(1) ............................................................................................. 9

17 U.S.C. § 107(2) ........................................................................................... 14

17 U.S.C. § 107(3) ........................................................................................... 14

17 U.S.C. § 107(4). .......................................................................................... 16

17 U.S.C. § 410(c) ............................................................................................. 6

## RULES

FED.R.EVID. 406 ................................................................................................. 7

## PRELIMINARY STATEMENT

This is a willful copyright infringement action involving a media company's unauthorized use of copyrighted photographs depicting fashion model Emily Ratajkowski (the "Photographs"). Plaintiff Steven Sands ("Plaintiff" or "Sands") is a professional photographer with over 40 years working in the business of licensing his work. Defendant Bauer Media Group, LLC ("Defendant" or "Bauer") is a largescale news publisher who expropriated the Photographs to display as eye-candy on its commercial website. Defendant primarily argues that its unauthorized use is non-infringing on grounds that commercial exploitation of scantily-clad fashion models constitutes "fair use" news reporting.

The two elements of Plaintiff's infringement action, namely: (1) ownership of a valid copyright; and (2) actual copying can be readily adjudicated on summary judgment as no genuine issue of fact remains for trial on these issues.

With respect to copyright ownership, Plaintiff has produced three sworn declarations and supporting documentation to prove Sands' copyright ownership, including a timely registration certificate which is accorded the statutory presumption of validity. Sands also produced certified deposit copies issued by the Copyright Office showing that the Photographs are on deposit with the applicable registration. Defendant, on its part, has produced no evidence whatsoever to rebut the presumption of validity.[1] With respect to actual copying, Defendant admitted in its Answer that it copied the Photographs for use on Bauer's website. Sands never granted Bauer authorization to do so. Accordingly, the two elements of Plaintiff's claim are satisfied.

Defendant has interposed a laundry list of boilerplate defenses which it refuses to withdraw, even though none of these defenses has evidentiary support.

---

[1] Indeed, Defendant did not produce any documents in response to Plaintiff's document demands and did not bother to take any depositions.

1

With respect to Bauer's primary defense of fair use, there is no transformative effect when the secondary user republishes the Photographs for the exact same purpose they were originally created: news reporting.  Further, Defendant used Plaintiff's images to merely illustrate a news story about the subject matter depicted in the works and did nothing to alter the Photographs' meaning.  There is no public controversy surrounding the very existence of the images, as was the case in *Konangataa*.  Defendant's use also usurped a fully functioning licensing market given that Plaintiff licensed the Photographs to third-party stock photo agencies months before the infringing conduct occurred.  As such, both the fair use defense and Bauer's First Amendment defense should be dismissed.

Bauer's license defenses, whether based on a theory of express license, implied license, or sub-license, lack evidentiary support.  There is no contract on the record to support an express license theory.  The implied license theory is meritless given that Bauer never asked Sands to create the Photographs and Sands never delivered the Photographs directly to Bauer.  And any sub-license theory predicated on Ms. Ratajkowski's posting of the Photographs to her own Instagram account fails.  Sands never licensed the Photographs to Ratajkowski and, even if he had, no sub-license could be established absent Sands' express permission.

The defenses to Sands' claim of copyright ownership fail, particularly given that Bauer has no evidence to rebut the statutory presumption of validity.

Finally, Bauer's remaining defenses are boilerplate "throw-away" defenses which should have been withdrawn by Bauer prior to this submission.  These include waiver, estoppel, release, unclean hands, justification, laches, *in pari delicto*, plaintiff's knowledge, representations or conduct.  There is not a scintilla of evidence of support such defenses, particularly given that there was no communication between Sands and Bauer prior to the filing of this lawsuit.

## UNCONTROVERTED FACTS

**Plaintiff Steve Sands**

Sands is a professional photographer who has been in the business of licensing his photographs for over 40 years. [56.1,[2] ¶ 1-2]

**Defendant Bauer Media Group, LLC**

Bauer is a largescale, for-profit media company which manages a portfolio of more than 600 magazines, over 400 digital products and 100 radio and TV stations around the world.  [56.1, ¶¶ 3, 5] Bauer is in the publishing industry and disseminates news content. [56.1, ¶¶ 6-7]  Bauer owns and operates the website www.fhm.com (the "Website"). [56.1, ¶ 8]

**The Photographs of Emily Ratajkowski – January 20, 2017**

On or about January 20, 2017, Sands photographed a fashion model named Emily Ratajkowski in public view (the "Photographs"). [56.1, ¶ 9]. At the time the Photographs were taken, Ms. Ratajkowski was filming an advertisement for fashion brand DKNY.  [56.1, ¶ 10] Sands was <u>not</u> hired or commissioned by any person or any entity (including DKNY) to photograph Ms. Ratajkowski, who was in public view at the time Sands photographed her. [56.1, ¶ 11]. Sands created the Photographs for the purpose of licensing to news outlets and media organizations. [56.1, ¶ 14]

