# MILLER KORZENIK SOMMERS RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

MEMO ENDORSED

September 6, 2018

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-13-18
```

*Via ECF*

Hon. Lewis A. Kaplan, U.S.D.J.
U.S. District Court, S.D.N.Y.
500 Pearl Street
New York, NY 10007-1312

Re:  *Sands v. Bauer Media Group USA, LLC*, No. 1:17-cv-9215
**Request for Conference and Suspension of Motion Briefing Schedule**

Dear Judge Kaplan:

On behalf of Defendant Bauer Media Group USA, LLC ("Bauer"), we request Your Honor order a Rule 16 conference to discuss the expeditious management and disposition of this action. We also request Your Honor suspend the parties' summary judgment briefing schedule (Dkt. No. 21) pending the outcome of such a conference.

Among the issues we wish to discuss at the conference: 1) whether Plaintiff Steve Sands ("Sands") should have to show cause why he should not be required to post a bond under Local Civil Rule 54.2 before he proceeds any further with this case; 2) prospective liability under Fed. R. Civ. P. 16(f) for failing to follow in good faith the case management and discovery plan agreed to by the parties at the initial conference and so-ordered by the Court; and 3) prospective liability under 17 U.S.C. § 505, 28 U.S.C. § 1927 and/or the Court's inherent power for prosecuting objectively unreasonable claims, multiplying the proceedings in this copyright case unreasonably and vexatiously, and imposing excessive costs on Bauer.

We sought Plaintiff's consent to our request for suspension of the motion briefing schedule pending a Rule 16 conference. We did so by email on August 31. Sands' counsel declined and stated they intend to move for summary judgment per the schedule.

Sands – who has brought nearly 50 copyright actions in this District since 2016 [1] – should not be permitted to force Bauer to vindicate its fair-use reporting defense through costly motion practice. Nor should he be able to impose more litigation costs on Bauer when the only possibly recoverable damages are strikingly petty. Sands' discovery

---

[1] Just yesterday Sands, through the same counsel, filed another copyright action against a website over an allegedly unlicensed photograph in an article. Complaint, *Sands v. Dog Tech, LLC*, No. 18-cv-8089 (PAE), Dkt. No. 1 (S.D.N.Y. Sept. 5, 2018).

1

admissions show that he surely should have known any infringement here was innocent, and any statutory damages he could hope to recover would be no more than $200 for each of the two photos at issue ("Photos"). Actual damages, if he elected them, could only be far less.

During discovery Sands failed to produce any evidence of ever having licensed either Photo. He produced no evidence of even having offered either Photo for license. This proof failure contradicts his counsel's representation at the parties' initial conference that such a licensing history existed and that it would be promptly produced.

In spite of this irredeemable lack of evidence, Sands continues to demand five-figure settlements from Bauer. Sands should not be permitted to burden Bauer with defeating his Complaint's boilerplate demands for willful infringement damages or actual damages where no such damages exist.

***Background Facts***

One of the two Photos at issue depicts the model and actress Emily Ratajkowski walking a dog in the middle of a New York City street, in only boots and underwear. The other depicts her holding the dog's leash in an apartment doorway. Both Photos were taken on or about January 20, 2017. They appear to have been first posted to an Instagram social media profile for Ms. Ratajkowski ("Instagram Profile") on January 20, 2017 and January 28, 2017, respectively. *See* Bauer Answer ("Answer") (Dkt. No. 10) pp. 1-2, ¶11 & Ex. B (Dkt. No. 10-2). Sands produced *no evidence* that the Photos *have ever been credited to him*, either on the Instagram Profile or anywhere else. He has admitted to Bauer that *he knew* of the Photos' uncredited display on the Instagram Profile some time *before* he sued Bauer on November 22, 2017.

The Instagram Profile is widely viewed. Ms. Ratajkowski reportedly has employed it as a tool for both self-expression and self-promotion. According to an April 2016 report by fashion business magazine *WWD*, "who [Ms. Ratajkowski] is, at least to the public, is most visible on Instagram, her account salivated over by the male masses." At that time, the Instagram Profile reportedly had 5.7 million followers. But "[h]er goal . . . is to use her visibility on the platform to make her mark on the topic of feminism." Ms. Ratajkowski was quoted by WWD as saying, "My response to people stating I post oversexualized images is that it's my choice and there's an ownership and empowerment through them."[2]

In January 2017, Ms. Ratajkowski used the Instagram Profile – and the Photos – to kick off promotion of her role in a "secret project" that would be formally announced just seven weeks later: a novel, provocative advertising campaign for women's intimates by the fashion brand DKNY. "Shooting today in NYC mid-January in 40 degree weather

---

[2] Taylor Harris, "Emily Ratajkowski Takes on Feminism – One Selfie at a Time," *WWD*, Apr. 6, 2016, *available at* https://wwd.com/eye/people/emily-ratajkowski-feminism-instagram-10404419/ (last visited Sept. 6, 2018).

