**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

STEVE SANDS,                                          Docket No.: 1:17-cv-09215 (LAK)

        Plaintiff,

- against -

BAUER MEDIA GROUP USA, LLC,

        Defendant.
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF BAUER MEDIA GROUP USA, LLC'S MOTION FOR SANCTIONS AND/OR SECURITY FOR COSTS

MILLER KORZENIK SOMMERS RAYMAN LLP
David S. Korzenik
Terence P. Keegan
The Paramount Building
1501 Broadway, Suite 2015
New York, New York 10036
Tel (212) 752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com
*Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

FACTUAL BACKGROUND .................................................................................................1

    The Photos – and the "Secret Project" ...........................................................................1

    Procedural History ...........................................................................................................3

    Sands' Counsel Disclaims the Rule 16 Plan and Its Rationale ........................................5

ARGUMENT .........................................................................................................................6

    I.     The Court Should Sanction Sands Under Rules 16 and 37 ......................................6

    II.    Absent Dismissal, the Court Should Order Sands to Show Why He Should Not Be
           Required To Post Security For Costs ...................................................................11

        A.  Plaintiff's Claim Lacks Merit ..............................................................................12

        B.  Plaintiff's Failure to Comply with Court Orders....................................................13

        C.  Other Factors ......................................................................................................14

        D.  Security of At Least $50,000 for Expected Costs and Attorneys' Fees is
            Appropriate.....................................................................................................16

CONCLUSION .....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Urban Outfitters, Inc.*, No. 01-cv-5440 (LAP), 2004 WL 2546805 (S.D.N.Y. Nov. 10, 2004), *aff'd*, 249 F. App'x 845 (2d Cir. 2007) ...................................................................11, 15

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, No. 06-cv-3085 (KMW), 2008 WL 2876508, (S.D.N.Y. July 21, 2008) ....................................................................................................16

*BWP Media USA v. Urbanity, LLC*, 696 F. App'x 795 (9th Cir. 2017) ...............................8, 9, 10

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979) ......................................................................................................................................8

*Cruz v. Am. Broad. Cos.*, No. 17-cv-8794 (LAK), 2017 WL 5665657 (S.D.N.Y. Nov. 17, 2017) ........................................................................................................................................11, 12, 15

*Ebewo v. Martinez*, 309 F. Supp. 2d 600 (S.D.N.Y. 2004) .......................................................8, 10

*Kanongataa v. Am. Broad. Companies, Inc.*, No. 16-cv-7382 (LAK), 2017 WL 4776981 (S.D.N.Y. Oct. 4, 2017) ...................................................................................................11, 17

*Kensington Int'l Ltd. v. Republic of Congo*, No. 03-cv-04578 (LAP), 2005 WL 646086 (S.D.N.Y. Mar. 21, 2005) .........................................................................................................11

*McDermott v. Monday Monday, LLC*, No. 17-cv-9230 (DLC) 208 WL 5312903 (S.D.N.Y. Oct. 26, 2018) .............................................................................................................................14, 15

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778 (1976) ......................................................................................................................................10

*North American Karaoke-Works Trade Ass'n, Inc. v. Entral Grp. Int'l*, No. 06-cv-5158 (LTS)-(MHD), 2007 WL 844689 (S.D.N.Y. Mar. 16, 2007) ...........................................................7

*Penthouse Intern., Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371 (2d Cir. 1981) .......................8

*Pereira v. 307251 Canada Inc.*, No. 17-cv-6945 (RA) (S.D.N.Y. Jan. 4, 2018) ..........................16

*Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 455 (S.D.N.Y. 2011) ...................................6

*Reynolds v. Hearst Commc'ns, Inc.*, No. 17-cv-6720 (DLC), 2018 WL 1229840 (S.D.N.Y. Mar. 5, 2018) ..................................................................................................................................16

*Selletti v. Carey*, 173 F.R.D. 96, 100 (S.D.N.Y 1997) ....................................................11, 13, 17

*Steeger v. JMS Cleaning Services, LLC*, No. 17-cv-8013 (DLC) (S.D.N.Y. Feb. 6, 2018)..........16

*Valentine v. Museum of Modern Art*, 29 F.3d 47 (2d Cir. 1994).......................................................8

**Statutes**

Fed. R. Civ. P. 16...............................................................................................1, 5, 6, 12, 13, 14, 17

Fed. R. Civ. P. 26.................................................................................................1, 4, 5, 7, 8, 9, 17

Fed. R. Civ. P. 37...............................................................................................1, 6, 7, 8, 10, 12, 17

