UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

STEVE SANDS,                                                              Docket No.: 1:17-cv-09215 (LAK)

        Plaintiff,

- against -

BAUER MEDIA GROUP USA, LLC,

        Defendant.
--------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF BAUER MEDIA GROUP USA, LLC'S MOTION FOR SANCTIONS AND/OR SECURITY FOR COSTS

MILLER KORZENIK SOMMERS RAYMAN LLP
David S. Korzenik
Terence P. Keegan
The Paramount Building
1501 Broadway, Suite 2015
New York, New York 10036
Tel (212) 752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com
*Attorneys for Bauer Media Group USA, LLC*

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF BAUER MEDIA GROUP USA, LLC'S MOTION FOR SANCTIONS AND/OR SECURITY FOR COSTS

Defendant Bauer Media Group USA, LLC ("Bauer") respectfully submits this reply memorandum of law in further support of its motion 1) for sanctions under Fed. R. Civ. P. 16, 26, and 37 – specifically, to dismiss Plaintiff Steve Sands' ("Sands") complaint, or 2a) in the alternative, to strike portions of Sands' testimony and evidence in support of summary judgment and 2b) for a bond as security for costs under Local Civil Rule 54.2.

### INTRODUCTION

Steve Sands prides himself on being a "frequent filer[ ]" in this District. Memorandum of Law in Opposition (Dkt. No. 43) ("Opp."), at 9. He has used courts in this District to net "over 45" settlements of photo copyright claims to date. *Id.*; *see also* Declaration of Steve Sands dated Nov. 30, 2018 (Dkt. No. 44) ("Sands Opp."), at ¶8. Sands' counsel even proclaims his litigiousness helps to "maintain order in society, and promote the Progress of the Sciences and the useful Arts." Opp. at 25 n.8.

That cannot be further from the case here.

At the parties' initial conference on February 6, 2018, Sands' counsel promised Bauer's counsel and the Court to provide licensing information *for the two Photos at issue*. Keegan Decl. ¶4. But immediately thereafter, Sands and his counsel made a game of disclosing only general or historical licensing information. *Id.* ¶¶6-11. Not until one month after discovery ended did Sands reveal, in support of summary judgment, that he had licensed the Photos through two agencies. Moving Memorandum (Dkt. No. 40) ("Mem.") at 4; Declaration of Steve Sands dated Sept. 7, 2018 (Dkt. No. 27) at ¶¶12-13.

Even up to November 30, when Sands filed his opposition to the instant motion, Sands' counsel claimed he had been under no "obligation" to furnish licensing information for the

Photos to Bauer. Opp. at 24, 26. Yet just last week – four months after the stipulated and so-ordered close of fact discovery, and on the eve of Bauer's reply deadline for this sanctions motion – Sands' counsel produced for the first time documents that appear to show the Photos' licensing history through Getty Images. Reply Declaration of Terence P. Keegan dated December 14, 2018 ("Keegan Rep."), at ¶¶3-4 & Ex. A. They did so "pursuant to Plaintiff's *continuing obligation* to produce documents *responsive to Defendant's requests* throughout the pendency of litigation." *Id.* (emphasis added). Crucially, these documents seem to reveal that licenses for the Photos did not fetch the six figures Sands touts in opposition to this motion (*see* Sands Opp. at ¶13 & Ex. A), but just single- or double-digit sums.[1]

In light of this belated production, the excuses Sands offered in his opposition for not producing this information during discovery turn out to be utter falsehoods.

Had Sands produced this material information when his counsel first promised it, it would have guided the way this case was managed and litigated from the outset. Sands' withholding of this information until months after the stipulated, so-ordered close of fact discovery has magnified Bauer's costs unfairly and unreasonably.

The "flagrant bad faith and callous disregard for the rules" by Sands and his counsel cannot be more transparent. *See* Mem. at 8 (citing *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 n.2 (S.D.N.Y. 2004)); Dkt. Nos. 45 & 46. Dismissal of this action with prejudice is the most

---

[1] Sands continues to assert that his productions are confidential and "subject to" a "Protective Order" that was never drafted and never agreed to. *See* Keegan Decl. ¶11; Keegan Rep. ¶5. Bauer's counsel therefore will be prepared to discuss the particular fee amounts these documents show at oral argument. *See* Dkt. No. 46. Additionally, Sands' December 6 production is Bates-stamped beginning with the number 643, even though the last documents he disclosed (in an exhibit to his declaration in support of summary judgment) ended with the number 634. *See* Dkt. No. 27-3, at 5. This suggests that either Sands' counsel hastily numbered their latest production, or that another eight pages of documents are still being withheld.

