UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE SANDS,

                               Plaintiff,

        - against -

BAUER MEDIA GROUP USA, LLC

                             Defendant.

Docket No. 17-cv-09215 (LAK)

ORAL ARGUMENT
REQUESTED

**MEMORANDUM OF LAW IN RESPONSE TO COURT'S ORDER TO SHOW CAUSE AS TO WHY PLAINTIFF SHOULD <u>NOT</u> BE REQUIRED TO POST A BOND AS SECURITY FOR COSTS AND FEES UNDER LOCAL RULE 54.2**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ............................................................................................................... 1

PROCEDURAL BACKGROUND ......................................................................................... 2

STATEMENT OF FACTS ................................................................................................... 3

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

POINT I:     DEFENDANT HAS FAILED TO SHOW THAT PLAINTIFF LACKS THE
FINANCIAL ABILITY TO SATISFY A JUDGMENT ........................................... 7

POINT II:    DEFENDANT HAS FAILED TO SHOW THAT PLAINTIFF IS A NON-
RESIDENT OR FOREIGN CORPORATION ........................................................ 8

POINT III:   DEFENDANT HAS FAILED TO DEMONSTRATE THAT IT IS LIKELY TO
PREVAIL ON SANDS' INFRINGEMENT CLAIM ............................................... 9

A.   DEFENDANT'S FAIR USE DEFENSE, WHICH IS BASED ON BAUER'S "NEWS REPORTING"
ABOUT THE PHYSICAL BEAUTY OF THE CELEBRITY FASHION MODEL DEPICTED IN THE
PHOTOGRAPHS, IS MERITLESS ............................................................................ 10

   (1)  Defendant Cannot Plausibly Show That Its Secondary Use Was Transformative ........ 10

   (2)  The Fourth Fair Use Factor Weighs Heavily in Plaintiff's Favor Even Without Any
Evidence of Actual Licensing History ......................................................... 13

B.   BAUER'S IMPLIED LICENSE DEFENSE IS OBJECTIVELY UNREASONABLE ........................... 15

   (1)  Defendant Cannot Establish the Elements of an Implied License Defense .................. 15

   (2)  In the Absence of Sands' Express Authorization, Defendant Cannot Establish that Ms.
Ratajkowski Had the Right to Sub-License the Images to Bauer ................................ 16

C.   BAUER'S DEFENSE OF "INNOCENCE" IS FRIVOLOUS AND, IN ANY EVENT, IS NOT A DEFENSE
TO INFRINGEMENT LIABILITY ............................................................................ 17

   (1)  As a Threshold Matter, Bauer's State-of-Mind Has No Bearing on Its  Liability for
Copyright Infringement .............................................................................. 17

     *(2)*   *As Part of Bauer's Ordinary Course of Business, Bauer Routinely Licenses Celebrity Photographs from Sands* ............................................................................................... *18*

     *(3)*   *Bauer Must be Charged With the Utmost Knowledge of U.S. Copyright Law Which Treats Photographers as the Authors / Owners of Pictorial Works* ........................... *19*

POINT IV:     BAUER HAS FAILED TO DEMONSTRATE THAT SANDS' CLAIM IS OBJECTIVELY UNREASONABLE .................................................................. 20

POINT V:   BAUER HAS FAILED TO DEMONSTRATE THAT SANDS HAS DISOBEYED ANY COURT ORDERS, INCREASED THE COST OF LITIGATION OR OBSTRUCTED DISCOVERY ............................................................................... 21

  A.   DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS VIOLATED ANY COURT ORDER IN THIS ACTION, INCLUDING THE RULE 16 SCHEDULING ORDERS ............. 21

  B.   DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS VIOLATED ANY COURT ORDER IN ANY OTHER ACTION .............................................................................. 23

  C.   DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS HAS MULTIPLIED THE COST OF THIS PROCEEDING ................................................................................................ 23

  D.   DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS OBSTRUCTED DISCOVERY ........................................................................................................................ 24

  E.   DEFENDANT HAS FAILED TO PRESENT ANY AUTHORITY FOR THE PROPOSITION THAT SANDS IS REQUIRED TO PRODUCE EVIDENCE OF LICENSING FEE HISTORY IN AN INFRINGEMENT CASE SEEKING STATUTORY DAMAGES ..................................................... 24

POINT VI:    DEFENDANT HAS FAILED TO SUBSTANTIATE THE AMOUNT OF FEES OR COSTS REQUESTED WITH ANY ADMISSIBLE EVIDENCE ................ 26

# TABLE OF AUTHORITIES

## CASES

*Apple Computer, Inc. v. Franklin Computer Corp.,*
714 F.2d 1240, 1255 (3d Cir. 1983) .................................................................... 25

*Associated Press v. Meltwater U.S. Holdings, Inc.,*
931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013) (Cote, J.) .................................... 15, 20

*Atkins v. Sunbelt Rentals, Inc.,*
No. PWG-14-1717, 2015 WL 13612030, at *4 (D. Md. Sept. 7, 2015) ................... 28

*Atlanta Shipping Corp. v. Chemical Bank,*
631 F.Supp. 335, 352 (S.D.N.Y.1986) ..................................................................... 7

*Balsley v. LFP, Inc.,*
691 F.3d 747, 761 (6th Cir.2012) .......................................................................... 14

*Barcroft Media, Ltd. v. Coed Media Group, LLC,*
No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017) ..................... 11

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.,*
No. 06 CIV. 3085 KMW FM, 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008) ............... 8

*Bryant v. Media Right Productions, Inc.,*
603 F.3d 135, 144 (2d Cir.2010) ............................................................................ 21

*Burrow-Giles Lithographic Co. v. Sarony,*
111 U.S. 53, 60 (1884) ............................................................................................ 19

*BWP Media USA, Inc. v. Gossip Cop Media, LLC,*
196 F.Supp.3d 395, 407 (S.D.N.Y. 2016) .............................................................. 11

*Camp v. Colvin,*
No. 14-CV-6143T, 2014 WL 6474630, at *2 (W.D.N.Y. Nov. 19, 2014) ............... 35

*Capital Records, Inc. v. MP3tunes, LLC,*
48 F.Supp.3d 703, 732 (S.D.N.Y. 2014) ............................................................... 25

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
536 F.3d 121, 130 (2d Cir. 2008) .......................................................................... 17

*Choyce v. SF Bay Area Indep. Media Ctr.,*
No. 13-CV-01842-JST, 2014 WL 5597274, at *2 (N.D. Cal. Nov. 3, 2014), *aff'd*, 669 F.
App'x 863 (9th Cir. 2016) ...................................................................................... 19

*CJ Products, LLC v. Your Store Online LLC*,
   No. 11-cv-9513 (GBD) (AJP), 2012 WL 2856068, fn. 4 (S.D.N.Y. July 12, 2012) ............... 26

*Cranston Print Works Co. v. J. Mason Prod.*,
   No. 96 CIV. 9382 (DLC), 1998 WL 993657, at *6 (S.D.N.Y. July 27, 1998) ........................ 17

*Crispin v. Christian Audigier, Inc.*,
   839 F.Supp.2 1086, 1096 (C.D .Cal. 2011) ............................................................................. 16

*Ebewo v. Martinez*,
   309 F. Supp. 2d 600, 606–07 (S.D.N.Y. 2004) ....................................................................... 35

*EMI Christian Music Group, Inc. v. MP3tunes, LLC*,
   844 F.3d 79, 89 (2d Cir. 2016) ................................................................................................ 17

*Entral Group Int'l LLC v. Honey Cafe on 5th, Inc*.,
   2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) ................................................................ 26

*Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.,*
   807 F.2d 1110, 1113 (2d Cir.1986) ......................................................................................... 17

*Frutiger v. Hamilton Cent. Sch. Dist.*,
   No. 90-CV-303, 1993 WL 358480, at *5 (N.D.N.Y. Sept. 9, 1993), *dismissed sub
   nom. Frutiger v. Hamilton Cent.*, 28 F.3d 102 (2d Cir. 1994) ................................................. 35

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
   No. 08 CIV. 01533, 2010 WL 3452375, at *2 (S.D.N.Y. Sept. 1, 2010) ........................... 6, 20

*Graham v. James*,
   144 F.3d 229, 236 (2d Cir. 1998) ........................................................................................... 15

*Granite Music Corp. v. Ctr. St. Smoke House, Inc.*,
   786 F. Supp. 2d 716, 725 (W.D.N.Y. 2011) ........................................................................... 17

*Harper & Row*,
   471 U.S. at 557 ........................................................................................................................ 10

*Harris v. Emus Records Corp.*,
   734 F.2d 1329, 1333 (9th Cir. 1984) ...................................................................................... 16

*Khaldei v. Kaspiev*,
   No. 10 CIV. 8328 JFK GWG, 2014 WL 7373383, at *2 (S.D.N.Y. Dec. 30, 2014) ................. 8

*Kinnally v. Rogers Corp.,*
   No. CV-06-2704-PHX-JAT, 2008 WL 4850116, at *4 (D. Ariz. Nov. 7, 2008) ..................... 29

*Konangataa v. Am. Broadcasting Companies, Inc.*,
    No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ....................... 12

*L.A. Printex Industries, Inc. v. G&G Multitex, Inc.*,
    No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13, 2010) .................... 16

*Lujan v. Cabana Mgmt., Inc.*,
    284 F.R.D. 50, 68 (E.D.N.Y.2012) ............................................................................ 34

*Malinowski v. Playboy Enterprises, Inc.*,
    706 F. Supp. 611, 615 (N.D. Ill. 1989) ..................................................................... 19

*Matheson v. Kitchen*,
    515 Fed.Appx. 21, 23 (2d Cir.2013) ......................................................................... 33

*McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,
    No. CV 09-571 (SRC) (PS), 2011 WL 13238414, at *2 (D.N.J. Nov. 7, 2011) .................... 29

*Millea* v. *Metro-North R.R. Co.*,
    658 F.3d 154, 166 (2d Cir. 2011) ............................................................................. 27

*Miller v. Glenn Miller Productions, Inc.*,
    454 F.3d 975, 988 (9th Cir. 2006) ............................................................................ 16

*Morgenstern v. County of Nassau*,
    No. 04–Civ.–0058(JS) (ARL), 2008 WL 4449335, at *2 (E.D.N.Y. Sep. 29, 2008) .............. 35

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295, 307 (3d Cir. 2011) ....................................................................... 10, 12

*N'Jai v. New York State Higher Educ. Servs. Corp.*,
    214 F.R.D. 251, 252 (E.D.N.Y. 2003) ......................................................................... 7

*Natkin v. Winfrey*,
    111 F. Supp. 2d 1003, 1008 (N.D. Ill. 2000) .............................................................. 19

*Nunez v. Caribbean Int'l News Corp.*,
    235 F.3d 18, 25 (1st Cir. 2000) ............................................................................... 12

*Pearson Education, Inc. v. Nugroho*,
    No. 08-cv-8034 (DAB) (AJP), 2009 WL 3429610, *5 (S.D.N.Y. Oct. 27, 2009) .................. 26

*Psihoyos v. John Wiley & Sons, Inc.*,
    No. 11 CIV. 1416 JPO, 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 748 F.3d
    120, 127 (2d Cir. 2014). ......................................................................................... 24

*Psihoyos v. National Examiner*, No. 97 Civ. 7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998)..........................................................................................................................................11

*RLS Assocs., LLC v. United Bank of Kuwait PLC,*  ..............................................................................
464 F. Supp. 2d 206, 209 (S.D.N.Y. 2006) ...........................................................................7, 8

*S.O.S., Inc. v. Payday,*
886 F.2d 1081, 1088 (9th Cir.1989) .........................................................................................15

*Sea Trade Co. v. FleetBoston Fin. Corp.,*
No. 03 CIV. 10254 (JFK), 2008 WL 161239, at *2 (S.D.N.Y. Jan. 15, 2008).........................7

*SmithKline Beecham Consumer Healthcare v. Watson Pharmaceuticals, Inc.,*
211 F.3d 21, 25 (2d Cir.2000) ..................................................................................................15

*Sony Corp. of America v. Universal City Studios, Inc.,*
464 U.S. 417, 450 (1984) ..........................................................................................................13

*Stewart v. Abend*, 4
95 U.S. 207, 238 (1990) ............................................................................................................13

*Swatch Group Management Services Ltd. v. Bloomberg L.P.,*
756 F.3d 73, 85 (2d Cir. 2014) .................................................................................................10

*Walt Disney Co. v. Best,*
No. 88 Civ. 1595(SWK), 1990 WL 144209, at *4 (S.D.N.Y. Sept. 26, 1990).........................25

*Yurman Design, Inc. v. PAJ, Inc.,*
262 F.3d 101, 112 (2d Cir.2001) ..............................................................................................18

## STATUTES

17 U.S.C. § 101 ...............................................................................................................................2
17 U.S.C. § 106 .............................................................................................................................14
17 U.S.C. § 107 .......................................................................................................................passim
17 U.S.C. § 201(a).........................................................................................................................19
17 U.S.C. § 504(c)(2).....................................................................................................................17
17 U.S.C. § 505 .............................................................................................................................20

## RULES

L.R. 54.2..................................................................................................................................passim
Rule 37 …………………………………………………………………………………….passim
Rule 16 …………………………………………………………………………………….passim

## TREATISES

4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.04[A] (2009 ed.)..........26

## <u>INTRODUCTION</u>

Plaintiff Steve Sands ("Plaintiff" or "Sands") is a professional photojournalist and celebrity photographer who owns the copyright to two iconic image of celebrity fashion model Emily Ratajkowski. Defendant Bauer Media Group USA, LLC ("Defendant" or "Bauer") is a sophisticated media publisher who is well-versed in U.S. copyright law and who has licensed celebrity photographs from Sands dating back five years. Nevertheless, Bauer exploited Plaintiff's copyrighted material for profit without his authorization and without providing attribution.

After Plaintiff filed a motion for summary judgment on liability for copyright infringement, Defendant sought to delay adjudication of the dispositive motion by filing this frivolous bond motion based on only two of the six factors recognized by the Second Circuit in assessing whether bond should be imposed. Defendant seeks $50,000 but has failed to submit any evidence, or even an attorney affidavit, to substantiate this amount. Moreover, a bond requirement would be entirely unjustified given that there is no evidence that Sands is financially incapable of satisfying a judgment and given that that he is a U.S. citizen and 61-year resident of this District who frequently litigates in this District. His assets are located in this District.

Bauer has abjectly failed to demonstrate that it will prevail in this action, that Sands' claim is frivolous, or that Sands has done anything to increase the costs of litigation.

Accordingly, Plaintiff respectfully requests that the Court deny Sands' motion in its entirety and permit a full and fair hearing on the merits.