**Sands' Professional Licensing of the Photographs – January 20, 2017**

On or about January 20, 2017, Sands licensed the Photographs to third-party stock photography agency Getty Images. [56.1, ¶ 16].  On that same day, Sands also licensed one of the photographs of Ms. Ratajkowski walking a dog to Matrix Pictures, a third-party stock photography agency.  [56.1, ¶ 17]. Aside from Getty Images and Matrix Pictures, Sands did not

---

[2] "56.1" shall refer to Plaintiff's Statement Pursuant to Local Rule 56.1, filed concurrently herewith.

license the Photographs to any other news outlet or media organization.  [56.1, ¶ 18]  Sands

never licensed the Photographs to Emily Ratajkowski; nor has Sands ever personally

communicated with Ms. Ratajkowski. [56.1, ¶ 19]  Sands never granted Ms. Ratajkowski

permission to display the Photographs on her personal Instagram page nor any other social media

account. [56.1, ¶ 20]  Sands never granted DKNY permission to distribute the Photographs as

part of its commercial advertising campaign (nor did DKNY ever attempt to secure Sands'

permission).  [56.1, ¶ 21]

**Defendant's Re-Publication of the Photographs – March 13, 2017**

On or about March 13, 2017, Defendant published an article on its website, entitled *Emily*

*Ratajkowski: New DKNY Ad is Just Her Walking a Dog in Lingerie* at the URL

http://www.fhm com/posts/the-sexy-dkny-commercial-of-emily-ratajkowski-walking-a-dog-in-

lingerie-has-finally-been-released-127635/photos/emily-ratajkowski-instagram-239926

(the "Bauer Article").  [56.1, ¶ 22]  As part of the Bauer Article, Defendant prominently

displayed the Photographs on the Website and therefore engaged in actual copying.  [56.1, ¶¶

23-24]  Commercial advertisements are visible on the face of the Bauer Article in which the

Photographs are prominently displayed.  [56.1, ¶ 25]  On the face of the Bauer Article, Sands

was <u>not</u> credited as the author of the Photographs.  [56.1, ¶ 26]

**Defendant's Lack of Authorization**

Defendant did not seek Sands' permission to publish the Photographs; nor did Sands

grant Defendant authorization to copy the Photographs or distribute copies of his registered work

to the public. [56.1, ¶¶ 27-28]

**Absence of Communication Between Plaintiff and Defendant**

Prior to Defendant's publication of the Photographs, there was no communication between Sands and Defendant. [56.1, ¶ 29]  Before this lawsuit was filed, there was no communication between Sands and Defendant. [56.1, ¶ 30]  At no time prior to the institution of this lawsuit did Sands ever make any representations of any kind to Defendant.  [56.1, ¶ 31]

**Registration of the Photographs – March 27, 2017**

Plaintiff's counsel in this action, Liebowitz Law Firm, PLLC (the "Firm"), follows a routine practice of registering photographs with the U.S. Copyright Office (the "USCO") on behalf of the Firm's clients.  [56.1, ¶ 32]  The Firm routinely registers photographs with the USCO on behalf of Sands. [56.1, ¶ 33]  Sands authorized the Firm to register the Photographs with the USCO on Sands' behalf.  [56.1, ¶ 34]

On or about March 27, 2017, the Firm registered the Photographs with the USCO by filing an application and depositing the Photographs with the USCO as part of that application. [56.1, ¶ 35]  Sands is in possession of a registration certificate for the Photographs, bearing number VA # 2-036-401, with effective date March 27, 2017 (the "401 Registration") [56.1, ¶ 36]  According to the USCO's official certified records, the Photographs bearing content titles "632197004.jpg" and "632192064.jpg", which are the photographs at issue here, are on deposit with the 401 Registration.  [56.1, ¶ 39]  Sands obtained the 401 Registration on March 27, 2017, within five years after first publication of the Photographs.  [56.1, ¶ 40]  The registration of the Photographs was carried out in accordance with the Firm's routine practice.  [56.1, ¶ 41]

**Defendant's Refusal to Take Down the Photographs**

Subsequent to filing this lawsuit, Defendant failed to remove the Photographs from the Bauer Article as first published on the www.fhm.com website and therefore remain on Bauer's website as of the filing date of the instant motion.  [Sands Declr., ¶ 42]

## ARGUMENT

On summary judgment, the Court may determine liability against a defendant on plaintiff's copyright infringement claim.  *See, e.g., Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir. 1992).