2

in MY UNDERWEAR. Working hard lol," reads a caption attributed to Ms. Ratajkowski, in a post dated January 20, 2017. [3] *See* Answer Ex. B, at 2.

The Photos, and Ms. Ratajkowski's use of them on the Instagram Profile, made news online. Bauer's general-interest website FHM.com included the Photos in its own contemporaneous reporting about Ms. Ratajkowski's role in the DKNY campaign, which was announced March 13, 2017. *See* Answer ¶¶6, 11.

In a publicly available press release announcing Ms. Ratajkowski as the star of its new ads as well as a "fashion film," DKNY stated:

> In the film, Emily wakes, exiting her apartment to walk her dog, wearing nothing more than her DKNY bra and briefs. And – because *anything* can happen in New York – she steps onto the streets, greeting stunned neighbors, onlookers and viewers with, "Good Morning, New York."

The DKNY press release also listed Ms. Ratajkowski's Instagram profile as part of the campaign's "Social Media" support. Like the Instagram Profile, DKNY gave no attribution to Sands. [4]

Bauer's factual investigation confirmed that FHM.com obtained copies of both Photos from the Instagram Profile. Both Photos were included in a brief article, published on FHM.com on or about March 13, 2017, about the model's role in the newly revealed DKNY film (as well as Ms. Ratajkowski's earlier promotion of the campaign by posting the Photos in January 2017). The article was about the film ad, the Photos and the promotion. The article text shows that the author of the FHM.com article believed both Photos were publicity materials supporting the DKNY campaign:

> *Back in January [2017] we released some stunning pictures of Emily Ratajkowski walking a dog down the streets of NYC in nothing but lingerie.* **We knew the pictures were a part of her commercial for DKNY,** *but we had no idea when the actual commercial would be released.*

---

[3] *See* @emrata, INSTAGRAM, https://www.instagram.com/p/BPgBEoxDTm4/?utm_source =ig_web_button_share_sheet (Jan. 20, 2017) (last visited Sept. 6, 2018); @emrata, INSTAGRAM, https://www.instagram.com/p/BP0iiGaD8ZN/?utm_source= ig_web_button_share_sheet (Jan. 28, 2017) (last visited Sept. 6, 2018). *See also* Answer Ex. B, at 2.

[4] DKNY, "DKNY Debuts Emily Ratajkowski for Spring/Summer 2017 Intimates, Hosiery and Sleepwear Campaign," PR NEWSWIRE, Mar. 13, 2017, *available at* https://www.prnewswire.com/news-releases/dkny-debuts-emily-ratajkowski-for-springsummer-2017-intimates-hosiery-and-sleepwear-campaign-300422339.html (last visited Sept. 6, 2018).

> *Well, as luck would have it, Ratajkowski* **posted the final product** *on her Instagram today [March 13, 2017] and it's everything we dreamed of and then some!*

Answer Ex. A (Dkt. No. 10-1), at 2 (emphasis added). The article credited and linked to the Instagram Profile as the source for both Photos – as well as the DKNY film. *See id.* at 1-3. [5] Like the Photos, the film depicts Ms. Ratajkowski in an apartment doorway and in the middle of a city street walking a dog in her underwear. It too is still displayed on the Instagram Profile for Ms. Ratajkowski. [6]

### *Sands' Mischaracterizations and His Counsel's Misrepresentations*

In his Complaint, Sands alleged upon information and belief that Bauer's reporting on the Photos in its March 13, 2017 article constituted "willful, intentional, and purposeful" acts of copyright infringement, "in disregard of and indifference to Plaintiff's rights." Complaint (Dkt. No. 1) ¶¶15-16. Sands alleged that he had suffered actual damages "[a]s a direct and proximate cause of the infringement by the Defendant of Plaintiff's copyright and exclusive rights under copyright." *Id.* ¶17. Sands also asserted that he is alternatively entitled to "statutory damages up to $150,000 per work infringed for Defendant's willful infringement of the Photographs," along with attorneys' fees and full costs. *Id.* ¶¶18-19.