Local Civil Rule 54.2.........................................................................................1, 6, 11, 15, 16, 17

Local Civil Rule 56.1...........................................................................................................................10

**Other Authorities**

17 U.S.C. § 107 ............................................................................................................................9, 16

### MEMORANDUM OF LAW IN SUPPORT OF BAUER MEDIA GROUP USA, LLC'S MOTION FOR SANCTIONS AND/OR SECURITY FOR COSTS

Defendant Bauer Media Group USA, LLC ("Bauer") respectfully submits this memorandum of law in support of its motion 1) for sanctions under Fed. R. Civ. P. 16, 26, and 37 – specifically, to dismiss Plaintiff Steve Sands' ("Sands") complaint, or 2a) in the alternative, to strike portions of Sands' testimony and evidence in support of summary judgment – and/or 2b) for a bond as security for costs and fees under Local Civil Rule 54.2. [1]

### FACTUAL BACKGROUND

***The Photos – and the "Secret Project"***

This lawsuit is over two photographs ("Photos") that appeared uncredited on a widely viewed, public Instagram social media profile for the model and actress Emily Ratajkowski ("Ratajkowski Profile") on or about January 20, 2017.  Answer (Dkt. No. 10), ¶4 and Ex. B (Dkt. No. 10-2), at 2, 1. [2]

The Photos' appearance on the Ratajkowski Profile teased the model's role in a "Secret project in NYC today . . . coming to you March 2017."  Answer Ex. B, at 3.  The Photos depicted

---

[1] Sands' summary judgment submissions (Dkt. Nos. 25-30), and the most recent letter of Sands' counsel to the Court (Dkt. No. 34), make clear why such sanctions are warranted instead of (or in addition to) the security for costs that Bauer originally advised Sands and the Court it would seek prior to Sands' summary judgment filings (Dkt. No. 23).

[2] The Photos are still available on the Ratajkowski Profile, and still appear without attribution to Sands.  *See* @emrata, INSTAGRAM, https://www.instagram.com/p/BPgBEoxDTm4/ (Jan. 20, 2017) (last visited Nov. 2, 2018); @emrata, INSTAGRAM, https://www.instagram.com/p/BP0iiGaD8ZN/ (Jan. 28, 2017) (last visited Nov. 2, 2018).

Ratajkowski standing in the middle of a New York City street and doorway in nothing but boots and underwear. *Id.* at 2, 1. [3]

The Photos, and their appearance on the Ratajkowski Profile, made news online. The Bauer-owned website FHM.com first reported on the Photos' appearance on or about the same day they appeared on the Ratajkowski Profile. *See* Answer Ex. A (Dkt. No. 10-1), at 1 ("Back in January. . ."). When fashion brand DKNY announced on March 13, 2017 that the "secret project" was a new advertising campaign for lingerie starring Ms. Ratajkowski, [4] FHM.com published another article, linking back to the Ratajkowski Profile and to its own January 20,

---

[3] Ms. Ratajkowski herself reportedly has employed the Ratajkowski Profile as a tool for both self-expression and self-promotion. According to an April 2016 report by fashion business magazine *WWD*, "who [Ms. Ratajkowski] is, at least to the public, is most visible on Instagram, her account salivated over by the male masses." At that time, the Ratajkowski Profile reportedly had 5.7 million followers. But "[h]er goal . . . is to use her visibility on the platform to make her mark on the topic of feminism." Ms. Ratajkowski was quoted by *WWD* as saying, "My response to people stating I post oversexualized images is that it's my choice and there's an ownership and empowerment through them." Taylor Harris, "Emily Ratajkowski Takes on Feminism — One Selfie at a Time," *WWD*, Apr. 6, 2016, *available at* https://wwd.com/eye/people/emily-ratajkowski-feminism-instagram-10404419/ (last visited Nov. 2, 2018).

[4] In a publicly available press release announcing Ms. Ratajkowski as the star of its new ads as well as a "fashion film," DKNY stated:

> In the film, Emily wakes, exiting her apartment to walk her dog, wearing nothing more than her DKNY bra and briefs. And – because anything can happen in New York – she steps onto the streets, greeting stunned neighbors, onlookers and viewers with, "Good Morning, New York."

The DKNY press release also listed the Ratajkowski Profile as part of the campaign's "Social Media" support. Like the Ratajkowski Profile, DKNY gave no attribution to Sands. DKNY, "DKNY Debuts Emily Ratajkowski for Spring/Summer 2017 Intimates, Hosiery and Sleepwear Campaign," PR NEWSWIRE, Mar. 13, 2017, *available at* https://www.prnewswire.com/news-releases/dkny-debuts-emily-ratajkowski-for-springsummer-2017-intimates-hosiery-and-sleepwear-campaign-300422339.html (last visited Nov. 2, 2018).