2

appropriate sanction against Sands for his willful and costly "gamesmanship." Mem. at 10, citing *BWP Media USA v. Urbanity, LLC*, 696 F. App'x 795, 797 (9th Cir. 2017).

## I. SANDS' OPPOSITION PAPERS, AND HIS BELATED PRODUCTION OF THE PHOTOS' LICENSING HISTORY, FURTHER SHOW WHY DISMISSAL IS THE MOST APPROPRIATE SANCTION

It should have been obvious to Sands before he filed this lawsuit that this case did not involve a publisher "stealing my work and exploiting it without my permission." Sands Opp., ¶8; *see* Mem., at 3. Sands claims that Bauer "routinely licenses photographs from me in its ordinary course of business," as if that would somehow conflict with Bauer's pleading that FHM.com and Bauer had no indication that copyright in the Photos was owned by Sands. *Id.*; *see* Opp. at 18-19. On the contrary, Sands' claim of a prior licensing history with Bauer for other photos suggests that if he had made FHM.com aware that the Photos were *not* part of a DKNY commercial as the website had reported, and that the Ratajkowski Profile had failed to credit him, Bauer likely would have resolved the situation with a correction to its article and a license for the images. [2]

But Sands never offered Bauer that opportunity. He admits he made no pre-litigation resolution effort. Opp. 5; *see* Sands Decl. (Dkt. No. 27) at 25. Instead he sued, claiming willful infringement, and his counsel demanded a five-figure settlement. And for the last year – long after Bauer noticed its fair use defense to liability, or in the absence of fair use, its innocent infringement defense to damages (Dkt. No. 10, at 1-2, 7 ¶11 and 8 ¶19; Dkt. No. 16) – Sands

---

[2] In fact, Sands' belatedly produced statements from Getty Images show previous licenses from other Bauer Media entities in the United Kingdom and Australia, and Bauer Publishing Company L.P. in the U.S. Sands Opp. Exs. B (at SANDS0365) and C (*passim*).

3

kept from Bauer and the Court any evidence of whom he licensed the Photos to, for what purpose, and for how much. Mem. at 3-4. [3]

Sands disingenuously attempts to equate the licensing information for the Photos (which he did not reveal during discovery) with the irrevelant "benchmark licensing fee history" he did produce – such as a $125,000 exclusive for photographs of the actress Gwyneth Paltrow and her family with the print edition of *People* magazine from 14 years ago. *See* Opp. at 26, 31; Sands Opp. ¶13 & Ex. A, at 1. Similarly, Sands' counsel Richard Liebowitz tries to change the promise his associate made at the parties' initial conference in February to provide licensing information for the Photos to a promise to simply provide "licensing fee history." *See* Keegan Decl. ¶4. [4]

Sands and his counsel fail to recognize that when Sands declined to disclose or produce evidence of having licensed the Photos, there was a failure of proof in the record that the Photos were available for license *at all*. It was not Bauer's burden during discovery to "compel" Sands to counter Bauer's defenses of fair use and innocent infringement, upon which his licensing history for the Photos would directly bear. Opp. at 22, 32. [5] It was not Bauer's burden to

---

[3] The Photos do not "remain on Bauer's website" as Sands' counsel contends. Opp. at 6. As Bauer noted in its letter to the Court dated September 6, 2018, editorial content on the FHM.com website has been discontinued altogether, and the article at issue was taken down on or about September 5, 2018. See Dkt. No. 23, at 4 n.5.

[4] Mr. Liebowitz did not attend the initial conference himself; the associate represented that she would be serving as Sands' principal trial counsel. Now, Mr. Liebowitz casually notes that the attorney "is no longer associated with the Liebowitz Law Firm" – even though she is still listed in the case, and never sought the Court's permission to withdraw. Opp. at 22. *See* Local Civil Rule 1.4 (prohibiting attorneys of record to withdraw from a case "without leave of the Court granted by order").