## PROCEDURAL BACKGROUND

On November 22, 2017, Plaintiff filed a one-count action for copyright infringement against Defendant under 17 U.S.C. § 101 *et seq.* [ECF Docket ("Dkt.") #1]

On January 19, 2018, Defendant filed its answer to the complaint. [Docket #10]

On February 27, 2018, the parties filed a joint motion submitting a discovery schedule and proposing a summary judgment briefing schedule. [Dkt. # 16]

On August 7, 2018, the Court entered the parties' stipulation which sought to revise the briefing schedule and which ordered Plaintiff to file his motion for summary judgment by September 7, 2018 [Dkt. #21 (the "Scheduling Order")]

On September 6, 2018, one day before Plaintiff was due to file his motion for summary judgment pursuant to the Scheduling Order, Defendant requested that the Court suspend the summary judgment briefing schedule so as to permit Defendant to file a bond motion and for sanctions. [Dkt. # 6]

On September 7, 2018, Plaintiff filed his motion for summary judgment on liability for copyright infringement against Defendant. [Dkts. # 25-30]

On September 13, 2018, the Court granted Defendant's motion to stay the briefing schedule on summary judgment. [Dkt. # 33]

On October 23, 2018, Plaintiff moved the Court to lift the stay on the briefing schedule for summary judgment given that Defendant had failed to make any motion after 40 days had passed since the Court's order staying the briefing schedule. [Dkt. #34]

On October 23, 2018, the Court denied Plaintiff's motion to lift the stay. [Dkt. #36]

On November 2, 2018, Defendant filed a motion for a bond.

On September 18, 2019, the Court asked Plaintiff to show cause why a bond of $50,000 should not be imposed. [Dkt. #56]

## STATEMENT OF FACTS

### Plaintiff Steve Sands

Sands is a professional celebrity photographer who has been in the business of licensing his photographs for over 40 years. [56.1,[1] ¶ 1-2]. Sands is a natural-born U.S. citizen who has lived in New York City, and therefore within this Judicial District, for over 61 years. [Declaration of Steve Sands, dated November 30, 2018 ("Sands Decl."), ¶¶ 4-5]

### Defendant Bauer Media Group, LLC

Bauer is a largescale, for-profit media company which manages a portfolio of more than 600 magazines, over 400 digital products and 100 radio and TV stations around the world. [56.1, ¶¶ 3, 5] Bauer is in the publishing industry and disseminates news content. [56.1, ¶¶ 6-7] Bauer owns and operates the website www.fhm.com (the "Website"). [56.1, ¶ 8]. Before the infringement took place in this case, Bauer routinely licensed celebrity photographs from Sands. [Sands Declr., ¶ 15-16, Exhs. C-D] Indeed, Bauer has even licensed other photographs of Emily Ratajkowski from Sands. [Sands Declr., ¶ 14, Ex. B, SANDS0365]

### The Photographs of Emily Ratajkowski – January 20, 2017

On or about January 20, 2017, Sands photographed a fashion model named Emily Ratajkowski in public view (the "Photographs"). [56.1, ¶ 9] At the time the Photographs were taken, Ms. Ratajkowski was filming an advertisement for fashion brand DKNY. [56.1, ¶ 10] Sands was not hired or commissioned by any person or any entity (including DKNY) to photograph Ms. Ratajkowski, who was in public view at the time Sands photographed her. [56.1,

---

[1] "56.1" shall refer to Plaintiff's Statement Pursuant to Local Rule 56.1 at Docket # 30.

¶ 11]  Sands created the Photographs for the purpose of licensing to news outlets and media organizations. [56.1, ¶ 14]

## Sands' Professional Licensing of the Photographs – January 20, 2017

On or about January 20, 2017, Sands licensed the Photographs to third-party stock photography agency Getty Images. [56.1, ¶ 16]  On that same day, Sands also licensed one of the photographs of Ms. Ratajkowski walking a dog to Matrix Pictures, a third-party stock photography agency.  [56.1, ¶ 17]  Aside from Getty Images and Matrix Pictures, Sands did not license the Photographs to any other news outlet or media organization.  [56.1, ¶ 18]  Sands never licensed the Photographs to Emily Ratajkowski; nor has Sands ever personally communicated with Ms. Ratajkowski. [56.1, ¶ 19]  Sands never granted Ms. Ratajkowski permission to display the Photographs on her personal Instagram page nor any other social media account. [56.1, ¶ 20]  Sands never granted DKNY permission to distribute the Photographs as part of its commercial advertising campaign (nor did DKNY ever attempt to secure Sands' permission).  [56.1, ¶ 21]

## Defendant's Re-Publication of the Photographs – March 13, 2017

On or about March 13, 2017, Defendant published an article on its website, entitled *Emily Ratajkowski: New DKNY Ad is Just Her Walking a Dog in Lingerie* at the URL http://www.fhm.com/posts/the-sexy-dkny-commercial-of-emily-ratajkowski-walking-a-dog-in-lingerie-has-finally-been-released-127635/photos/emily-ratajkowski-instagram-239926 (the "Bauer Article").  [56.1, ¶ 22]  The text of the Bauer Article reads in its entirety:

> Back in January we released some stunning pictures of Emily Ratajkowski walking a dog down the streets of NYC in nothing but lingerie. We knew the pictures were a part of her commercial for DKNY, but we had no idea when the actual commercial would be released.
>
> Well, as luck would have it, Ratajkowski posted the final product on her Instagram today and it's everything we dreamed of and then some!

Could you imagine Emily walking past you on the street in her skivvies without passing out? No? Neither can we.

[Dkt. #10-1, p. 2 of 4]

The text of the Bauer Article makes clear that the primary purpose of Bauer's so-called "commentary" is to highlight the physical beauty of the celebrity model depicted in the image. As part of the Bauer Article, Defendant prominently displayed the Photographs on the Website as gratuitous "eye candy" and therefore engaged in actual copying. [56.1, ¶¶ 23-24] Commercial advertisements are visible on the face of the Bauer Article in which the Photographs are prominently displayed. [56.1, ¶ 25] On the face of the Bauer Article, Sands was <u>not</u> credited as the author of the Photographs. [56.1, ¶ 26]

**<u>Defendant's Lack of Authorization</u>**

Defendant did not seek Sands' permission to publish the Photographs; nor did Sands grant Defendant authorization to copy the Photographs or distribute copies of his registered work to the public. [56.1, ¶¶ 27-28]

**<u>Absence of Communication Between Plaintiff and Defendant</u>**

Prior to Defendant's publication of the Photographs, there was no communication between Sands and Defendant. [56.1, ¶ 29] Before this lawsuit was filed, there was no communication between Sands and Defendant. [56.1, ¶ 30] At no time prior to the institution of this lawsuit did Sands ever make any representations of any kind to Defendant. [56.1, ¶ 31]

**<u>Registration of the Photographs – March 27, 2017</u>**

Plaintiff's counsel in this action, Liebowitz Law Firm, PLLC (the "Firm"), follows a routine practice of registering photographs with the U.S. Copyright Office (the "USCO") on behalf of the Firm's clients. [56.1, ¶ 32] The Firm routinely registers photographs with the

USCO on behalf of Sands. [56.1, ¶ 33]  Sands authorized the Firm to register the Photographs with the USCO on Sands' behalf.  [56.1, ¶ 34]

Sands is in possession of a registration certificate for the Photographs, bearing number VA # 2-036-401, with effective date March 27, 2017 (the "401 Registration") [56.1, ¶ 36] According to the USCO's official certified records, the Photographs bearing content titles "632197004.jpg" and "632192064.jpg", which are the photographs at issue here, are on deposit with the 401 Registration.  [56.1, ¶ 39]  Sands obtained the 401 Registration on March 27, 2017, within five years after first publication of the Photographs.  [56.1, ¶ 40]

**Defendant's Refusal to Take Down the Photographs**

Subsequent to filing this lawsuit, Defendant failed to remove the Photographs from the Bauer Article as first published on the www.fhm.com website and therefore remain on Bauer's website as of the filing date of the instant motion.  [Sands Declr., ¶ 42]

## LEGAL STANDARD

Courts in this Circuit consider the following factors in determining whether to require a party to post a bond pursuant to the rule: "(1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders."  *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, No. 08 CIV. 01533, 2010 WL 3452375, at *2 (S.D.N.Y. Sept. 1, 2010); *Johnson v. Kassovitz,* No. 97 Civ. 5789(DLC), 1998 WL 655534, *1 (S.D.N.Y. Sept. 24, 1998) (citing *Selletti v. Carey,* 173 F.R.D. 96, 100–101 (S.D.N.Y.1997)).