## POINT I:  PLAINTIFF READILY ESTABLISHES HIS INFRINGEMENT CLAIM

To establish a claim of copyright infringement, plaintiff must show two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *see also Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998) ("Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying.") (citation omitted).

### A.    PLAINTIFF OWNS VALID COPYRIGHTS

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the certificate holder's copyright ownership, as well as of the truth of the facts stated in the registration."  *BWP Media USA, Inc. v. Gossip Cop Media, Inc.,* 196 F.Supp.3d 395, 401 (S.D.N.Y. 2016) (*citing* 17 U.S.C. § 410(c)).  A certificate of copyright registration is *prima facie* evidence of both valid ownership of copyright and originality.  *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).  To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005).

Here, Sands is in possession of a certificate of registration from the USCO.  [56.1, ¶ 36] The Photographs are on deposit with the 401 Registration.  [56.1, ¶¶ 37-39]  The registration of the Photographs was carried out in accordance with the Firm's routine practice of registering

photographs on behalf of its clients.  [56.1, ¶ 41]  *Accord* FED.R.EVID. 406 (evidence showing "an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice."); *BWP Media*, 196 F.Supp.3d at 403.  Further, Richard P. Liebowitz, a lawyer whose name appears on the face of the 401 Registration, swears that the Photographs are on deposit with the USCO.  [56.1, ¶ 39]  *See Goodman v. Universal Beauty*, 17-cv-1716 (KBF), 2018 WL 1274855, at \*5 (S.D.N.Y. March 9, 2018) (finding on summary judgment that, in the absence of any contrary evidence, Liebowitz's sworn declaration was sufficient to show that photograph was on deposit with registration).

The 401 Registration was obtained within five years after first publication of the work.  [56.1, ¶ 40]  Accordingly, the 401 Registration serves as *prima facie* evidence of Sands' valid copyright ownership.  *Whimsicality, Inc.*, 891 F.2d at 455.  "The validity of a registration may be rebutted by proof of a certificate holder's fraud on the Copyright Office, though the party seeking to establish such fraud bears a 'heavy burden.'" *BWP Media*, 196 F.Supp.3d at 401 (citation omitted); *see also Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997) (*"the presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation.'"*).

Here, Defendant has failed to produce any evidence showing that Sands defrauded the USCO.  Accordingly, there are no genuine issues of material fact which would preclude the granting of summary judgment on the element of Sands' copyright ownership.

## B.    DEFENDANT COPIED SANDS' WORK WITHOUT AUTHORIZATION

To satisfy the second element of an infringement claim, a plaintiff must show both that his work was "actually copied" and that the portion copied amounts to an "improper or unlawful appropriation." *Castle Rock,* 150 F.3d at 137 (citations omitted).

Here, there is no factual dispute concerning whether Defendant "actually copied" the Photographs.  In its Answer to the Complaint, Defendant admits that the Photographs are displayed on the Website in connection with the Bauer Article.  [Answer, Dkt. #10, ¶ 11] Further, Defendant did not obtain Plaintiff's permission to publish the Photographs [56.1, ¶ 27]; and Sands never granted Defendant authorization to copy the Photographs.  [56.1, ¶ 28]  As such, Defendant violated Sands' exclusive rights under section 106 of the Copyright Act because its actual copying amounted to "an improper and unlawful appropriation." *Castle Rock,* 150 F.3d at 137.  In sum, there is no genuine issues of material fact concerning the two elements of Sands' copyright infringement claim.

**POINT II:**    **THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW**

Defendant interposes the privilege of fair use.  [Answer, Dkt. #10, 11th Defense].  Fair use is an affirmative defense that "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair." *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).  A court "may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560 (1985).  Thus, the Court may grant summary judgment dismissing the fair use defense. *See, e.g.*, *Stewart v. Abend*, 495 U.S. 207 (1990); *Castle Rock*, 150 F.3d at 137.

Section 107 of the Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use.  These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.  As set forth below,

examination of these factors demonstrates that Defendant's use of the Photographs does <u>not</u> constitute fair use.

## A.    THE <u>FIRST FACTOR</u> WEIGHS HEAVILY AGAINST FAIR USE

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  Courts within the Second Circuit examine two sub-factors to determine the purpose and character of use, including whether the secondary use is: (1) transformative; and (2) for commercial purposes.  *See NXIVM Corp. v. Ross Inst.,* 364 F.3d 471, 478 (2d Cir. 2004).

### (1)    Defendant's Secondary Use is NOT Transformative

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts." *See Campbell v. Acuff– Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  The central purpose of the inquiry is to determine whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) (citations omitted).

As demonstrated below, Defendant's use was not transformative because Defendant did not comment on any public controversy surrounding the images themselves; Defendant used the images for the exact same purpose they were created (i.e., news reporting); and Defendant did nothing to alter the message behind the Photographs.