In an exhibit to his Complaint, Sands completely omitted the text of the article that accompanied the Photos on the FHM.com website. In doing so, he mischaracterized the Photos' appearance with the FHM.com article by obscuring those elements of the article that revealed its reporting and commentary nature. *Compare* Complaint Ex. B (Dkt. No. 1-2), *with* Answer Ex. A (Dkt. No. 10-1).

Bauer included a copy of the FHM.com article with the Photos in their full context as an exhibit to its Answer. Dkt. No. 10-1. Bauer's pleading also detailed the facts summarized above in support of its defenses of fair use reporting and/or implied license; additionally, the pleaded facts established Bauer's assertion that if there was any infringement, it was innocent. *See* Answer pp. 1-2; ¶11, Defenses Nos. 11-12, 19.

At the parties' initial conference with the Court on February 6, 2018, we emphasized our objective of streamlining the litigation in an effort to minimize costs. Sands' counsel meanwhile represented that she would share a full copy of Sands' copyright registration for the Photos, along with Sands' licensing history for the Photos. While Sands' counsel emailed us later on February 6 with some additional details regarding Sands' alleged copyright registration, she provided no licensing history at all

---

[5] Editorial content on the FHM.com website has since been discontinued, and the article at issue was taken down on or about September 5, 2018.

[6] *See* @emrata, INSTAGRAM.COM, https://www.instagram.com/p/BRlK2G8ln5T/?utm_source=ig_embed (Mar. 13, 2017) (last visited Sept. 6, 2018).

4

for the Photos. Nor was any licensing history produced by the other attorneys at the Liebowitz Law Firm – not in response to our repeated requests following up on the initial conference; and not in response to Bauer's subsequent discovery demands.

The parties agreed to a schedule for limited written discovery, and a briefing schedule for cross-motions for summary judgment. Sands intended "to move for partial summary judgment against Defendant on liability for copyright infringement (including dismissal of all affirmative defenses to liability)." Bauer, meanwhile, anticipated moving on 1) fair use, 2) the absence of willfulness, 3) innocent infringement, and/or 4) the lack of any actual damages suffered by Sands or profit gained by Bauer attributable to the alleged infringements. Dkt. No. 16; *see also* Dkt. No. 12. The Court so-ordered the discovery and briefing schedule and granted the parties' extension requests. Fact discovery closed on August 7, 2018. *See* Dkt. No. 21.

Not only did Sands' counsel misrepresent at the initial conference that Sands had a licensing history for the Photos, but the attorney appearing for Sands also represented to the Court that she – not Richard Liebowitz, who had signed Sands' Complaint – was attending the conference as Sands' "principal trial counsel" per the Court's rules. *See also* Fed. R. Civ. P. 16(c)(1). Yet when we sought her inputs for the schedule that the Court had ordered the parties to jointly file by February 20, we were told that she had gone on vacation. As a result, Bauer initially filed a schedule request by itself. *See* Dkt. No. 12. The attorney who appeared for Sands at the initial conference has had no involvement in this case since. Instead, we have been advised that Mr. Liebowitz retains ultimate authority over stipulations on Sands' behalf.

### *Reasons for the Conference and Suspension of Summary Judgment Briefing*

The publicly available online materials alone demonstrate that, fair use considerations aside, FHM.com did not believe and had no reason to believe its use of the Photos constituted copyright infringement. Moreover, discovery revealed that *Sands knew* the Photos had been posted to the Instagram Profile for Ms. Ratajkowski with no attribution to him. Yet he sued Bauer anyway for "willful" copyright infringement, ignoring the article's express belief that the Photos "were a part of" Ms. Ratajkowski's "commercial for DKNY."

Sands has forced Bauer through discovery only to 1) admit that he knew of the Photos' uncredited appearance on Instagram before filing suit, and 2) claim that he had no licensing history for the Photos, in spite of his counsel's earlier representation that it existed. Sands should not be allowed to drag out this litigation further with motion briefing when the most he could reasonably hope for – absent a finding of fair use – is an innocent infringement ruling. That could amount to an award of less than one-fiftieth of his five-figure settlement demands. *See* 17 U.S.C. § 504(c)(2) ("In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.").

5

Under Rule 16, the Court may order one or more pretrial conferences for such purposes as "expediting disposition of the action," establishing "continuing control so that the case will not be protracted because of lack of management," and "discouraging wasteful pretrial activities." Fed. R. Civ. P. 16(a). Rule 16 also authorizes the Court to "issue any just orders" if a party or its attorney "(A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate – or does not participate in good faith – in the conference; or (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1).