2017 story. *See* Answer Ex. A, at 1.  The Photos also appeared on the March 13, 2017

FHM.com article page. *Id.* at 2, 3. [5]

    Of the uncredited Photos, FHM.com reported, "We knew the pictures were a part of [Ms.

Ratajkowski's] commercial for DKNY." *Id.* at 1.  The article credited and linked to the

Ratajkowski Profile as the source for both Photos – as well as a "film" posted that day. *Id.*  But

eight months later, Sands sued Bauer, alleging the Photos were his – not DKNY's – and that

Bauer's use of them was unlicensed.  Complaint (Dkt. No. 1), ¶¶7-8, 11-12.

    Sands' Complaint ignored FHM.com's disclosed source for the Photos – the Ratajkowski

Profile – and made no mention that they had been posted to that Profile without any attribution to

him, one seemingly within hours of its being taken. *Compare* Answer Ex. B, at 2 ("Shooting

today in NYC mid-January in 40 degree weather in MY UNDERWEAR. Working hard lol")

(dated January 20, 2017), *with* Complaint Ex. A (bottom Photo).

    From Bauer's standpoint, if the appearance of the Photos with the FHM.com article was

not a clear fair use of publicity images from an advertising campaign, it was an innocent mistake.

Key then to vindicating fair use, or to establishing innocent infringement in its absence – not to

mention defending against Sands' claims of willful infringement and actual damages (Complaint

¶¶ 16-18) – was Bauer's discovery of Sands' licensing history for the Photos: who he licensed

them to, for what purpose, and for how much.

### *Procedural History*

    Sands' counsel represented at the parties' initial conference that Sands had such

information.  Declaration of Terence P. Keegan ("Keegan Decl.") ¶4.  Relying on that

---

[5] As Bauer advised in a previous filing, all editorial content on the FHM.com website has been
discontinued, and the article at issue was taken down on or about September 5, 2018. *See* Dkt.
No. 23, at 4 n.5.

representation, Bauer stipulated to a schedule for written discovery and summary judgment motion practice on a limited set of issues (fair use among them).  Dkt. No. 16.  As Bauer's counsel stated then, such a streamlined case management plan was critical to managing the cost of this litigation.  *See* Letter Motion of Bauer Counsel dated Feb. 20, 2018 (Dkt. No. 12) ("In an effort to minimize costs in this action, we request the Court so-order a schedule for written discovery, and a motion for summary judgment or partial summary judgment, on a limited set of issues.") [6]

But Sands *never* listed names of licensees or agents in any Rule 26 disclosures.  Keegan Decl. ¶8.  And among hundreds of documents he produced, *not one* pertained to licensing of the Photos.  *Id.* ¶11.

Instead, one month after discovery had ended (*see* Dkt. No. 21), Sands premised a motion for partial summary judgment on an assertion that he had licensed the photos to two agencies – Getty Images and Matrix Pictures – on or about January 20, 2017 (i.e., the same day he took them, and the same day they appeared on the Ratajkowski Profile).  Motion for Partial Summary Judgment dated Sept. 7, 2018 (Dkt. No. 25); Declaration of Steve Sands in Support (Doc. No. 27) ("Sands Decl."), at ¶¶4, 6-7, 12-13.  He even exhibited four pages of material from one of the agencies, bearing bates stamps as if they had been timely produced to Bauer – when they had never been produced at all.  Sands Decl. Ex. C (Dkt. No. 27-3); Keegan Decl. ¶14.

Regardless, Sands' declaration *still* did not reveal whether either agency ever actually licensed either Photo, to whom it licensed either Photo, or for how much.

---

[6] The Court too had recognized the suitability of this case to a such a streamlined plan, directing the parties to contact the Court within two weeks of the initial conference to set "a motion or trial date."  *See* Minute Entry for proceedings dated Feb. 6, 2018 in docket.

***Sands' Counsel Disclaims the Rule 16 Plan and Its Rationale***

In an October 23, 2018 letter to the Court, Sands' counsel didn't even deny the nondisclosures. Instead, he brazenly asserted that their production of 630 pages of purported "benchmark licensing fee history" – *none of it* pertaining to the Photos – somehow fulfilled Sands' Rule 26 duties. Letter Motion of Sands' counsel (Dkt. No. 34), at 1; Keegan Decl. ¶11. He claimed Bauer never "bothered to subpoena the third-party licensing agencies," even though Sands *never identified* them in any disclosures or discovery. Dkt. No. 34, at 2; Keegan Decl. ¶8. And he claimed Bauer did not "bother to depose Mr. Sands," even though the parties had only agreed to *written discovery* in their Rule 16 conference and case management plan. Dkt. No. 34, at 2; *see* Joint Letter Motion for Discovery and Summary Judgment Motion Schedule (Dkt. No. 16), so-ordered May 24, 2018 (Dkt. No. 17); Keegan Decl. ¶5.