[5] Regarding the first fair use factor, "the purpose and character of the use" (17 U.S.C. §107(1)), the appearance of the Photos in the FHM.com article was not merely "eye candy" as Sands suggests (Opp. at 12), or merely "illustrative aids" as he contends in his counsel's "supplemental authority" letter (Dkt. No. 47, at 2, citation omitted). Rather, the brief article references the

4

"compel" Sands to demonstrate "the nature of the copyrighted work[s]": that is, that the Photos were not "part of [a] commercial for DKNY" as FHM.com had reported (Mem. at 3), but were created for independent licensing. *See* 17 U.S.C. § 107(2). Nor was it Bauer's burden to "compel" Sands to demonstrate that the appearance of the Photos with the FHM.com article had any "effect" upon the Photos' "potential market" or "value." *See* 17 U.S.C. §107(4). [6] Nor was it Bauer's burden, in the absence of fair use, to "compel" Sands to demonstrate why Bauer somehow should have been aware in March 2017 that the appearance of the Photos on the FHM.com website constituted an infringement of copyright at all – uncredited as the Photos were on the Ratajkowski Profile that had served as the article's source. *See* 17 U.S.C. § 504(c)(2); Mem. at 1. Bauer repeatedly requested any such evidence from Sands, and received *nothing* before the stipulated close of discovery. Keegan Decl. ¶¶4, 11-13. [7]

Sands' counsel protests that Bauer was on "inquiry notice" that Sands licensed the Photos through Getty Images, because Sands had produced statements from that agency between May 2014 and July 2016 for other licensed photographs. Opp. at 30. Yet in their belated 226-page production just last week – which includes licensing statements from Getty Images from 2017,

---

"stunning pictures" themselves in its first line (see Opp. at 4), and plainly reports on them from an understanding that they "were a part of her commercial for DKNY," which was unveiled on or about the same date as the article. Mem. at 4. The article would not have had to comment on "the merits of Sands' photography" to qualify as a fair use news report of the commercial. Opp. at 12.

[6] At any rate, "market impairment should not turn the fourth factor" of fair use "unless it is reasonably substantial." Pierre N. Leval, Toward A Fair Use Standard, 103 Harv. L. Rev. 1105, 1125 (1990).

[7] Sands acknowledges that to prove willful copyright infringement, it would have been his burden to show that Bauer's actions "were the result of 'reckless disregard'" for Sands' rights. Opp. at 18. Previous licensing history for other photographs is of no use on these facts. *See* Mem. at 5. To the extent that the Photos appeared uncredited on the Ratajkowski Profile with Sands' consent (Opp. at 20), Sands' claim of willful copyright infringement would be completely contrived.

5

and seems to show licenses for the Photos – Sands' counsel acknowledged that Sands had a "*continuing obligation* to produce documents *responsive to Defendant's requests* throughout the pendency of litigation." Keegan Repl. ¶3 & Ex. A (emphasis added). Bauer had repeatedly requested this information for the duration of the case. [8]

As to the four pages of documents from Matrix Pictures that Sands exhibited in his motion for summary judgment, they show no actual licensing of the Photos to third parties. At most, they show licensing availability of one of the Photos in the United Kingdom at the same time as FHM.com's first reporting on the Ratajkowski Profile – not before. *Compare* Sands Opp. ¶18 & Ex. E, at 1, *with* Mem. at 4. At any rate, Sands denied Bauer any opportunity to question him further on the Photo's availability through this agency. That would have been possible even if Bauer had received the documents on the last day of discovery (Opp. at 34 n.11), but not in the middle of motion practice.

None of this is "simple negligence" by counsel, or "harmless" failure to disclose or produce. Opp. at 33. Only *this month* has Sands begun to produce evidence of just how low-value these Photos really are. Withholding licensing information for the Photos kept alive the possibility that Bauer would tire of litigation expenses and give in to Sands' shakedown – a classic "copyright troll" strategy in line with the hundreds of other cases brought by Sands' counsel in this District, if not the dozens of cases filed on Sands' own behalf. *See McDermott v.*

---

[8] The December 6, 2018 production seriously contradicts statements Sands made under penalty of perjury less than a week prior: namely, that if he did not produce documents to Bauer, "it's because I did not have them" (Sands Opp. at ¶11); and his mysterious statement, "I do not have any Getty Images statements for 2017 because Getty de-activated my account." *Id.* at ¶17.

6

*Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018): [9]

> In common parlance, copyright trolls are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.