A number of courts have stated that the purpose of the rule is that it "assures that a defendant who is sued will, if successful, at least be able to recoup its costs." *Atlanta Shipping*

*Corp. v. Chemical Bank,* 631 F.Supp. 335, 352 (S.D.N.Y.1986) (emphasis added), *aff'd,* 818 F.2d

240 (2d Cir.1987); *accord Spitzer v. Shanley Corp.,* 151 F.R.D. 264, 267 (S.D.N.Y. 1993)

("Considering the local rule and the New York statute together, judges of this court have

required the posting of security bonds when plaintiffs were non-residents or foreign corporations,

defendants were expected to incur significant legal costs, plaintiffs' financial condition and

ability to pay were doubtful, and the merits of plaintiffs' case were questionable").

## ARGUMENT

**POINT I:**      **DEFENDANT HAS FAILED TO SHOW THAT PLAINTIFF LACKS THE FINANCIAL ABILITY TO SATISFY A JUDGMENT**

The first factor under L.R. 54.2 requires the movant to demonstrate that the Plaintiff lacks

the financial capacity to satisfy an ultimate judgment, *Gary Friedrich Enterprises,* 2010 WL

3452375, at *2.  Thus, a bond is typically ordered where the defendant has an "understandable

concern regarding [plaintiff]'s real ability to pay any eventual attorneys' fees or costs" should the

defendant prevail and when the record shows that plaintiff "had no assets."  *RLS Assocs., LLC v.*

*United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 209 (S.D.N.Y. 2006).  A plaintiff's "lack of

assets furnishes a sufficient basis for compelling the pretrial posting of a bond in a fair and

appropriate amount." *Id.*; *see also Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03 CIV. 10254

(JFK), 2008 WL 161239, at *2 (S.D.N.Y. Jan. 15, 2008) ("a party's apparent financial inability

to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a

cost bond under Rule 54.2.")

Courts deny bond motions where a defendant has failed to demonstrate a plaintiff's

inability to satisfy a judgment.  *N'Jai v. New York State Higher Educ. Servs. Corp.*, 214 F.R.D.

251, 252 (E.D.N.Y. 2003) (defendant "has not made an adequate showing that the plaintiff will

be unable to pay a judgment of costs. [Defendant] provides no information concerning the plaintiff's financial condition.").[2]

Here, Defendant has not even attempted to show that Sands is impecunious or otherwise unable to satisfy a judgment in this proceeding. For that reason alone, the request for bond should be denied outright.

**POINT II:** **DEFENDANT HAS FAILED TO SHOW THAT PLAINTIFF IS A NON-RESIDENT OR FOREIGN CORPORATION**

Courts in this Circuit have denied bond motions where the non-movant is a resident of the United States. *Khaldei v. Kaspiev*, No. 10 CIV. 8328 JFK GWG, 2014 WL 7373383, at *2 (S.D.N.Y. Dec. 30, 2014) (denying bond where "the [non-movant] has been a resident of the United States for over 35 years"); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01 CIV. 1290 (CSH), 2005 WL 578917, at *1 (S.D.N.Y. Mar. 11, 2005), *adhered to on reconsideration*, 464 F. Supp. 2d 206 (S.D.N.Y. 2006) (denying bond motion where "Plaintiff is not a non-resident or foreign corporation,"); *cf. Sea Trade Co. Ltd.,* 2008 WL 161239, at *2 (requiring foreign corporate plaintiffs with no business or assets in the United States to post a bond).

Here, Steve Sands is a natural born citizen of the United States and a long-time resident of New York City for over 61 years. Indeed, he resides on Grand Street, not far from the United States courthouse for the Southern District of New York. As Defendant points out, he has filed

---

[2] Conversely, a bond may be ordered where a defendant presents evidence that plaintiff has transferred assets to avoid satisfaction of a judgment. *Beautiful Jewellers Private Ltd. v. Tiffany & Co.,* No. 06 CIV. 3085 KMW FM, 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008) ("Tiffany has proffered a series of documents which support its belief that BJPL and the Mehtas transferred all of BJPL's assets to a different company in order to avoid a levy against them in connection with the ten million dollar judgment . . .")

dozens of copyright infringement cases in this District, over 45 of which have settled in his favor.  Sands has never lost a case and has never been ordered to post a bond.  Local Rule 54.2 was simply not designed to force U.S. citizens, New York residents, and frequent filers in this District to post bond before a full adjudication on the merits.  If the Court enters a monetary award against Sands, the Court will know where to find both him and his assets.  Accordingly, a bond requirement is entirely unnecessary.

**POINT III:    DEFENDANT HAS FAILED TO DEMONSTRATE THAT IT IS LIKELY TO PREVAIL ON SANDS' INFRINGEMENT CLAIM**

Defendant's motion for a bond is primarily based on Defendant's assertion that the Plaintiff's claim lacks merit.  [D's Memo, Dkt. # 40, p. 16 of 21]  While Plaintiff has already filed a 25-page brief detailing the merits of his claims (and the lack of merit of the defenses), and has supported his arguments with caselaw authorities and admissible evidence, Defendant has done nothing more than provide a one-page recitation of its substantive arguments, all of which are meritless and none of which are supported by caselaw or evidence. [*Id.*]

Defendant proffers three arguments for the proposition that Plaintiff's infringement claim lacks merit.  First, Defendant argues its unauthorized publication of Sands' photographs of a celebrity fashion model, in order to report or comment on the physical attributes of that model, constitutes fair use under 17 U.S.C. § 107.  Second, Defendant argues that Sands implicitly consented to Defendant's republication of the Photographs because Sands knew that Ratajkowski had posted the images on her personal Instagram account.  Third, Defendant argues that its infringing conduct was non-willful.

As demonstrated in Plaintiff's motion for summary judgment and as further discussed below, the first two defenses (fair use and implied license) have virtually no chance of success.

The third argument (non-willfulness) is not even a defense to liability and therefore has no

bearing on the pending motion for summary judgment. As such, Defendant has failed to

demonstrate that it is likely to prevail on Plaintiffs' infringement claim.

A.     DEFENDANT'S FAIR USE DEFENSE, WHICH IS BASED ON BAUER'S "NEWS REPORTING"
       ABOUT THE PHYSICAL BEAUTY OF THE CELEBRITY FASHION MODEL DEPICTED IN THE
       PHOTOGRAPHS, IS MERITLESS

Despite the glaring absurdity of the defense, Bauer continues to assert that its

republication of Sands' Photographs constitutes fair use under a generic claim of "news

reporting." But the text of the Bauer Article, which accompanies Bauer's republication of the

Photographs, makes clear that Bauer's primary purpose for republishing Sands' work was to

exploit the physical attributes of the young, scantily-clad woman depicted in the Photographs.

Such use cannot be deemed "fair" without cannibalizing the exclusive rights accorded to

photographers under the Copyright Act.