### (a) The Newsworthiness of the Photographs Is <u>Not</u> Dispositive

Defendant argues that its use of the Photographs is fair because they were contained within a news report about Emily Ratajkowski's ad campaign with DKNY.  The preamble to the

fair use statute does list "news reporting" as an illustrative basis supporting fair use under this factor. 17 U.S.C. § 107.  However, as per the Supreme Court, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work]." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 557 (1985); *see also Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014) ("A news organization thus may not freely copy creative expression solely because the expression itself is newsworthy."); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts."); *Psihoyos v. National Examiner*, No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ("The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it.").

In *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017), Judge Furman explained that the preferential treatment accorded to "news reporting" under the preamble to Section 107 only applies to news reporting of the copyrighted work itself; <u>not</u> news reporting about the subject matter depicted in the image. *Barcroft,* 2017 WL 5032993 at *6 ("CMG is correct in noting that the preamble of Section 107 carves out categories of reproduction that are likely to constitute fair use, but it is incorrect in asserting that its use of the Images fell within one of those categories. Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*.") (italics added); *accord BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 406 n.6 (S.D.N.Y. 2016) ("Defendant confuses the situation in which the photograph is the story . . . and the scenario present here, in which

10

the contents of the photograph are of some public interest . . . ).

    *(b)*    ***The Photographs Here Are <u>Not</u> Themselves "the Subject of the Story"***

In the context of news reporting, a photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft Media*, 2017 WL 5032993, at *6. Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph." *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photograph of Miss Puerto Rico Universe was published by newspaper to comment on the controversy surrounding her qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ("Defendants and other news outlets reported on the Video [of a woman giving birth] and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal.")); *see also Murphy,* 650 F.3d at 307 ("[H]ad the [i]mage itself become controversial due to its 'salacious' content, it would likely have been fair use for a newspaper to reproduce it to accompany an article about the controversy").

In contrast, no transformation exists where the image is merely used "as [an] illustrative aid[]" to depict the subjects described in the news article. *See, e.g.*, *Barcroft Media,* 2017 WL 5032993, at *6 ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law."); *BWP Media*, 196 F.Supp. at 404-405 (not

transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .); *Psihoyos*, 1998 WL 336655, *3 (defendant's "use is not transformative, because its piece uses the photo to show what it depicts.")

Here, like the cases in *Barcroft*, *BWP Media* and *Psihoyos* where fair use was rejected, Defendant used the Photographs to merely illustrate a news story about Ms. Ratajkowski, who is the subject matter depicted in the images. Unlike the cases in *Nunez* and *Konangataa,* where there was public controversy surrounding the very existence of the images themselves, Defendant failed to offer any commentary directed at the Photographs. Accordingly, there can be no transformative effect.

### (c)  Defendant Has <u>Not</u> Transformed the Original Intended Use of the Photographs; Nor Altered Their Meaning

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)). A secondary use has "no transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media,* 2017 WL 5032993, at *6; *see also Fitzgerald v. CBS Broad., Inc.*, 491 F.Supp.2d 177, 185 (D.Mass.2007) (finding a news outlet's use of a photojournalist's image of an arrest for the purpose of reporting on that arrest not transformative, as it used the photograph for the precise reason it was created); *Murphy*, 650 F.3d at 306 (rejecting fair use where there was "no meaningful distinction between the purpose and character" of the photographer's original use and the infringer's use of reporting news); *Psihoyos,* 1998 WL 336655 at *3

12

(rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created").

Here, the Photographs depict Ms. Ratajkowski, a famous fashion model and newsworthy subject. [56.1, ¶ 9]  Sands created the Photographs for the purpose of licensing to news outlets and media organizations.  [56.1, ¶ 14]  Sands then licensed the images to third-party stock photography agencies.  [56.1, ¶¶ 16-18]  Bauer used the Photographs for the exact same purpose they were created: to exploit the newsworthiness of Ms. Ratajkowski.  [56.1, ¶¶ 21-22]  Further, Defendant did nothing to transform the original meaning behind the Photographs, i.e., to show Ms. Ratajkowski filming a commercial advertisement for fashion brand DKNY.  [56.1, ¶ 10]

### (2)    Defendant's Use is Commercial Rather Than Non-Profit

The fact that Defendant used Sands' photographs for a commercial rather than a nonprofit purpose also weighs against a finding of fair use.  *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84).  The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.  Thus, "when the copier directly and exclusively acquires conspicuous financial rewards from its use of the copyrighted material" a finding of fair use is less likely.  *Associated Press,* 931 F.Supp.2d at 551 (quoting *Blanch*, 467 F.3d at 253).