Additionally, Local Civil Rule 54.2 provides that the Court, "on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." LR 54.2. Factors that Courts weigh when considering a bond order include "the merits of the underlying claims; the extent and scope of discovery; [and] the legal costs expected to be incurred." Memorandum & Order, *Cruz v. Am. Broad. Cos.*, No. 17-cv-8794 (LAK), 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017).

In *Cruz*, this Court sua sponte ordered a photographer plaintiff – represented by same counsel as Sands is here – to show cause as to why he should not have to post a bond where "there seem[ed] a reasonable possibility that [the defendant] will prevail on a fair use defense and, moreover, that it would be entitled to recover costs, including attorneys' fees, in that event." *Id.* at *3-4. The plaintiff in *Cruz* requested dismissal of the action from the Court before his show-cause response was due. *See* No. 17-cv-8794, Dkt. No. 8 (memo endorsed Nov. 30, 2017).

Another court in this District has found that a plaintiff's frustration of discovery pertaining to a "central issue" in a copyright infringement case – namely, the value of the plaintiff's photograph – favored a bond order under Rule 54.2. Memorandum & Order, *Baker v. Urban Outfitters, Inc.*, No. 01-cv-5440 (LAP), 2004 WL 2546805, at *2 (S.D.N.Y. Nov. 10, 2004). The value of the Photos in this case likewise has been a "central issue" from the outset. Yet Sands never produced any licensing history for the Photos, which his counsel promised at the parties' initial conference; and during discovery, Sands produced *zero* evidence of ever having licensed either Photo to anyone, or even offering either Photo for license.

In a number of other cases Sands' counsel has been ordered to show cause why other plaintiffs it represents should not have to post security for costs as a condition of proceeding further. For example, in *Pereira v. 3072541 Canada Inc.*, prior to the parties' initial conference, the defendant's counsel informed the court that despite having advised plaintiff's counsel of defendant's first-sale defense, plaintiff made an "entirely unreasonable" settlement demand in a case that was demonstrably worth "less than $100" in actual damages. The court entered a show-cause order following the initial conference, and plaintiff's counsel withdrew the action without filing any show-cause response. *See Pereira v. 307251 Canada Inc.*, No. 17-cv-6945 (RA), Dkt. No. 9-1 (Joint Letter) (S.D.N.Y. Nov. 27, 2017), Dkt. No. 16 (Order) (S.D.N.Y. Dec. 19, 2017), Dkt.

6

No. 24 (Notice of Voluntary Dismissal) (S.D.N.Y. Jan. 4, 2018). *See also Reynolds v. Hearst Commc'ns, Inc.*, No. 17-cv-6720 (DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) (noting Sands' counsel "has been labelled a copyright 'troll'" and collecting cases); Order, *Steeger v. JMS Cleaning Services, LLC*, No. 17-cv-8013 (DLC), Dkt. No. 17 (S.D.N.Y. Feb. 6, 2018).

Beyond the merits here, there are serious questions as to whether Sands and/or his counsel have flouted their Rule 16 obligations and/or whether Sands' counsel is "multipl[ying] proceedings in [this] case unreasonably and vexatiously" in violation of 28 U.S.C. § 1927. It would not be the first time that Sands' counsel has been found to have "needlessly imposed costs on the defendant." *Steeger v. JMS Cleaning Services LLC*, 2018 WL 1136113, at *4 (S.D.N.Y. Feb. 28, 2018) (imposing monetary sanctions pursuant to the Court's inherent power and Fed. R. Civ. P. 11), *vacated in part*, 2018 WL 1363497 (S.D.N.Y. Mar. 15, 2018) (reducing sanction amount). Sands and his counsel, prolific copyright litigants that they are, should have recognized the nature of their claim before they filed it. [7] They should not be permitted to force Bauer into either motion practice or unreasonable settlement negotiations.

For these reasons we request Your Honor order a Rule 16 conference, and suspend the previously so-ordered motion schedule pending the conference's outcome.

Respectfully submitted,

/s/ Terence P. Keegan
Terence P. Keegan
David S. Korzenik

cc:   Counsel of Record via ECF

*[Handwritten notation by Judge:]* (1) Defendant's time within which to respond to any motion by plaintiff for summary judgment is extended sine die. (2) Defendant may move for security for costs.

LEWIS A. KAPLAN, USDJ
9/13/18

---

[7] PACER records indicate that the Liebowitz Law Firm has filed upwards of 670 actions in this District since 2016. *See also Cruz*, 2017 WL 5665657, at *2 n.11 (noting 452 cases filed as of November 17, 2017, "many against media and publishing defendants").

7