Sands and his counsel are well aware of their litigation responsibilities. According to a search of PACER records, Sands' action against Bauer is one of 50 copyright cases against media organizations that he and his counsel have commenced in this District since 2016. Sands' counsel has brought more than 700 copyright actions in the District over the same period. Yet here, they frustrated discovery of the true nature of the Photos and their licensing history at every turn. Even at this late stage of summary judgment, Sands expects he can trickle out a bit of the truth and keep the rest from view.

Sands and his counsel have magnified Bauer's costs and prejudiced its defenses. All over two Photos whose actual licensing history and value Sands kept from Bauer and the Court, while he continued to demand an outsized five-figure settlement.

## ARGUMENT

The misleading and evasive conduct of Sands and his counsel warrants dismissal of his action against Bauer as a sanction under Fed. R. Civ. P. 16(f), Fed. R. Civ. P. 37(b) and/or Fed. R. Civ. P. 37(c).  In the alternative, the Court should sanction Sands by striking testimony and exhibits from his declaration in support of summary judgment, and precluding him from asserting that the Photos had *any* licensing history or value – and require Sands to show why, before proceeding, he should not have to post a bond under Local Civil Rule 54.2 in the amount of $50,000 to satisfy any judgment with costs in Bauer's favor, including costs and attorney's fees under 17 U.S.C. § 505.

## I.      THE COURT SHOULD SANCTION SANDS UNDER RULES 16 AND 37

Under Fed. R. Civ. P. 16(f) (emphasis added),

> the court may issue *any* just orders, including those authorized by Rule
> 37(b)(2)(A)(ii)-(vii), if a party or its attorney: (A) fails to appear at a scheduling
> or other pretrial conference; (B) is substantially unprepared to participate – or
> does not participate in good faith – in the conference; or (C) fails to obey a
> scheduling or other pretrial order.

The "just orders" under Rule 37 include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" "striking pleadings in whole or in part;" and "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(ii), (v).

The purpose of Rule 16 sanctions "is three-fold: (1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3) to serve as a general deterrent effect on the case and on other litigants as well." *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 455 (S.D.N.Y. 2011) (citation omitted).

6

In addition, under Fed. R. Civ. P. 26(a)(1)(A), as part of his initial disclosures, "a party must, without awaiting a discovery request, provide to the other parties:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; . . . [and]

> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

A party is also required to supplement or correct such initial disclosures – or as also relevant here, responses to requests for production or requests for admission – "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

> (B) may inform the jury of the party's failure; and

> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) – (vi).

Fed. R. Civ. P. 37(c)(1).

"[T]he imposition of the sanctions pursuant to Rule 37 is a matter committed to the discretion of the Court." *North American Karaoke-Works Trade Ass'n, Inc. v. Entral Grp. Int'l*, No. 06-civ-5158-LTS-MHD, 2007 WL 844689, at *3 (S.D.N.Y. Mar. 16, 2007) (denying reconsideration of

dismissal of action). While "the Second Circuit has emphasized that 'drastic' penalties, such as dismissal 'should be imposed only in extreme circumstances.' . . . In Second Circuit cases in which a Rule 37 dismissal was affirmed, bad faith and willful intransigence on the part of counsel were noted." *Id.* (citation omitted). *See, e.g.*, *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (affirming Rule 37 dismissal). "[W]here counsel clearly should have understood his duty to the court the full range of sanctions may be marshalled. Indeed, in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where, as in this case, they are clearly warranted." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (precluding plaintiff's damages proof).