Litigation should not be undertaken in this misleading manner. Sands' approach to discovery and litigation in this case has needlessly added substantial costs to Bauer's defenses. As shown by Bauer on this motion, Sands and his counsel – either deliberately or by "callous disregard for the rules" (*Ebewo*, 309 F. Supp. 2d at 607 n.2; Mem. at 8) – have kept Bauer and the Court from knowing the true value of this case from the start.

Per Sands' own authority, courts in this Circuit have "wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Yet Sands limits his opposition to dismissal as a Rule 16/37 sanction to a single footnote. Opp. at 35 n.12. However, unlike in *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007) – where the underlying discovery question of whether the plaintiff even had access to documents at issue prompted the Second Circuit to remand (*id.* at 139) – Sands promised the licensing history for the Photos, then denied possession of the information, and then suddenly produced it four months after the close of discovery. And even the *Shcherbakovskiy* Court recognized that "Dismissal under Rule 37 is warranted" where, as here, "a party fails to comply with the court's discovery orders willfully, in

---

[9] As with his counsel's prolific docket, most of Sands' own closed cases – in fact, almost all of them – have been "disposed of before any merits-based litigation." *McDermott*, 2018 WL 5312903, at *2.

7

bad faith, or through fault." *Id.* at 140 (citation omitted). "Although dismissal of an action or proceeding is the most severe of appropriate sanctions for noncompliance with discovery orders . . . 'the requisite "element of willfulness or conscious disregard" for the discovery process . . . justifies the sanction of dismissal.'" *Minotti v. Lensink*, 895 F. 2d 100, 103 (2d Cir. 1990) (citations omitted). Here – in a case where Bauer's counsel raised the need for cost-efficient discovery and motion practice at the parties' initial conference (Mem. at 4; Dkt. No. 12) – the Court so-ordered three stipulated discovery schedules, including two extensions of time. Dkt. Nos. 17, 19, 21. Sands' unexplained production of the material licensing history for the Photos four months after the so-ordered close of fact discovery, after nearly a year of flip-flopping on whether such licensing history existed or was in his possession, strongly indicates such "conscious disregard."

## II.     DISMISSAL IS MORE APPROPRIATE THAN ALTERNATIVE SANCTIONS

Bauer proposed alternative sanctions for Sands' abuse in its moving papers. Mem. at 10-11; *Shcherbakovskiy*, 490 F.3d at 140 (sanction of dismissal usually follows "consideration of alternative, less drastic sanctions"). But with Sands' belated revelation of licensing information for the Photos, compensation for Bauer's months of lost time and wasted effort is the minimum alternative the Court should consider. Fed. R. Civ. P. 16(f)(2); Fed. R. Civ. P. 37(c)(1)(A).

Even if the Court were to now consider the security that Bauer proposed in the alternative, Sands is wrong that the Court must consider all the *Selletti* factors. Opp. at 6-9; *see* Mem., at 11. Sands fails to grasp that if the Court also were to preclude him from relying on untimely evidence of licensing for the Photos, as Bauer has requested (Mem. at 10-11), then in the wake of his proof failure on the 17 U.S.C. § 107 factors, Bauer's fair use defense would prevail. Additionally, Sands ignores that courts considering the award of fees under 17 U.S.C. § 505 can look to litigation misconduct, *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979,

8

1988-89 (2016), or compensation and deterrence, *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533, 2010 WL 3452375, at *4 (S.D.N.Y. Sept. 1, 2010) (Opp. at 20), even if the underlying infringement claim is not objectively unreasonable. And irrespective of whether attorneys' fees could be "properly awarded against the plaintiff under section 505, such an award against plaintiff's counsel may be appropriate in an exercise of [the] Court's inherent power." *McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018), *motion for relief from judgment denied*, No. 17CV9230 (DLC), 2018 WL 5312903 (S.D.N.Y. Oct. 26, 2018).

## CONCLUSION

Sands' opposition and belated production further show how willfully blind he has been over the past year to the facts of this case and the law, and how he and his counsel have flouted their obligations to Bauer and the Court. The Court should grant Bauer's motion.

Dated: December 14, 2018  
      New York New York

Respectfully submitted,

   /s/ Terence P. Keegan  
Terence P. Keegan  
David S. Korzenik  
MILLER KORZENIK SOMMERS RAYMAN LLP  
The Paramount Building  
1501 Broadway, Suite 2015  
New York, New York 10036  
Tel (212) 752-9200  
dkorzenik@mkslex.com  
tkeegan@mkslex.com  
*Attorneys for Bauer Media Group USA, LLC*