**(1) Defendant Cannot Plausibly Show That Its Secondary Use Was Transformative**

The preamble to the fair use statute does list "news reporting" as an illustrative basis

supporting fair use under this factor. 17 U.S.C. § 107. However, as per the Supreme Court,

"[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the

infringement a fair use 'news report' of the [work]." *Harper & Row v. Nation Enterprises*, 471

U.S. 539, 557 (1985); *see also Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756

F.3d 73, 85 (2d Cir. 2014) ("A news organization thus may not freely copy creative expression

solely because the expression itself is newsworthy."); *Murphy v. Millennium Radio Grp. LLC*,

650 F.3d 295, 307 (3d Cir. 2011) ("News organizations are not free to use any and all

copyrighted works without the permission of the creator simply because they wish to report on

the same events a work depicts."); *Psihoyos v. National Examiner*, No. 97-cv-7624 (JSM), 1998

WL 336655, *3 (S.D.N.Y. June 22, 1998) ("The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it.").

For over twenty years, courts in this Circuit have consistently rejected claims of fair use in the commercial news reporting context where the defendant has done nothing more than publish a photograph to comment or report on the subject matter depicted in the image. *See, e.g., Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017) (rejecting fair use where defendant's argument, "if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph."); *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 196 F.Supp.3d 395, 407 (S.D.N.Y. 2016) (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple"); *Ferdman v. CBS Interactive, Inc.*, No. 17-cv-1317 (PGG), 2018 WL 4572241, at *12 (S.D.N.Y. Sept. 24, 2018) (the "Article involves the use of an image solely to present the content of that image. Such a use is not transformative"); *Psihoyos v. National Examiner*, No. 97 Civ. 7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998).

The case at bar is analogous to *Psihoyos v. National Examiner* where the defendant-magazine republished photographs of a decorative Cadillac to discuss the various attributes of the car. The National Examiner claimed that its unauthorized use was transformative on grounds of news reporting and commentary. The district court rejected this argument:

> The Examiner's use is not transformative, because its piece uses the photo to show what it depicts. It is clear from examining the Examiner's article that its purpose was not to comment on the Psihoyos' photo but to use it "for precisely a central purpose for which it was created" - to show how an art car looks. . . . The case would be different if the Examiner's use were for the purpose of commenting on the Psihoyos' photography. But the article is about art cars not photography and the Examiner was simply using the Psihoyos' photo to save itself the expense of obtaining its own photo.

1998 WL 336655, *3, 5 (internal citations and quotations omitted).

Here, in much the same way, Bauer has used the Photographs for the same purpose as they were originally created: to show a beautiful young woman in various modeling poses. It cannot be seriously debated that Bauer exploited the Photographs as "eye candy" or "click-bait" to drive traffic to its commercial website. Defendant used the Photographs as an illustrative aid to objectify the physical attributes of Ratajkowski, rather than as a means to offer editorial commentary on a topic of public concern. The Bauer Article is about the beauty of Ratajkowski, not about the merits of Sands' photography. At bottom, Bauer used the Photographs to save itself the time and expense of commissioning its own photographer to capture similar images.

In the context of news reporting, there are cases where photographs may be fairly used without the copyright holder's authorization. For example, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph." *Barcroft Media*, 2017 WL 5032993, at *6; *accord Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photograph of Miss Puerto Rico Universe was published by newspaper to comment on the controversy surrounding her qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ("Defendants and other news outlets reported on the Video [of a woman giving birth] and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal.")); *see also Murphy,* 650 F.3d at 307 ("[H]ad the [i]mage itself become controversial due to its 'salacious' content, it would likely have been fair use for a newspaper to reproduce it to accompany an article about the controversy").

But here, Bauer fails to identify any social or political controversy surrounding the depiction of Ms. Ratjkowski appearing half-naked in the street while walking a dog.  Even if such a controversy existed, Bauer has failed to identify any actual text in the Bauer Article which speaks to such a controversy.  Unlike the cases in *Nunez* and *Konangataa,* where there was a legitimate public controversy surrounding the very existence of the images themselves, Defendant here has failed to explain why it should be entitled to freely exploit Sands' registered works for the purpose of ogling Ratajkowski's physical attributes.

### (2) The Fourth Fair Use Factor Weighs Heavily in Plaintiff's Favor Even Without Any Evidence of Actual Licensing History

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  According to the Supreme Court, this factor is the "most important, and indeed, central fair use factor." *Stewart v. Abend*, 495 U.S. 207, 238 (1990).

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Sands' original photographs.  *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright").  "A presumption of market harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S.  at 591.

Here, because Defendant copied full-color, full-scale images in their entirety and did nothing to transform them aesthetically, Plaintiff is entitled to *Sony's* presumption of market harm.  *See Ferdman*, 2018 WL 4572241, at *19 (applying *Sony's* presumption of market harm to news reporter's use of Spiderman photographs where the secondary use was non-transformative

or minimally transformative).  Given that Plaintiff is entitled to the presumption of market harm, the fourth factor necessarily weighs against fair use.

Even if *Sony's* presumption of market harm does not apply, Plaintiff may prevail without showing any evidence of actual market harm. The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).

The thrust of Defendant's present motion is that Plaintiff did not produce documents showing that the Photographs at issue were licensed to third parties.  While the existence of licensing fee history for the Photographs at issue may be material to the fourth factor, it is certainly not dispositive.  "[A] copyright owner is not required to show that actual harm has come to her, *Sony Corp.*, 464 U.S. at 451, but must show merely a 'potential' effect on the market for the copyrighted work." *Harper & Row*, 471 U.S. at 568–69." *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir.2012); *see also Psihoyos v. National Examiner* at *5 ("Although Psihoyos has not specifically shown a decline in the number of licensing requests for his work since the Examiner's article was published, he is not required to do so." (citing *Ringgold*, 126 F.3d at 81)).

Here, Sands is entitled to profit from the market demand generated by initial publication of his works.  *See* 17 U.S.C. § 106.  But because Defendant engaged in wholesale copying of the Photographs [56.1, ¶ 24], any authorized market for the original works was severely diminished. Moreover, because the subject matter depicted in the Photographs was newsworthy as of initial publication, Defendant deprived Sands of the opportunity to exploit the value of his copyrights

during their peak demand in the marketplace. In short, because the first and fourth factors weigh overwhelming against fair use, Defendant stands virtually no chance of success.[3]

## B.     BAUER'S IMPLIED LICENSE DEFENSE IS OBJECTIVELY UNREASONABLE

### (1) Defendant Cannot Establish the Elements of an Implied License Defense

While "it is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work, *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), "[t]he burden of proving that a license exists falls on the party invoking the defense." *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013) (Cote, J.) (citing *Graham*, 144 F.3d at 236). A nonexclusive license can be granted orally or it can be implied from conduct. *Associated Press,* 931 F.Supp.2d at 561-62.

"The test for determining whether an implied license exists in the copyright context has three elements. The defendant must show that (1) the licensee requested the creation of a work; (2) the licensor made that particular work and delivered it to the licensee who requested it; and (3) the licensor intended that the licensee copy and distribute his work." *Associated Press*, 931 F.Supp.2d at 562. The circumstances in which an implied license may be found are therefore quite "narrow." *SmithKline Beecham Consumer Healthcare v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21, 25 (2d Cir.2000) (citation omitted); *see also S.O.S., Inc. v. Payday*, 886 F.2d 1081, 1088 (9th Cir.1989) (copyright licenses are presumed to prohibit any use not authorized).