Here, there can be no dispute that Defendant is a for-profit publisher which disseminates news content on its website.  [56.1, ¶¶ 3-8] Commercial advertisements appear alongside the Photographs on Defendant's website [56.1, ¶ 25], thereby evincing Defendant's intent to exploit Sands' work.  *See Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (finding that commercial advertisements appearing alongside the unauthorized

use of photographs demonstrated a defendant's commercial purpose).  Accordingly, Defendant

sought to profit from Sands' copyrights without paying the customary price.  In sum, because

Defendant's use was not transformative and was for a commercial purpose, the first factor

weighs heavily against a finding of fair use.

**B.    THE SECOND FACTOR WEIGHS AGAINST FAIR USE BECAUSE THE PHOTOGRAPHS ARE CREATIVE IN NATURE**

The second factor examines the "nature of the copyrighted work."  17 U.S.C. § 107(2).

Courts consider "(1) whether the work if expressive or creative, with a greater leeway being

allowed a claim of fair use where the work is factual or information, and (2) whether the work if

published or unpublished."  *Blanch*, 467 F.3d at 256.

 "Photographic images of actual people, places and events may be as creative and

deserving of protection as purely fanciful creations." *Monster Communications, Inc. v. Turner

Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996); s*ee also Baraban v. Time Warner, Inc.,*

2000 WL 358375 at *4 (S.D.N.Y. 2000) ("Although photographs are often 'factual or

informational in nature,' the art of photography has generally been deemed sufficiently creative

to make the second fair use factor weigh in favor of photographer-plaintiffs.").  Here, the images

of Ms. Ratajkowski are creative because they artfully capture a top fashion model in interesting

poses where Sands personally selected the angle of shot, light and shade, exposure, and effects

achieved by means of filters.  [Sands Declr., ¶ 9]

**C.    THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT UNNECESSARILY PUBLISHED FULL-COLOR REPRODUCTIONS OF THE IMAGES**

The third factor bearing on fair use is "the amount and substantiality of the portion used

in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The question is whether "the

quantity and value of the materials used are reasonable in relation to the purpose of the copying."

14

*Campbell*, 510 U.S. at 586.  The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted). The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary. *Infinity Broadcast Corp.*, 150 F.3d at 110.  "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

As a quantitative matter, Defendant has taken the entire full-color photographs.  [56.1, ¶¶ 22-24]  This fact alone weighs against fair use.  *See Associated Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use").  As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish its purpose of news reporting.  *See Rogers*, 960 F.2d at 311.  The Photograph was reproduced by Defendant in full color without any visible modification.  [56.1, ¶¶ 22-24] Defendant's wholesale reproduction of the Photographs, without any aesthetic alteration, demonstrates the images' qualitative value.  *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

Moreover, Defendant's copying of the Photographs was unnecessary to achieve Defendant's news reporting purpose.  As noted by Judge Easterbrook in *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014), "[t]he fair-use privilege under § 107 is not designed to protect lazy appropriators."  In this case, there were at least three legal alternatives available to Defendant which did <u>not</u> include the "lazy appropriation" of Sands' work: (1) Defendant could have published its news story *without* any photo whatsoever; (2) Defendant could have commissioned its own photographer to take an original photo of Ms. Ratajkowski; or

(3) Defendant could have obtained a license directly from Sands.

Defendant cannot provide any explanation for why its use of the Photographs was necessary or how it served Defendant's purpose better than an alternative means that did not rely on Plaintiff's copyrighted works.  Indeed, other photographs of Ms. Ratajkoswki existed.  [56.1, ¶ 15]  By opting to expropriate Sands' photographic expression, Defendant has taken more than what was necessary to effectuate its news reporting purpose.  *See Psihoyos*, 1998 WL 336655, at *4 (defendant "was simply using the [plaintiff's] photo to save itself the expense of obtaining its own photo").

**D.    THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET**

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original."  *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).  "[A] copyright owner is not required to show that actual harm has come to her, *Sony Corp.*, 464 U.S. at 451, but must show merely a 'potential' effect on the market for the copyrighted work." *Harper & Row*, 471 U.S. at 568–69."  *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir.2012).

Here, as demonstrated below, Defendant's secondary use impaired both the actual and potential market for the Photographs.

**(1)    Defendant's Secondary Use Functioned As An Actual Market Replacement**

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Sands' original photographs.  *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright").  "A presumption of market harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S.  at 591.