The conduct of Sands and his counsel here smacks of what one Court held to be "flagrant bad faith and a callous disregard for the rules." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 n.2 (S.D.N.Y. 2004). In *Ebewo*, the court excluded from consideration on summary judgment an affidavit that a plaintiff had submitted from a previously undisclosed expert, where the plaintiff "had it within his power to collect all the evidence required to prevail on his claim before the close of discovery," but instead filed the affidavit only during the parties' motion briefing. *Id.* at 607. Not only did the court find that the delay prejudiced the defendant. In a "simple" case where the issues were "straightforward" and plaintiff's factual proof had been "clear" since the pleadings stage, the *Ebewo* court held that the late evidence was "the type of 'sandbagging' of adversaries that Rule 37(c)(1) was designed to prevent." *Id.*

The Ninth Circuit also has enforced sanctions for willful or bad faith violations of Rule 26 in a copyright case concerning the nondisclosure of crucial evidence. *See BWP Media USA v. Urbanity, LLC*, 696 F. App'x 795 (9th Cir. 2017). In *BWP*, the plaintiff repeatedly ignored the

8

defendant's requests for "screen grabs" that, by plaintiff's own admission, would have been necessary to prove its claim. *Id.* at 796-97. Although Rule 26 does not require the affirmative production of documents, the Ninth Circuit noted that "[i]f . . . only the description is provided, the other parties are expected to obtain the documents desired by proceeding under Rule 34 or through *informal* requests." *Id.* at 797 (citing advisory committee's note to 1993 amendments). The appellate court held that "the district court thus did not err in concluding that BWP violated [Rule 26] when it waited to produce or even reveal the existence of additional evidence supporting its claims until it filed its motion for summary judgment." *Id.*

Here, the Court should find Sands liable for such willful or bad faith violations. Bauer has asked for the Photos' licensing history from the outset of this case through formal and informal requests alike. *See* Keegan Decl. ¶3. As noted above, Sands' counsel stated that he had a licensing history for the Photos and that he would provide it. Keegan Decl. ¶4. Evidence of the licensing history was essential to Bauer's fair use defense: specifically, to ascertain the nature of the Photos (e.g., whether they were for an editorial or marketing/publicity purpose), and the effect of their use upon any potential market. *See* 17 U.S.C. § 107(2), (4). Instead, Sands produced hundreds of pages of licensing records for *other photographs*, predating the two Photos at issue here. Only on his motion for summary judgment did Sands assert that he had licensed the Photos to two stock photography agencies, Getty Images and Matrix Pictures, on the same day he purported to take them. Sands Decl. ¶¶12-14. He even exhibited four pages of material from Matrix Pictures, bearing bates stamps as if they had been timely produced to Bauer – when they had never been produced at all. *See* Sands Decl. Ex. C; Keegan Decl. ¶14. And Sands' counsel represented this information, *which Bauer had never seen*, as "material facts as to which Plaintiff contends there is no genuine issue to be tried." Plaintiff's Statement Pursuant to Local

Rule 56.1 dated Sept. 7, 2018 ("Sands 56.1"), ¶¶16-18 (Dkt. No. 30).  Sands' revelation of these

"facts" indicates he has other information concerning to whom Getty Images and Matrix Pictures

licensed the Photos – and for how much.  But he has *never* revealed that information. [7]

This Court should sanction Sands for engaging in the same kind of willful

"gamesmanship" at play in *BWP*.  696 F. App'x at 797.  Sands forced Bauer to incur hours

analyzing discovery that proved not to pertain to the Photos *at all*.  He frustrated Bauer's claim

analysis and crippled its defenses, at a point when the parties and the Court expected this case to

be ready for summary disposition.  It is too late, and too many hours have been needlessly spent,

to find out exactly how the Photos came to appear uncredited on the Ratajkowski Profile to

publicize her "secret project."  Sands and his counsel could have participated in discovery in

good faith, but didn't.  Accordingly, this Court should dismiss this action altogether. [8]  In the

alternative, given that Sands has proffered this information for the first time on summary

judgment, seven months into this "straightforward" case and *more a month after discovery had

closed* (*Ebewo*, 309 F. Supp. 2d at 608), the Court should strike from the record any evidence of

---

[7] In the absence of licensee information from the stock photography agencies, Sands' carefully
worded declaration and Rule 56.1 statement – which assert that he "licensed" one or both Photos
to Getty Images and Matrix Pictures, but that *he* "never licensed the Photographs to Emily
Ratajkowski" and *he* "never granted DKNY permission to distribute the Photographs as part of
its commercial advertising campaign" – seem to leave open the possibility that one of the
agencies *did*.  See Sands 56.1, at ¶¶16-17, 19, 21; Sands Decl. 12-14.