As to the first factor, Bauer is plainly foreclosed from asserting that an implied license exists because Bauer never asked Sands to take photographs of Ms. Ratajkowski. He did so completely on his own volition. [Sands Declr. No. 1, ¶ 9] As to the second factor, there is no

---

[3] The second and third factors also weigh against fair use, as discussed in Plaintiff's motion for summary judgment.

evidence that Sands delivered any photographs to Bauer. As to the third factor, there is no

evidence that Sands intended for Bauer to distribute his work. In short, Bauer cannot plausibly

sustain its burden on any one of the elements of an implied license defense.

### (2) In the Absence of Sands' Express Authorization, Defendant Cannot Establish that Ms. Ratajkowski Had the Right to Sub-License the Images to Bauer

Defendant argues that because Sands knew that the Photographs had been posted to Ms.

Ratajkowski's Instagram page, Bauer could freely exploit the images under a sub-license theory.

First of all, Sands never authorized Ratajkowski to publish the images. But even if a licensing

arrangement existed between Sands and Ratajkowski, the scope of such license would not

include a right to sub-license absent Sands' express and explicit authority. *See, e.g., Miller v.

Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) ("It is well established in

patent and copyright law that a patent or copyright licensee may not sub-license his licensed

intellectual property rights without express permission from the licensor."); *Harris v. Emus

Records Corp.*, 734 F.2d 1329, 1333 (9th Cir. 1984) ("a non-exclusive licensee has 'no right to

re-sell or sublicense the rights acquired unless he has been expressly authorized to do so.'").[4]

Copyright law presumes that a registered copyright holder will seek to control publication

of his works and thus will <u>not</u> grant the right to sub-license unless he knows of the identity of the

sub-licensee. Sands never granted Ratajkowski permission to republish the Photographs on her

Instagram Page. But even if his awareness of Ratajkowski's activity somehow constituted

consent for Ratajkowski to use the Photographs, such consent could not be sub-licensed to third

---

[4] See also *L.A. Printex Industries, Inc. v. G&G Multitex, Inc.*, No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13, 2010) ("The consent necessary to properly effectuate a sublicense must be express or explicit, however, not loosely implied from the circumstances."); *Crispin v. Christian Audigier, Inc.*, 839 F.Supp.2 1086, 1096 (C.D .Cal. 2011) ("[implied] sublicensing would allow the sublicensee to use the intellectual property for a purpose wholly different from, and independent of, the purpose for which the licensee was granted its license. Were a licensee vested with such authority by implication, that would usurp the property holder's retained right to control its intellectual property.").

parties such as Bauer without Sands' express authorization. Accordingly, in the absence of any

evidence that Sands granted Ratajkowski express authorization to sub-license the Photographs to

Bauer, the sub-license defense fails as a matter of law.

**C.      BAUER'S DEFENSE OF "INNOCENCE" IS FRIVOLOUS AND, IN ANY EVENT, IS NOT A DEFENSE TO INFRINGEMENT LIABILITY**

Defendant also argues that it is likely to prevail because its infringing conduct was non-

willful or innocent. [D's Memo, Dkt. # 40, p. 16 of 21 (Bauer "did not believe and had no

reason to believe its use of the Photos constituted copyright infringement")].

**(1)      As a Threshold Matter, Bauer's State-of-Mind Has No Bearing on Its Liability for Copyright Infringement**

As a matter of black letter law, Defendant's state-of-mind has no bearing on the issue of

infringement liability.[5] "Copyright infringement is a strict liability offense in the sense that a

plaintiff is not required to prove unlawful intent or culpability." *EMI Christian Music Group,*

*Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citing *Cartoon Network LP, LLLP v.*

*CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008); *see also Fitzgerald Publ'g. Co. v. Baylor*

*Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir.1986) ("intent or knowledge is not an element of

infringement."). Even if Bauer had the best of intentions, such intentions would have no bearing

on the question of its  liability for copyright infringement.[6]

---

[5] The Copyright Act provides that the issue of willfulness is pertinent only to the calculation of statutory damages under section 504(c) of the Act. *See, e.g., Cranston Print Works Co. v. J. Mason Prod.*, No. 96 CIV. 9382 (DLC), 1998 WL 993657, at *6 (S.D.N.Y. July 22, 1998) ("the willfulness of their actions -- which is significant only for the purpose of assessing damages -- is better left for trial.") (underline added); *Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 725 (W.D.N.Y. 2011) ("[willfulness] is a legal conclusion necessary to the determination of both statutory damages and the award of costs, including attorney's fees.").

[6] Indeed, Congress provides that even innocent infringement is actionable under the Copyright Act. *See* 17 U.S.C. § 504(c)(2) ("In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."). Thus, even innocent infringement claims are objectively reasonable under the Copyright Act.

Furthermore, even if Bauer manages to show at trial that its conduct was non-willful or innocent, Plaintiff would remain the "prevailing party" for purposes of section 505 of the Copyright Act, thereby foreclosing Bauer's recovery of its attorneys' fees or costs in this action. As such, there would be no justification for imposing a bond requirement on grounds of Defendant's purported "innocence."

### (2) As Part of Bauer's Ordinary Course of Business, Bauer Routinely Licenses Celebrity Photographs from Sands

A copyright "plaintiff is not required to show that the defendant had knowledge that its actions constituted an infringement." *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 112 (2d Cir.2001). Rather, a copyright plaintiff need only show that the infringer's actions were the result of "reckless disregard" for the copyright holder's rights (as opposed to bad faith or active deception). *Id.* ("Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement."). Thus, in the case at bar, Plaintiff is not required to present any evidence that Bauer actually knew that its conduct was infringing. To prove willfulness at trial, Plaintiff need only show that Bauer <u>should have known</u> that it was required to obtain a license from the rightful copyright holder and failed to do so.

Here, Bauer's defense of innocence is particularly absurd in light of record evidence showing that, prior to its infringing conduct in this case, Bauer routinely licensed celebrity photographs from Sands for use in its various publications dating back to at least 2014. [Sands Declr., ¶¶ 14-16, Exs. B, C, D] Indeed, Defendant previously licensed photographs of Ms. Ratajkowski from Sands on November 30, 2015, showing that Bauer knew it needed a license to display photographs of Ratajkowski on its commercial website. [*Id.*, Ex. B – SANDS0365]. Not only did Bauer license photographs from stock photograph agencies such as Getty, but Bauer

also licensed photographs from Sands *directly*, engaging in arms-length negotiations for various images of celebrities.  [Sands Declr., ¶ 16, Ex. D]

Despite its breadth of experience in the publishing industry, sophistication in matters of U.S. copyright law, and evidenced history of licensing images from Plaintiff, Bauer failed to secure a license from the copyright holder in this matter.  There is no evidence that Bauer even bothered to *inquire* as to the identity of the photographer.  Instead, Bauer haphazardly republished photographs of a celebrity fashion model without any attribution and in blind reliance on a third-party's Instagram page.  Bauer was simply fishing for free content on a celebrity model's social media page.  That's reckless, i.e. willful.

### (3) Bauer Must be Charged With the Utmost Knowledge of U.S. Copyright Law Which Treats Photographers as the Authors / Owners of Pictorial Works

Under the Copyright Act, ownership of a copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "Under normal circumstances, a photographer is the author of his or her photographs." *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1008 (N.D. Ill. 2000) (citing *Burrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 60 (1884);  *see also Malinowski v. Playboy Enterprises, Inc.*, 706 F. Supp. 611, 615 (N.D. Ill. 1989) ("For photographs the photographer is the creator of the work.").

In direct contrast, the subject matter of the photograph does <u>not</u> acquire any copyright interest by virtue of being depicted in the image.  *See Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-CV-01842-JST, 2014 WL 5597274, at *2 (N.D. Cal. Nov. 3, 2014), *aff'd*, 669 F. App'x 863 (9th Cir. 2016) ("any copyright in the image 'vests initially in the author or authors of the work,' 17 U.S.C. § 201(a), which would be the photographer of the image, not Plaintiff [the person depicted in the image]").