Defendant's secondary use impairs the actual market for Sands' photographs because there was a fully functioning market demand for Sands' work. [56.1, ¶¶ 16-18]  *See Associated Pres*s, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee") (citing *Harper & Row*, 471 U.S. at 566 n. 9).  Defendant's unauthorized display of the Photographs made it unlikely that the market would purchase the Photographs from Plaintiff and therefore diminished the licensing value of the copyright.  *See Harper & Row*, 471 U.S. 566-67 ("[f]air use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied.") (*citing* S. Rep. No. 94-473 (1975) ("[A] use that supplants any part of the normal market for a copyrighted work would ordinarily be considered an infringement.")).  Defendant's use clearly supplanted the market in which Sands had a reasonable expectation to earn licensing revenue.  *See Fitzgerald*, 491 F.Supp.2d at 189 ("CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outfits").

**(2)    Defendant's Secondary Use Curtailed the Potential Market for the Copyrights**

Defendant's secondary use also impairs the potential market for the Photographs because

"unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted).  "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990).

Here, Sands is entitled to profit from the market demand generated by initial publication of his works.  *See* 17 U.S.C. § 106.  But because Defendant engaged in wholesale copying of the Photographs [56.1, ¶ 24], any authorized market for the original works was severely diminished. Moreover, because the subject matter depicted in the Photographs was newsworthy as of initial publication, Defendant deprived Sands of the opportunity to exploit the value of his copyrights during their peak demand in the marketplace.

In sum, by dismissing the fair use defense here, the Court will prevent media companies' widespread practice of appropriating images without first obtaining authorization from the original copyright holder.  *See Associated Press,* 931 F.Supp.2d at 561 ("the rejection of the fair use defense here will further the ultimate aim of the Copyright Act, which is to stimulate the creation of useful works for the public good.").

**POINT III:    THE FIRST AMENDMENT DEFENSE SHOULD BE DISMISSED AS LEGALLY INCOGNIZABLE AND DUPLICATIVE**

Defendant's Answer asserts a First Amendment defense. [Dkt. #10, Defense #10] However, "the First Amendment does not provide news entities an exemption from compliance with intellectual property laws, . . ." *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 481 (2d Cir. 2007).  In order to prove that Bauer has exercised a right under the First Amendment, Defendant must prove that the four factors prescribed by 17 U.S.C. § 107, in their totality, weigh in Defendant's favor.  *See, e.g.*, *Eldred v. Ashcroft*, 537 U.S. 186, 190 (2003)

(holding that the codified fair use doctrine under section 107 "contains built in First Amendment accommodations."); *New Era Publications Intern., ApS v. Henry Holt and Co., Inc.*, 873 F.2d 576, 584 (2d Cir. 1989) ("Our observation that the fair use doctrine encompasses all claims of first amendment in the copyright field never has been repudiated.") (internal citation omitted); *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1099 (2d Cir.), *cert. denied*, 459 U.S. 826, (1982) ("[n]o Circuit that has considered the question . . . has ever held that the First Amendment provides a privilege in the copyright field distinct from the accommodation embodied in the 'fair use' doctrine."). Accordingly, the First Amendment defense should be dismissed for all the same reasons as its Fair Use defense. *See* Point II, *supra.*

## POINT IV:    DEFENDANT'S LICENSE DEFENSES SHOULD BE DISMISSED

Defendant's Answer asserts various license defenses, namely implied license or release (twelfth defense); express license (thirteenth defense), and consent (sixth defense). [Dkt. # 10, Defenses #s 6, 12, 13]  While "it is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work," *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), "[t]he burden of proving that a license exists falls on the party invoking the defense." *Associated Press,* 931 F.Supp.2d at 561-62; *see also Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.1995) (where the dispute turns on "whether a license is held by the accused infringer," the defendant bears the burden to "com[e] forward with evidence of a license.").

### A.    THERE IS NO EVIDENCE ON RECORD TO SUPPORT AN EXPRESS LICENSE THEORY

"Copyright licenses are generally construed according to principles of contract law." *Great Minds v. Fedex Office & Print Servs., Inc.,* 886 F.3d 91, 94 (2d Cir. 2018).  Here, there is no evidence of any express contract between Sands and Bauer.  Defendant did not seek

Sands' permission to publish the Photographs; nor did Sands grant Defendant authorization to copy the Photographs or distribute copies of his registered work to the public. [56.1, ¶¶ 27-28] Aside from third-party stock photo agencies Getty Images and Matrix Pictures, Sands did not license the Photographs to any other news outlet or media organization. [56.1, ¶ 18] Further, Defendant failed to produce any documents during discovery [Liebowitz Declr., ¶ 20] and did not depose Sands. As such, Defendant has failed to produce any evidence showing that Sands expressly granted Defendant a license to display the Photographs on the Website.