[8] Dismissal as a sanction would "advance[] the basic purposes of Rule 37, while respecting the
demands of due process." *Penthouse Intern., Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371,
387 (2d Cir. 1981).  *See also National Hockey League v. Metropolitan Hockey Club, Inc.*, 427
U.S. 639, 640, 96 S.Ct. 2778, 2780 (1976).  Reversing the Court of Appeals below, the Supreme
Court upheld the district court's dismissal as sanction under Rule 37 where "the conduct of
counsel demonstrate[d] the callous disregard of responsibilities counsel owe to the Court and to
their opponents." *Id.*  In the instant litigation, dismissal would not prejudice Sands' right to due
process.  Sands has filed over 50 claims in this District, and his counsel, who has filed over 700
claims in this District, are well aware of their duties and obligations under the discovery rules.

Sands' licensing the Photos, and preclude him from asserting that the Photos had *any* licensing value.

## II.   ABSENT DISMISSAL, THE COURT SHOULD ORDER SANDS TO SHOW WHY HE SHOULD NOT BE REQUIRED TO POST SECURITY FOR COSTS

Rule 54.2 provides that the Court, "on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." The costs for which security may be required under Rule 54.2 "include defendant's attorneys' fees, as Section 505 of the Copyright Act permits a prevailing defendant to recover its reasonable attorneys' fees." *Cruz v. Am. Broad. Cos.*, No. 17-cv-8794 (LAK), 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017); *Kanongataa v. Am. Broad. Companies, Inc.*, No. 16-cv-7382 (LAK), 2017 WL 4776981, at *2 (S.D.N.Y. Oct. 4, 2017); *see also Baker v. Urban Outfitters, Inc.*, No. 01-cv-5440 (LAP), 2004 WL 2546805, at *2 (S.D.N.Y. Nov. 10, 2004), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).

Courts consider several factors in determining whether a bond is warranted, including "the financial condition and ability to pay of the party at issue; whether that party is a non-resident or foreign corporation; the merits of the underlying claims; the extent and scope of discovery; the legal costs expected to be incurred; and compliance with past court orders." *Cruz*, 2017 WL 5665657, at *1 (quoting *Selletti v. Carey*, 173 F.R.D. 96, 100-01 (S.D.N.Y. 1997), *aff'd in relevant part by* 173 F.3d 104, 111 (2d Cir. 1999)). However, not every factor is relevant to each case, and the court need not consider all factors. *Kensington Int'l Ltd. v. Republic of Congo*, No. 03-cv-04578 (LAP), 2005 WL 646086, at *1 (S.D.N.Y. Mar. 21, 2005).

The questionable merit of Sands' underlying claims; Sands' and his counsel's non-compliance with so-ordered discovery in the instant case; and his counsel's non-compliance with orders from other courts in this District all militate towards the conclusion that, in addition to

11

imposing less harsh sanctions on Sands than dismissal under Rules 16 and 37, he should be required to show why he should not have to post a bond for security before proceeding with this litigation.

### A.    Sands' Claim Lacks Merit

The lack of merit in Sands' claim warrants security for costs and fees. *See Cruz*, 2017 WL 5665657, at *1 ("Security has often been required where the merits of a plaintiff's case are questionable and there is doubt as to the plaintiff's ability to satisfy any costs judgment that ultimately may be imposed."). The publicly available online materials alone demonstrate the newsmaking posts of the Photos on the Ratajkowski Profile, and FHM.com's editorial reporting of the same. Uncredited as the Photos were, FHM.com did not believe and had no reason to believe its use of the Photos constituted copyright infringement.

Discovery revealed that *Sands knew* the Photos had been posted to the Ratajkowski Profile with no attribution to him. The fact that the Photos were available to the author(s) of the Ratajkowski Profile on or about *the same day, at the same location, as part of the same promotional event* – in conjunction with the March 2017 FHM.com article's text showing that the author believed both Photos were publicity materials supporting the DKNY campaign – shows that the appearance of the Photos on its general-interest website "goes at least part of the distance toward the conclusion of fair use." *Cruz*, 2017 WL 5665657, at *2; Answer at 1-2; ¶11. ("As this Court pointed out only recently, a use squarely within the preambulatory portion of Section 107 of the Copyright Act—namely, "criticism, comment, [or] *news reporting*" – goes at least part of the distance toward a conclusion of fair use." (emphasis added).)

Yet Sands sued Bauer anyway for "willful" copyright infringement, "in disregard of and indifference to Plaintiff's rights." Complaint ¶¶ 15-16. This unfounded assertion is undercut by

and completely ignores FHM.com's express belief in its article that the Photos "were a part of" Ms. Ratajkowski's "commercial for DKNY." Sands' summary judgment motion, despite his counsel's casual reference to the case as a "willful copyright infringement action," presents no evidence of any kind to the contrary. *See* Sands Memorandum of Law (Dkt. No. 26), at 1.