Here, Bauer is a highly sophisticated publisher that must be charged with the knowledge that U.S. copyright law recognizes the photographer as the author and owner of the copyright. Defendant has failed to cite any legal authority to support their argument that the subject matter of the photograph (in this case Emily Ratajkowski) has a legal right to license or otherwise control publication of the image. The fact that Ms. Ratajkowski published the image on her personal Instagram page (with or without Sands consent) is of no legal consequence in terms of Bauer's infringement liability.[7]

## POINT IV:    BAUER HAS FAILED TO DEMONSTRATE THAT SANDS' CLAIM IS OBJECTIVELY UNREASONABLE

The basis of Defendant's bond motion is fee-shifting under section 505 of the Copyright Act. Defendant seeks $50,000 to cover its attorneys' fees in the event that it is declared the "prevailing party" in this action. [D's Memo, Dkt. #40, p. 15 of 21]

However, as explained in *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533, 2010 WL 3452375, at *4 (S.D.N.Y. Sept. 1, 2010), it is not enough for the movant under L.R. 54.2 to demonstrate that it is likely to prevail. Bauer must also bear the heavy burden of showing that it is likely to be awarded its attorneys' fees and costs under 17 U.S.C. § 505, which are "not automatically awarded to every victorious defendant but rather are within the court's discretion to grant." *Id.* In deciding whether such an award is warranted, "district courts may consider such factors as (1) the frivolousness of the non-prevailing party's

---

[7] Indeed, there is no evidence that Bauer had any relationship of any kind with Ms. Ratajkowski at the time Bauer republished Plaintiff's copyrighted works. It just shoplifted the content from Instagram and exploited it for profit. Such conduct is exceedingly reckless for an experienced publisher which routinely secures licenses from photographers prior to publication. Under these circumstances, Bauer cannot possibly establish the "meeting of the minds" necessary to establish a non-exclusive license. *See Associated Press*, 931 F.Supp.2d at 562 ("Meltwater is unable to point to any interaction with AP from which it could be inferred that there was a meeting of minds between the parties that AP was granting Meltwater a nonexclusive license to extract and re-publish excerpts of its news stories that appeared on the Internet")

claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Productions, Inc.,* 603 F.3d 135, 144 (2d Cir.2010).

Here, Bauer has made no showing whatsoever that Sands' claim is objectively unreasonable, i.e., patently contrary to existing law or unsupported in fact. As demonstrated in its motion for summary judgment, Sands easily satisfies the two elements of his copyright infringement claim (validity of ownership and actual copying). Indeed, Bauer nowhere disputes the validity of Sands' copyright ownership or the fact that Bauer republished the images without Sands' authorization.

Bauer has also failed to show that Sands' lawsuit is improperly motivated. Nor has Bauer explained how fee-shifting would further the purposes of the Copyright Act. Finally, Bauer doesn't deserve to be compensated for its fees. By failing to secure a valid license before publishing the Photographs, Bauer clearly deviated from its ordinary course of practice of licensing celebrity photographs from Sands [Sands Declr, ¶¶ 14-16, Exs. B-D] and therefore assumed the risk of litigation and all costs associated therewith. Plaintiff should not have to bear Defendant's fees to test out a far-fetched theory of fair use or implied license.

**POINT V:** **BAUER HAS FAILED TO DEMONSTRATE THAT SANDS HAS DISOBEYED ANY COURT ORDERS, INCREASED THE COST OF LITIGATION OR OBSTRUCTED DISCOVERY**

**A.** **DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS VIOLATED ANY COURT ORDER IN THIS ACTION, INCLUDING THE RULE 16 SCHEDULING ORDERS**

Bauer has failed to show that Sands has violated any Court orders in this case (or any other of the dozens of cases he's filed in this District over the last three years). Bauer claims that Sands violated the Court's Rule 16 Scheduling Order in this case by not producing documents

showing that the Photographs at issue had been licensed.  [D's Memo, Dkt. #40, p. 17 of 21]  But none of the Court's Rule 16 scheduling order in this matter command Sands to produce documents concerning his licensing fee history.

The Court's first scheduling order, entered June 1, 2018 [Dkt. # 19] sets a date for the anticpated close of discovery.  But it does not command Sands to produce any specific documents.  The Court's second scheduling order, entered August 7, 2018 [Dkt. # 21] is also silent with respect to Sands' document production obligations.  As such, Bauer has failed to identify any Rule 16 scheduling order entered by the Court in this case with which Sands has allegedly failed to comply.

Bauer cites to Dkt. #12, which is a letter submitted to the Court by Bauer's counsel as evidence of a "schedule for written discovery."  [D's Memo, Dkt. #40, p. 18 of 21]  But at the risk of stating the obvious, defense counsel's *ex parte* letter is <u>not</u> a court order.  Bauer's attempt to characterize its own *ex parte* letter as a scheduling order only punctuates the frivolous nature of this ancillary motion.

Bauer also claims that one of Plaintiff's attorneys, who is no longer associated with the Liebowitz Law Firm, made promises back at the initial case management conference that Sands would produce licensing fee history.  Sands has fulfilled that promise, as the record is replete with Sands' licensing fee history.  [Sands Declr., Ex. A-D]  In any event, Bauer had five months of discovery to raise any alleged discovery dispute with Sands or otherwise file a motion to compel.  But Bauer's counsel just sat back and did nothing.  Having failed to raise any dispute until one month after the close of discovery, its claims of discovery misconduct should be deemed waived.

**B.   DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS VIOLATED ANY COURT ORDER IN ANY OTHER ACTION**

Defendant has also failed to cite any caselaw amongst the over 50 infringement cases filed by Sands in this (or any other) District where a judge determined that he had violated any court orders.  That's because Sands has never violated any Court orders.  [Sands Declr., ¶ 10]  Nor has Sands ever been sanctioned or had to pay a defendant's costs or attorneys' fees.  [*Id.* at ¶ 9]  He has never had to post a bond.  [*Id.*]. Having failed to show that Sands violated any court orders, the bond motion should be denied.  *See RLS Assocs.*, 2005 WL 578917, at *1 (denying bond motion where "there is no history of noncompliance with prior orders")

Rather than focusing on Sands, Defendant has launched *ad hominin* attacks against Plaintiff's counsel by citing other unrelated cases that have nothing to do with Steve Sands or the merits of his case.  [D's Memo, Dkt. #40, p. 18-20 of 21]  Sands was not a party in any of the cases cited by Bauer in its brief.  Moreover, Bauer is not asking Plaintiff's counsel to post bond – it is asking Sands to post bond.  But Sands' constitutional right to retain counsel of his own choosing should not be held against him on account of the over 1000 other cases the Liebowitz Law Firm has filed.  Sands cannot possibly be held accountable for every single case his lawyers file on behalf of other clients.

**C.   DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS HAS MULTIPLIED THE COST OF THIS PROCEEDING**

Defendant has also failed to show that Sands has engaged in any conduct that multiplied the cost of these proceedings.  For example, there is no evidence that Sands has obstructed the progress of this lawsuit.  To the contrary, it is Defendant who has unnecessarily increased the cost of this litigation by way of ancillary motion practice in order to avoid litigating the merits on

summary judgment.  Further, there is no evidence whatsoever that Sands has acted vexatiously or flaunted the Court's rules.