**B.**    **THERE IS NO EVIDENCE ON RECORD TO SUPPORT AN <u>IMPLIED LICENSE</u> THEORY**

In the Second Circuit, "implied non-exclusive licenses should be found only in narrow circumstances where one party created a work at the other's request and handed it over intending that the other copy and distribute it." *ABKCO Music, Inc. v. Sagan*, No. 15 CIV. 4025 (ER), 2018 WL 1746564, at *18 (S.D.N.Y. Apr. 9, 2018) (quotations omitted and collecting cases). "[T]he question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue." *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 124 (S.D.N.Y. 2012) (quotation marks and citations omitted); *see also Design Options Inc. v. BellePointe, Inc.*, 940 F.Supp. 86, 92 (S.D.N.Y 1996) (holding that there must be evidence that "both parties to the transaction, not just the defendant, intended that the defendant could use or copy the plaintiff's work without liability for copyright infringement").

Here, Defendant cannot plausibly argue the existence of an implied license. <u>First</u>, there is no evidence that the Photographs were created for the Defendant or at the behest of Defendant. Indeed, prior to Defendant's publication of the Photographs, there was no communication whatsoever between Sands and Defendant. [56.1, ¶ 29] <u>Second</u>, there is no evidence that Plaintiff delivered the Photographs to the Defendant with the intention that Defendant distribute

them.  [56.1, ¶¶ 7, 8]  Again, there was never any communication between the parties prior to the

date of Bauer's infringement.  [56.1, ¶ 29]  The implied license theory therefore fails.

## C.    DEFENDANT'S THEORY OF A <u>SUB-LICENSE</u> BASED ON MS. RATAJKOWSKI'S INSTAGRAM ACCOUNT IS FACTUALLY GROUNDLESS AND LEGALLY MERITLESS

Defendant argues that it enjoys a sub-license to display the Photographs on the Website

because Ms. Ratajkowski published them on her Instagram Account. But this defense is factually

groundless.  Sands never licensed the Photographs to Emily Ratajkowski; nor has Sands ever

personally communicated with Ms. Ratajkowski. [56.1, ¶ 19]  Further, Sands never granted Ms.

Ratajkowski permission to display the Photographs on her personal Instagram page nor any other

social media account.  [56.1, ¶ 20]  Defendant has failed to produce any evidence to the contrary

and did not depose Ms. Ratajkowski during discovery despite ample opportunity to do so.

Moreover, even if Sands had licensed the Photographs to Ms. Ratajkowski (which he

didn't), such license would not include the right to sublicense to third parties without Sands'

express permission.  "[I]t is well established in patent and copyright law that a patent or

copyright licensee may not sub-license his licensed intellectual property rights without express

permission from the licensor." *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 (9th

Cir. 2006).  Further, "[t]he consent necessary to properly effectuate a sublicense must be express

or explicit, however, not loosely implied from the circumstances." *L.A. Printex Industries, Inc. v.*

*G&G Multitex, Inc.*, No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13,

2010).  As such, any theory based on a sub-license lacks factual support and legal authority.

## D.    THERE IS NO EVIDENCE TO SUPPORT THE DEFENSE OF <u>RELEASE</u>

"A release is an agreement by one party to surrender its cause of action against the other

party." *In re Zeman*, No. 09-52559-C, 2010 WL 3123144, at *1 (Bankr. W.D. Tex. Aug. 6,

2010) (citation omitted).  Release is an affirmative defense. Fed.R.Civ.P. 8(c)(1).  Here, there is

no evidence that Sands entered into an agreement with Bauer to release or surrender his claims.

## POINT V:    DEFENDANT'S CHALLENGES TO THE VALIDITY OF SANDS' COPYRIGHTS (DEFENSES # 2-5) SHOULD BE DISMISSED

Defendant's Answer [Dkt. #10] asserts four defenses which challenge the validity of

Sands' copyright ownership.  These are: invalidity of copyright registration (second defense);

failure to register (third defense); lack of sufficient ownership interest in the copyrights (fourth

defense); and lack of standing (fifth defense.  For all the reasons stated in Point I.A, *supra*, these

defenses should be dismissed.

## POINT IV:    DEFENDANT'S BOILERPLATE DEFENSES SHOULD BE DISMISSED

Defendant has also asserted a laundry list of boilerplate defenses, each of which should

be dismissed for lack of evidence.  These are waiver, estoppel, and justification (sixth defense);

laches, unclean hands, and/or doctrine of *in pari delicto* (eighth defense); plaintiff's knowledge,

representations and conduct (seventh defense); and failure to state a claim (first defense).

**Waiver.**  "[W]aiver is the voluntary or intentional relinquishment of a known right, or

intentional conduct inconsistent with claiming such a right." *Torain v. Clear Channel Broad.,

Inc.*, 651 F. Supp. 2d 125, 145 (S.D.N.Y. 2009); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372

F.3d 471, 482 (2d Cir. 2004). Accordingly, "[i]ntent is the key element in establishing waiver."