Conspicuously absent from his Complaint, Sands completely omitted the text of the article that accompanied the Photos on the FHM.com website. In doing so, he mischaracterized the Photos' appearance with the FHM.com article by obscuring those elements of the article that revealed its reporting and commentary nature. *Compare* Complaint Ex. B (Dkt. No. 1-2), *with* Answer Ex. A (Dkt. No. 10-1).

Bauer included a copy of the FHM.com article with the Photos in their full context as an exhibit to its Answer. Dkt. No. 10-1. Bauer's pleading also detailed the facts summarized above in support of its defenses of fair use reporting and/or implied license; additionally, the pleaded facts established Bauer's assertion that if there was any infringement, it was innocent. *See* Answer pp. 1-2; ¶11, Defenses Nos. 11-12, 19.

### B.  Plaintiff's Failure to Comply with Court Orders

Plaintiff's failure to comply to with past court orders – namely, the so-ordered discovery plan (*see* Dkt. No. 17) – warrants the imposition of a bond as security for costs and fees. *See Selletti*, 173 F.R.D. 96 at 102 (bond imposed where Plaintiff failed to engage in "meaningful discovery").

As discussed above, Sands' counsel misrepresented at the initial conference that Sands had a licensing history for the Photos. While Sands' failure to abide by the terms of the Rule 16 scheduling order is *by itself* egregious enough to warrant the imposition of a bond for security, it is not the only misrepresentation Sands or his counsel has made to this Court. The attorney

appearing for Sands at the initial conference represented to the Court that she – not Richard

Liebowitz, who had signed Sands' Complaint, and who we were subsequently advised retains

ultimate authority over stipulations on Sands' behalf – was attending the conference as Sands'

"principal trial counsel" per the Court's rules. *See also* Fed. R. Civ. P. 16(c)(1). Yet when

Bauer's counsel sought her inputs for the schedule that the Court had ordered the parties to

jointly file by February 20, we were told that she was away. As a result, Bauer initially filed a

schedule request by itself. *See* Dkt. No. 12. More critically, the attorney who appeared for

Sands at the initial conference represented there that Sands had a licensing history of the Photos

that would be provided to Bauer. Keegan Decl. ¶4. Neither she, nor Mr. Liebowitz, nor the

other attorney that subsequently appeared for Sands honored that promise. Nor did Mr.

Liebowitz or the third attorney that appeared for Sands necessarily view the parties' discovery

plan as limited to written discovery as had been contemplated at the initial conference. Compare

Dkt. No. 12 ("In an effort to minimize costs in this action, we request the Court so-order a

schedule for written discovery"), *with* Dkt. No. 34, at 2 (Mr. Liebowitz claiming that Bauer did

not "bother to depose Mr. Sands"). Even if the original attorney returns as "principal trial

counsel" in the event this case is not dismissed, Bauer has been unfairly prejudiced by the

shifting representations of Sands' counsel.

### C.    Other Factors

Sands' attorney's history of non-compliance with past court orders outside of this

litigation, as well as the prolific number of copyright infringement actions he has filed in this

District,[9] stress the need for security here. Sands' counsel has been ordered to do exactly that

---

[9] The Liebowitz Law Firm has filed upwards of 700 actions asserting copyright infringement in this District since 2016. Memorandum Opinion and Order (Dkt. 29), *McDermott v. Monday*

under similar circumstances before more than one court in this District.  Memorandum Opinion and Order (Dkt. 29), *McDermott v. Monday Monday, LLC*, No. 17-cv-9230 (DLC) 208 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018); *Cruz*, 2017 WL 5665657, at *2 n.11.

In *Cruz*, this Court sua sponte ordered a photographer plaintiff – represented by the same counsel as Sands is here – to show cause as to why he should not have to post a bond where "there seem[ed] a reasonable possibility that [the defendant] will prevail on a fair use defense and, moreover, that it would be entitled to recover costs, including attorneys' fees, in that event." *Id.* at *2.  The plaintiff in *Cruz* requested dismissal of the action from the Court before his show-cause response was due.  *See* No. 17-cv-8794, Dkt. No. 8 (memo endorsed Nov. 30, 2017).  Similarly, in the present action, there is a "reasonable possibility" that Bauer will prevail on its meritorious fair use reporting defense, and it will likely recover costs and fees – particularly if the Court precludes Sands from claiming a licensing history or value for the Photos, as discussed above.  *Cruz*, WL 2017 WL 5665657, at *2.  The fair use reporting defense is just as strong in the present action as it was in *Cruz*, especially in light of the fact that one of the Photos appeared on the Ratajkowski Profile on the same day the promotional campaign was filmed.  The FHM.com article was about the way in which Ms. Ratajkowski was promoting her "secret project" (advertising campaign) on social media.  Her social media activity and the Photos that were part of it *were* the news that FHM.com was reporting on.