**D.   DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE THAT SANDS OBSTRUCTED DISCOVERY**

Bauer should be estopped from raising any argument that Sands obstructed discovery. Indeed, during the discovery period, Bauer never once complained of any discovery deficiencies in Sands' production or responses.  Bauer never once asked Plaintiff or his counsel to participate in a telephonic or in-person meet-and-confer to address concerns with Sands' discovery obligations.  And most importantly, Bauer never once sought judicial intervention to settle a discovery dispute as prescribed by the Court's Individual Rules of Practice.

**E.   DEFENDANT HAS FAILED TO PRESENT ANY AUTHORITY FOR THE PROPOSITION THAT SANDS IS REQUIRED TO PRODUCE EVIDENCE OF LICENSING FEE HISTORY IN AN INFRINGEMENT CASE SEEKING STATUTORY DAMAGES**

The crux of Bauer's ancillary motion practice is that Sands did not produce evidence of licensing fee history which, as the record demonstrates, is false.  [Sands Declr, Exh. A-D]. Nonetheless, regardless of whether Sands produced such licensing fee history or not, there is no statutory obligation for him to do so; nor is there any judicial precedent which requires such production.

Under Second Circuit law, a statutory damages plaintiff has no obligation to show actual damages or losses.  *See Psihoyos v. John Wiley & Sons, Inc*., No. 11 CIV. 1416 JPO, 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 748 F.3d 120, 127 (2d Cir. 2014).  In *Psihoyos,* the Second Circuit affirmed awards of $100,000 and $30,0000, respectively, for two separate photographs based on a jury's finding of willful infringement, finding that "[a]lthough revenue lost is one factor to consider, *we have not held that there must be a direct correlation between statutory damages and actual damages*. To suggest otherwise is to ignore the various other

factors a court may consider and the purposes of statutory damages in the willful infringement context." *Psihoyos*, 748 F.3d at 127 (emphasis added); *see also Agence France Presse v. Morel*, No. 10-CV-2730-AJN, 2014 WL 3963124, at *12 (S.D.N.Y. Aug. 13, 2014) ("it is not true that there must be 'some correlation' between actual and statutory damages"); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113 (2d Cir.2001) (upholding jury's statutory damages award that defendant argued bore "little relationship" to actual damages).

Further, "a statutory damages award under the Copyright Act is by definition an authorized civil penalty." *Capital Records, Inc. v. MP3tunes, LLC*, 48 F.Supp.3d 703, 732 (S.D.N.Y. 2014). "[A]n award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998); see also *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F.Supp. 730, 733 (S.D.N.Y.1981) (explaining that statutory damages may be used to "provide a deterrent for would-be infringers"); *Richard Feiner and Co., Inc. v. Passport Int'l Prods., Inc.,* No. 97 Civ. 9144(RO), 1998 WL 437157, at *2 n. 13 (S.D.N.Y. July 31, 1998) (statutory damages under the Copyright Act "serve[ ] two purposes - compensatory and punitive.").[8]

As such, the fact-finder need not assess Plaintiff's loss of revenues to calculate a substantial statutory damages award. *See Entral Group Int'l LLC v. Honey Cafe on 5th, Inc.*,

---

[8] Copyright infringement cases brought by individual copyright holders do more than compensate victims. They secure intellectual property rights from widespread invasion by largescale corporations, maintain order in society, and promote the Progress of the Sciences and the useful Arts. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (public interest can only be served by upholding copyright protections, thus preventing misappropriation of skills, creative energies, and resources invested in protected work); *see also Walt Disney Co. v. Best,* No. 88 Civ. 1595(SWK), 1990 WL 144209, at *4 (S.D.N.Y. Sept. 26, 1990) (one of the primary purposes of the Copyright Act is to "deter future infringements."); 3 *Nimmer* § 14.06[A], at 14–80.

2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) (awarding $150,000 for defendants' willful

infringement although neither the plaintiff's losses nor the defendants' profits were established).

Courts in this Circuit, and Professor Nimmer, have recognized that Plaintiff can decline to

submit such evidence even if it's available. *See, e.g. CJ Products, LLC v. Your Store Online

LLC*, No. 11-cv-9513 (GBD) (AJP), 2012 WL 2856068, fn. 4 (S.D.N.Y. July 12, 2012) ("Under

the current [Copyright] Act, the copyright owner may elect to recover statutory damages, instead

of actual damages and defendant's profits. He may, moreover, make such an election regardless

of the adequacy of the evidence offered as to his actual damages and the amount of defendant's

profits, and *even if he has intentionally declined to offer such evidence, although it was

available*.'") (*quoting* 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT §

14.04[A] (2009 ed.) (italics added); *Pearson Education, Inc. v. Nugroho*, No. 08-cv-8034 (DAB)

(AJP), 2009 WL 3429610, *5 (S.D.N.Y. Oct. 27, 2009) (same)

    Here, Sands produced dozens of pages of benchmark licensing fee history from various

sources [Sands Declr. Ex. A-D], and he also produced documents showing at least one of the

Photographs was licensed. [*Id.* at Ex. E]  But under Second Circuit law, he had no obligation to

do so.  Under these circumstances, Bauer cannot plausibly complain that Sands violated any

discovery obligation concerning his production of licensing fee history.


**POINT VI:**    **DEFENDANT HAS FAILED TO SUBSTANTIATE THE AMOUNT OF
FEES OR COSTS REQUESTED WITH ANY ADMISSIBLE EVIDENCE**

    Without even bothering to submit time sheets, hourly rates, CV/resumes, invoices or pro

formas, Defendant seeks a bond in the amount of $50,000.  Bauer avers, without any attorney

affidavit to substantiate the claim, that its "costs and attorneys' fees in this action have already

exceeded $50,000." [Dkt. #40, p. 21 of 21]. Plaintiff disputes this. Without any evidence on record to verify Bauer's claim, the amount sought should be summarily denied.

The "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542 (2010))). The party seeking fees bears the burden of showing that its requested fees are reasonable, *see Blum* v. *Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *N.Y.State Ass'n for Retarded Children, Inc.* v. *Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). In calculating the lode star rate, courts consider the following factors:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the level of skill required to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the attorney's customary hourly rate; [vi] whether the fee is fixed or contingent; [vii] the time limitations imposed by the client or the circumstances; [viii] the amount involved in the case and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

*Bravia Capital Partners, Inc.* v. *Fike*, 296 F.R.D. 136, 143 (S.D.N.Y. 2013) (quoting *Arbor Hill*, 522 F.3d at 186 n.3).

Here, Defendant's counsel has failed to provide the Court with any information that would justify a $50,000 legal fee. For example, defense counsel has failed to provide a CV/resume or otherwise detail his experience in litigating copyright-related matters. Defense counsel has also failed to claim any hourly rate making it impossible to determine whether the rates charged are commensurate with other attorneys in this District. Defendant has also failed to submit his time sheets showing whether the time expended is duplicative or wasteful.

Defendant has also failed to provide the Court with any invoices showing its out-of-pocket or anticipated costs. Discovery in this matter was extremely basic and streamlined, with no deposition transcripts. So it is unclear whether Bauer has incurred any costs at all in this litigation. *See RLS Assocs., LLC,* 2005 WL 578917, at *1 (denying bond where discovery "is not particularly unusual in its magnitude").

In light of the complete lack of evidence to substantiate the bond amount requested, and the obvious Due Process concerns this raises, any bond requirement imposed should be limited to the amount of **$500.00** in miscellaneous costs.

## CONCLUSION

Based on the foregoing, the Court should DENY Bauer's motion for a bond under L.R. 54.2 in its entirety or, in the alternative, impose a requirement of no more than $500.00.

Dated: October 2, 2019

Respectfully submitted,

**s/richardliebowitz/**

Richard Liebowitz

*Counsel for Plaintiff Steve Sands*