Id. at 146 (citation omitted).  Defendant has failed to produce any evidence of a voluntary or

intentional relinquishment of a known right or any intentional conduct to the contrary of its

exercise.  Moreover, no reasonable trier of fact can conclude that Plaintiff intentionally and

voluntarily relinquished his rights in the Photographs where Sands never communicated with

Defendant prior to the filing of the instant suit [56.1, ¶¶  29-31]

**Estoppel.** To establish an estoppel defense in the copyright context, a defendant must show that: (1) plaintiff had knowledge of the defendant's infringing conduct; (2) plaintiff either (a) intended that defendant rely on plaintiff's acts or omissions suggesting authorization, or (b) acted or failed to act in such a manner that defendant had a right to believe it was intended to rely on plaintiff's conduct; (3) defendant was ignorant of the true facts; and (4) defendant relied on plaintiff's conduct to its detriment. *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,* 642 F.Supp.2d 167, 194 (S.D.N.Y.2009) (quoting *DeCarlo v. Archie Comic Publ'ns, Inc.,* 127 F.Supp.2d 497, 509 (S.D.N.Y.2001)) (brackets omitted). Essential to any finding of estoppel is "detrimental reliance on the adverse party's misrepresentations." *Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 400 (2d Cir.2011). Here, Bauer has failed to present evidence to support the elements of an estoppel claim. Before this lawsuit was filed, there was no communication between Sands and Defendant. [56.1, ¶ 30] At no time prior to the institution of this lawsuit did Sands ever make any representations of any kind to Defendant. [56.1, ¶ 31] As there were never representations made to Bauer, there can be no detrimental reliance.

**Justification.** Plaintiff was not able to locate any caselaw in the Second Circuit where a defense of "justification" was successfully interposed in a copyright infringement action. *But see* MODEL PENAL CODE § 3.02 (describing justification as an affirmative defense arising when "the actor believes [otherwise criminal conduct] to be necessary to avoid a harm or evil to himself or to another"). To the extent Defendant argues that it had to infringe Plaintiff's copyrights in order to avoid harm or evil to Bauer, there is no evidence to support such a frivolous assertion.

**Laches.** As per the Supreme Court, the equitable defense of laches does not bar relief on a copyright infringement claim brought within § 507(b)'s three-year limitations period. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. __, 134 S.Ct. 1962, 1974 (May 19, 2014) ("Laches, we

hold, cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window.").  Here, the infringement took place on or about March 13, 2017 and suit was filed on November 22, 2017 [Dkt. #1], well within the three-year period.  As such, the laches defense should be dismissed.

**Unclean Hands**. "[T]he defense of unclean hands in copyright actions is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Broadcast Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*, 746 F. Supp. 320, 329 (S.D.N.Y. 1990) (internal quotation marks and citation omitted); Critically, "[d]efense of 'unclean hands' is premised on the maxim that a party 'who has acted fraudulently, or who by deceit or any unfair means has gained an advantage' is not entitled to obtain equitable relief."  *State of New York v. United Parcel Serv., Inc.*, 160 F. Supp. 3d 629, 646 (S.D.N.Y. 2016) (citation omitted). Because Plaintiff seeks damages, the doctrine of unclean hands is not applicable. Even if it was applicable, there is no evidence that Plaintiff has committed any transgression at all, much less acted fraudulently or by deceit.

**Failure to State a Claim.**  A defense based on failure to state a claim must be directed to the pleading. *Eclaire Advisor Ltd. v. Daewoo Engineering Co.*, 375 F.Supp.2d 257, 260 (S.D.N.Y. 2005). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiff's complaint sets forth a plausible set of facts to support each element of his copyright infringement claim.  Accordingly, this defense should be dismissed.

*__in pari delicto__.*  The doctrine of *in pari delicto* provides that courts will not intercede to resolve a dispute between two wrongdoers. *See Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 464, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010) (describing the *in pari delicto* doctrine).  Here, there is no evidence that Sands engaged in any wrongdoing which would require the analysis of relative fault between the parties to the lawsuit.

__Plaintiff's knowledge, representations and conduct.__  These defenses should be dismissed as duplicative of the defenses referenced above and, in any event, there is no evidence on record to support them.

### CONCLUSION

For the foregoing reasons, Plaintiff Steve Sands' motion for partial summary judgment on liability against Defendant Bauer Media Group USA, LLC for copyright infringement should be GRANTED.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

by: __/richardliebowitz/___
Richard P. Liebowitz
Katerina Tsyvkin
James H. Freeman
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowtizlawfirm.com

*Counsel for Plaintiff Steve Sands*

25