Another court in this District has found that a plaintiff's frustration of discovery pertaining to a "central issue" in a copyright infringement case – namely, the value of the plaintiff's photograph – favored a bond order under Rule 54.2.  *Baker*, 2004 WL 2546805, at *2.

---

*Monday, LLC*, No. 17-cv-9230 (DLC) 2018 WL 5312903, at *1 (S.D.N.Y. Oct. 26, 2018); *see also Cruz*, 2017 WL 5665657, at *2 n.11.

The value of the Photos in this case likewise has been a "central issue" from the outset.  Yet Sands never produced any licensing history for the Photos, which his counsel promised at the parties' initial conference; and during discovery, Sands produced *zero* evidence of ever having licensed either Photo to anyone, or even offering either Photo for license.  He therefore should be precluded from asserting any effect of the Photos' appearance on FHM.com on a potential licensing market. [10]  17 U.S.C. § 107 (4).

For example, in *Pereira v. 3072541 Canada Inc.*, prior to the parties' initial conference, the defendant's counsel informed the court that despite having advised plaintiff's counsel of defendant's first-sale defense, plaintiff made an "entirely unreasonable" settlement demand in a case that was demonstrably worth "less than $100" in actual damages.  The court entered a show-cause order following the initial conference, and plaintiff's counsel withdrew the action without filing any show-cause response.  *See Pereira v. 307251 Canada Inc.*, No. 17-cv-6945 (RA), Dkt. No. 9-1 (Joint Letter) (S.D.N.Y. Nov. 27, 2017), Dkt. No. 16 (Order) (S.D.N.Y. Dec. 19, 2017), Dkt. No. 24 (Notice of Voluntary Dismissal) (S.D.N.Y. Jan. 4, 2018).  *See also Reynolds v. Hearst Commc'ns, Inc.*, No. 17-cv-6720 (DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) (noting Sands' counsel "has been labelled a copyright 'troll'" and collecting cases); Order, *Steeger v. JMS Cleaning Services, LLC*, No. 17-cv-8013 (DLC), Dkt. No. 17 (S.D.N.Y. Feb. 6, 2018).

### D.    Security of At Least $50,000 for Expected Costs and Attorneys' Fees is Appropriate

The appropriate amount of a bond required under Rule 54.2 is in the sound discretion of the trial court.  *See Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, No. 06-cv-3085 (KMW),

---

[10] The nature of any previous licenses for the Photos would also bear on the second fair use factor; accordingly, Sands should be limited in that respect as well.  17 U.S.C. § 107(2).

2008 WL 2876508, at *4 (S.D.N.Y. July 21, 2008); *see also Kanongataa*, 2017 WL 4776981, at

*3 (approving full amount of attorneys' fees requested).  Bauer's costs and attorneys' fees in this

action have already exceeded $50,000.  Requiring Plaintiff to post a $50,000 bond would secure

a material portion of the costs and attorneys' fees that Bauer would recover in the likely event it

prevails on its fair use defense.  Such security is especially appropriate where the costs and fees

already accrued in this matter far outweigh the value of the case.  Nor would the imposition of a

$50,000 bond materially affect Plaintiff's ability to prosecute its claims.  *Selletti*, 173 F.R.D. at

103 ("[T]he amount of the bond should not "seriously impede" plaintiff's ability to prosecute the

action"; plaintiff ordered to post $50,000 security).

## CONCLUSION

The Court should dismiss Sands' action against Bauer as a sanction under Fed. R. Civ. P.

16, 26 and 37.  In the alternative, the Court should sanction Sands by striking portions of Sands'

testimony and evidence in support of summary judgment, and precluding him from asserting that

the Photos had *any* licensing history or value.  And if the Court does not dismiss the action, it

should require Sands to show why, before proceeding, he should not have to post a bond under

Local Civil Rule 54.2 in the amount of $50,000.

Dated: November 2, 2018            Respectfully submitted,
       New York, New York


                                        /s/ Terence P. Keegan
                                        Terence P. Keegan
                                        David S. Korzenik
                                   MILLER KORZENIK SOMMERS RAYMAN LLP
                                   The Paramount Building
                                   1501 Broadway, Suite 2015
                                   New York, New York 10036
                                   Tel (212) 752-9200
                                   dkorzenik@mkslex.com
                                   tkeegan@mkslex.com
                                   *Attorneys for Defendant*