UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE SANDS,

                              Plaintiff,

          - against -


BAUER MEDIA GROUP USA, LLC

                         Defendant.

Docket No. 1:17-cv-09215 (LAK)


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO RECUSE
U.S.D.J. KAPLAN PURSUANT TO 28 U.S.C. § 455(b)(1) AND 28 U.S.C. § 455(a)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 4

PROCEDURAL BACKGROUND................................................................................. 6

LEGAL STANDARDS ................................................................................................. 8

ARGUMENT ................................................................................................................. 9


**<u>POINT I</u>:  UNDER 455(b)(1), RECUSAL IS WARRANTED FOR JUDGE KAPLAN'S PERSONAL BIAS OR PREJUDICE AGAINST RICHARD LIEBOWITZ** .... 9

A. THE DISTRICT COURT'S USE OF THE DEROGATORY LABEL "TROLL" TO STEREOTYPE MR. LIEBOWITZ (AND HIS CLIENT) EVIDENCES PERSONAL BIAS ........... 10

*(1)  Affixing Broad, Defamatory Stereotypes to an Attorney (and His Entire Practice) Shows Actual Judicial Bias Which Warrants Disqualification*............................................ 10

*(2)  The Term "Troll" is Highly Pejorative in Nature and Demonstrates the Court's Virulent Hostility Against Liebowitz and His Clients* ...................................................... 11

*(3)  The Term "Copyright Troll" is NOT a Well-Settled Legal Term of Art and Does Not Apply To Officers of the Court Who Litigate Cases on the Merits* .................................. 13

B. JUDGE KAPLAN'S ANTAGONISM AGAINST MR. LIEBOWITZ STEMMING FROM A GENERALIZED DISDAIN FOR HIS ENTIRE PRACTICE, RESULTS IN ACTUAL BIAS AGAINST SANDS, THEREBY RENDERING A FAIR HEARING IMPOSSIBLE .................. 16


**<u>POINT II</u>:  UNDER 455(a), THE DISTRICT SHOULD BE RECUSED FOR THE APPEARANCE OF IMPARTIALITY** ................................................................ 17


CONCLUSION................................................................................................................ 18

## TABLE OF AUTHORITIES

### CASES

*Apple v. Jewish Hosp. & Med. Ctr.*,
  829 F.2d 326, 333 (2d Cir. 1987)..................................................................................8

*Bell v. Chandler,*
  569 F.2d 556 (10th Cir.1978) ...................................................................................10

*Chicoineau v. Bonnier Corp.,*
  No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018)...........................15

*Cruz v. Am. Broad. Companies, Inc.*,
  No. 17-CV-8794 (LAK), 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017)...........................6

*Dembowski v. New Jersey Transit Rail Operations, Inc.*,
  221 F. Supp. 2d 504, 511 (D.N.J. 2002) ...................................................................10

*Farkas v. Ellis*,
  768 F. Supp. 476, 480 (S.D.N.Y. 1991) ......................................................................9

*Ferdman v. CBS Interactive Inc.*,
  342 F. Supp. 3d 515 (S.D.N.Y. 2018) ........................................................................15

*Gattoni v. Tibi, LLC*,
  254 F. Supp. 3d 659 (S.D.N.Y. 2017) ........................................................................15

*Goodman v. Universal Beauty Prod. Inc.,*
  No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar. 9, 2018)...........................15

*Hirsch v. Complex Media, Inc.,*
  No. 18 CIV. 5488 (CM), 2018 WL 6985227, at *1 (S.D.N.Y. Dec. 10, 2018)...........................15

*Hoffenberg v. Hoffman & Pollok*,
  No. 00 CIV. 3151 (RWS), 2002 WL 31444994, at *2 (S.D.N.Y. Oct. 31, 2002).......................9

*HTC Corp. v. Tech. Props. Ltd.*,
  No. 5- 08-cv-00882, 2013 WL 4782598, at *4 (N.D. Cal. Sept. 6, 2013)..................................12

*Hydentra HLP Int. Ltd. v. Luchian*,
  No. 1:15-CV-22134-UU, 2016 WL 5942525, at *1 (S.D. Fla. May 31, 2016)...........................12

*In re African-Am. Slave Descendants Litig.*,
  307 F. Supp. 2d 977, 987 (N.D. Ill. 2004) ...................................................................8

*In re Cooper*,
  821 F.2d 833, 839 (1st Cir. 1987)................................................................10

*In re International Business Machines Corp.*,
  618 F.2d 923, 928 (2d Cir.1980)................................................................9

*Intellectual Ventures I LLC v. Symantec Corp.*,
  No. 10-1067-LPS, 2015 WL 82052, at *1 (D. De. Jan. 6, 2015) ................................12

*ISC Holding AG v. Nobel Biocare Fin. AG*,
  688 F.3d 98, 107–08 (2d Cir.2012)................................................................17

*Liteky v. United States*,
  510 U.S. 540, 555 (1994)................................................................1

*Malibu Media, LLC v. Doe*,
  No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015)................................13

*McDermott v. Monday Monday, LLC*,
  No. 17CV9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018)................................13

*Microsoft Corp. v. United States*,
  530 U.S. 1301, 1302 (2000)................................................................9

*Myeress v. BuzzFeed Inc.*,
  No. 18-CV-2365 (VSB), 2019 WL 1004184, at *1 (S.D.N.Y. Mar. 1, 2019)................................15

*Otto v. Hearst Commc'ns, Inc.*,
  345 F. Supp. 3d 412 (S.D.N.Y. 2018) ................................15

*Rembrant Wireless Techs., L.P. v. Samsung Elec. Co.*,
  No. 2:13-CV-213-JRG-RSP, 2015 WL 627430, at *1 (E.D. Tex. Jan. 31, 2015)................................12

*Reynolds v. Hearst Commc'ns, Inc.*,
  No. 17CV6720(DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018), *reconsideration denied*, No.
  17CV6720(DLC), 2018 WL 1602867 (S.D.N.Y. Mar. 29, 2018)................................13

*Sands v. CBS Interactive, Inc.*,
  18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019)................................15

*Steeger v. JMS Cleaning Servs. LLC*,
  No. 17CV8013(DLC), 2018WL 1136113, at *1 (S.D.N.Y. Feb. 28, 2018)................................13

*United States v. Ahmed*,
  788 F.Supp. 196, 203 (S.D.N.Y.), *aff'd*, 980 F.2d 161 (2d Cir.1992); ................................10

*United States v. Bayless*,
  201 F.3d 116, 126 (2d Cir.2000)................................................................17

*United States v. Coven,*
   662 F.2d 162, 168 (2d Cir. 1981)................................................................9

*United States v. Grinnell Corp.,*
   384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)................9

*United States v. Heller,*
   785 F.2d 1524, 1527 (11th Cir. 1986) .......................................................11

*Yoonessi v. State Univ. of New York (Buffalo)*,
   164 F.3d 620 (2d Cir. 1998).........................................................................8


STATUTES

17 U.S.C. § 504(c). ...........................................................................................3
28 U.S.C. § 455(a) ............................................................................................9
28 U.S.C. § 455(b)(1) .......................................................................................8


LAW REVIEW

Matthew Sag, *Copyright Trolling, An Empirical Study,*
   100 Iowa L.Rev. 1105, 1108 (2015) ................................................... passim

## **INTRODUCTION**

According to the U.S. Supreme Court:

[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such **a high degree of favoritism or antagonism as to make fair judgment impossible**.

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (boldface).

The term "troll," when applied to an actual human being, is never used as a compliment.  It is meant to defame, degrade, and stereotype a person as a rotten miscreant or nefarious villain. It is intended to invoke wide-ranging negative connotations that suggest harassment, abusive practices, depraved motivations and even illegality. Once a person labels another human being as a "troll," certain truths become self-evident, the most obvious being that any actions taken by the so-called "troll" will be perceived through the lens of that negative stereotype, and any judgments rendered will inevitably function to confirm that hostile perception.

On September 18, 2019, the Hon. Judge Lewis A. Kaplan entered an order in this action in which he condemned Plaintiff's counsel, Richard Liebowitz, as a "copyright troll" and accused him again of filing "strike suits, designed to extort settlements."  [Dkt. #56, Order p. 2] The definition of "copyright troll" is nowhere to be found in Black's Legal Dictionary, nor in Blackstone's.  It is not a legal term of art used in the Copyright Act nor in any other Congressional statute or federal rule.  The term "copyright troll" is nothing more than a pejorative schoolyard epithet that has no place in the judicial lexicon of an Article III officer.

Indeed, the original source of the definition of "copyright troll," as quoted by Judge Kaplan in his decision, is the IOWA LAW REVIEW.  *See* Matthew Sag, *Copyright Trolling, An*

*Empirical Study,* 100 Iowa L.Rev. 1105, 1108 (2015). In that law review article, the author stated that copyright trolls are "more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants…"

But the IOWA LAW REVIEW definition was not used to describe an Officer of the Court; it was used to describe a *party-plaintiff.* As such, to the extent that any legal definition of "copyright troll" exists by virtue of the IOWA LAW REVIEW, such definition cannot possibly extend to an Officer of the Court without rendering the original definition without meaning. Mr. Liebowitz does not *own* any of the copyrights he litigates. He is not in the business of owning copyrighted works to which he himself made no artistic contribution. Rather, Liebowitz represents the original copyright owner and author of protected works against publishers who have violated that copyright holder's constitutional and statutory rights. And without Mr. Liebowitz, these photographers would have no one to represent them in federal court and their works would be stolen with impunity.

Judge Kaplan believes it is fitting to describe Mr. Liebowitz as a "copyright troll" based on nothing more than the high volume of cases filed by Mr. Liebowitz in the last four years. Judge Kaplan blames the high volume of infringement cases squarely on Mr. Liebowitz, stating "this deluge [of cases] is attributable to plaintiff's counsel in this case… [Dkt. # 56, p. 2] But that would be like blaming the DEA for all the drug traffickers it prosecutes, rather than the traffickers themselves. It's not Mr. Liebowitz's fault that the publishing community steals photographs *en masse.* He is appropriately responding to an epidemic of intellectual property theft which has pervaded American media companies, who have found it more cost efficient to steal photographs than to abide by federal law.

To further demonstrate Judge Kaplan's high degree of antagonism against Mr. Liebowitz, Judge Kaplan has consistently described Mr. Liebowitz's meritorious filings as "strike suits, designed to extort settlements."  [Dkt. #56, Order p. 2]  Federal statutes define extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.A. § 1951 (West). How exactly Mr. Liebowitz has committed the crime of extortion by filing meritorious infringement claims on behalf of copyright holders, as specifically contemplated by the Copyright Act, has never been explained by Judge Kaplan.

First, Mr. Liebowitz represents the individuals who actually own the property that is being litigated. Given that Mr. Liebowitz and his clients are not using other people's property to litigate these claims, but are actually using property *they own*, any claim that Mr. Liebowitz commits extortion by filing meritorious infringement claims cannot be supported under law.

Second, to the extent Judge Kaplan has decided that civil litigation involving copyrights of modest value constitute "wrongful use of actual or threatened force," Plaintiff respectfully refers Judge Kaplan to section 504(c) of the Copyright Act, which contemplates that infringement actions seeking no more than $200.00 may be prosecuted to the full extent of the law, through full dress jury trial, to final judgment.  17 U.S.C. § 504(c).  That is what the People of the United States, through their Congressional representatives, have decided. And that's because theft of intellectual property, regardless of the monetary value involved, strikes at the heart of what it means to be both a human being and a U.S. Citizen.  After all, the protections accorded to copyright holders are enshrined in the native document itself, *see* Art I, Sec. 8, Cl. 8, making it one of the few civil actions that the Founders even contemplated.

While Judge Kaplan may have a problem with the Copyright Act as written, and doesn't believe that meritorious infringement claims of modest value should be litigated, it is not his role as a member of the Article III branch to pass judgment on Mr. Liebowitz's so-called "business model."  It is Judge Kaplan's role as an Article III officer to adjudicate the cases to which he is assigned based on the Congressional laws that have been enacted.

Steve Sands respectfully submits that Judge Kaplan has abdicated that role by viciously condemning Mr. Liebowitz as a "copyright troll" and accusing him of filing "strike suits, designed to extort settlements."  Judge Kaplan's persistent commentary on Mr. Liebowitz's so-called business model, coupled with his non-legal use of the highly pejorative terms "troll" and "extort" to scandalize an officer of this Court qualify as a "high degree of . . . antagonism as to make fair judgment impossible" under the standard established by *Liteky v. United States*, 510 U.S. 540, 555 (1994).[1]

Accordingly, in the interests of manifest justice, Judge Kaplan should recuse himself from this proceeding and permit another Article III judge to preside over a fair and impartial adjudication on the merits.

## FACTUAL BACKGROUND

This is a willful copyright infringement action involving a media company's unauthorized use of copyrighted photographs depicting fashion model Emily Ratajkowski (the "Photographs").  Plaintiff Steven Sands ("Plaintiff" or "Sands") is a professional photographer with over 40 years working in the business of licensing his work.  Defendant Bauer Media Group, LLC ("Defendant" or "Bauer") is a largescale news publisher who

---

[1] Indeed, Sands never made a settlement demand in this proceeding; he only ever sought judgment on the merits against Bauer Media, a serial copyright infringer.  Judge Kaplan denied Sands his First Amendment right to petition the Government for a fair adjudication on the merits.

expropriated the Photographs to display as eye-candy on its commercial website.  Defendant primarily argues that its unauthorized use is non-infringing on grounds that commercial exploitation of scantily-clad fashion models constitutes "fair use" news reporting.

The two elements of Plaintiff's infringement action, namely: (1) ownership of a valid copyright; and (2) actual copying can be readily adjudicated on summary judgment as no genuine issue of fact remains for trial on these issues.

With respect to copyright ownership, Plaintiff has produced three sworn declarations and supporting documentation to prove Sands' copyright ownership, including a timely registration certificate which is accorded the statutory presumption of validity.  Sands also produced certified deposit copies issued by the Copyright Office showing that the Photographs are on deposit with the applicable registration.  Defendant, on its part, has produced no evidence whatsoever to rebut the presumption of validity. With respect to actual copying, Defendant admitted in its Answer that it copied the Photographs for use on Bauer's website.  Sands never granted Bauer authorization to do so.  Accordingly, the two elements of Plaintiff's claim are satisfied.

With respect to Bauer's primary defense of fair use, there is no transformative effect when the secondary user republishes the Photographs for the exact same purpose they were originally created: news reporting.  Further, Defendant used Plaintiff's images to merely illustrate a news story about the subject matter depicted in the works and did nothing to alter the Photographs' meaning.  There is no public controversy surrounding the very existence of the images, as was the case in *Konangataa*.  Defendant's use also usurped a fully functioning licensing market given that Plaintiff licensed the Photographs to third-party stock photo agencies months before the infringing conduct occurred.  As such, both the fair use defense and Bauer's First Amendment defense should be dismissed.

Bauer's license defenses, whether based on a theory of express license, implied license, or sub-license, lack evidentiary support.  There is no contract on the record to support an express license theory.  The implied license theory is meritless given that Bauer never asked Sands to create the Photographs and Sands never delivered the Photographs directly to Bauer.  And any sub-license theory predicated on Ms. Ratajkowski's posting of the Photographs to her own Instagram account fails.  Sands never licensed the Photographs to Ratajkowski and, even if he had, no sub-license could be established absent Sands' express permission.

## PROCEDURAL BACKGROUND

On November 22, 2017, Sands filed a one-count complaint for copyright infringement. [Dkt. #1]  Notably, Judge Kaplan did not immediately enter an Order to Show Cause asking Sands to demonstrate why he should not post bond as security under L.R. 54.2 on grounds of fair use. *See Cruz v. Am. Broad. Companies, Inc.*, No. 17-CV-8794 (LAK), 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017) (Judge Kaplan stating that he would likely find fair use based on nothing more than the newsworthiness of the photograph at issue).

On January 11, 2018, Bauer filed an Answer, rather than moving to dismiss on grounds of fair use.  [Dkt. #10].  From February 2018 through August 7, 2018 the parties conducted discovery.  Bauer did not take any depositions and did not file any motions to compel or even send Sands a deficiency letter regarding discovery.  Sands, in contrast, produced hundreds of pages of documents including royalty statements issued by Getty Images respecting Sands' other photographs.

On September 7, 2018, Sands filed his motion for partial summary judgment on the issue of Bauer's liability for copyright infringement. [Dkt. #s 25-30]. He also attached four pages of licensing information regarding the Photograph that was not produced before the

discovery deadline because Sands did not know it was in his possession.

Bauer never opposed the motion for summary judgment.  Instead, on September 13, 2018, at Bauer's request, Judge Kaplan stayed the summary judgment briefing schedule and permitted Bauer to file a motion for a bond pursuant to L.R. 54.2   [Dkt. 33].  After five weeks passed without Bauer doing anything, Plaintiff filed a motion to re-open the summary judgment briefing schedule, which was denied by Judge Kaplan on October 23, 2018 [Dkt. #36]

On November 2, 2018, Bauer filed a motion for sanctions and/or security for costs, seeking to dismiss the action on grounds that Sands had produced four additional pages of documents on summary judgment.  [Dkt. #38]

After six months passed without any decision, on June 10, 2019, Plaintiff moved the Court for the second time to re-open the briefing schedule on Plaintiff's partial summary judgment motion.  [Dkt. #53].  This motion was denied.  [Dkt. # 55]

On September 18, 2019, Judge Kaplan granted Bauer's motion for sanctions. [Dkt. # 56]  Rather than dismissing the case or precluding any evidence, the Court sanctioned Mr. Liebowitz by awarding Bauer its attorneys' fees.  The crux of the Court's decision was that Sands' production of the four additional pages on his partial summary judgment motion (which was never fully briefed or decided), violated discovery rules.  In that decision, Judge Kaplan described Mr. Liebowitz as a "copyright troll" and, citing his prior adverse decision in *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017), stated that Mr. Liebowitz was involved in filing "strike suits, designed to extort settlements from defendants…".[2] Judge Kaplan also denied

---

[2] Significantly, in over 1850 copyright cases filed by Mr. Liebowitz, Judge Kaplan remains the only judicial officer to ever award a defendant its attorneys' fees under section 505 of the

Plaintiff's summary judgment motion without any explanation.

On October 22, 2019, Judge Kaplan then ordered Steve Sands to post a $50,000.00 bond as security for costs under L.R. 54.2, but did not assess the merits of Sands' case other than to summarily comment that Bauer was likely to prevail.  [Dkt. # 67]

## **LEGAL STANDARDS**

Judges should recuse themselves if they harbor "deep-seated favoritism or antagonism as would make fair judgment impossible." *Yoonessi v. State Univ. of New York (Buffalo*), 164 F.3d 620 (2d Cir. 1998) (*quoting Liteky v. United States*, 510 U.S. 540, 555 (1994).

### **Section 455(b)(1)**

Section 455(b)(1) provides, in relevant part, that a judge shall disqualify herself "[w]here [s]he has a personal bias or prejudice concerning a party . . ." 28 U.S.C. § 455(b)(1). "Section 455(b) is concerned with whether the court harbors an actual personal bias or prejudice against one party or in favor of another party, as opposed to the appearance of impartiality." *In re African-Am. Slave Descendants Litig.*, 307 F. Supp. 2d 977, 987 (N.D. Ill. 2004) (citing *Liteky*, 510 U.S. at 547–48 (1994)). "[T]he substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned. *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). A judge should be recused under § 455(b)(1) when her "judicial predispositions . . . go beyond what is normal and acceptable." *Liteky*, 510 U.S. at 55

"The Supreme Court has held 'the alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other

---

Copyright Act in a case brought by the Liebowitz Law Firm, PLLC. *Konangataa*, 2017 WL 2684067.  That case presented a novel issue concerning fair use in the context of social media; but because Judge Kaplan harbors a high degree of animosity against Mr. Liebowitz, he awarded fees.

than what the judge has learned from [her] participation in the case.'" *In re International Business Machines Corp.*, 618 F.2d 923, 928 (2d Cir.1980) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *see also Hoffenberg v. Hoffman & Pollok*, No. 00 CIV. 3151 (RWS), 2002 WL 31444994, at *2 (S.D.N.Y. Oct. 31, 2002) (citing *Litkey*, 510 U.S. at 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("[t]he bias and/or prejudice asserted under both provisions must stem from extrajudicial sources, i.e., outside the judicial proceeding at hand.")

## Section 455(a)

Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) is concerned with whether there would be an *appearance* of impartiality if a given judge presided over a case. *Liteky,* 510 U.S. at 547–48.

What matters under § 455(a) "is not the reality of bias or prejudice but its appearance." *Id.* Thus, "the inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000). "Section 455(a) does not contain the term "personal" found in section 455(b)(1) and the Second Circuit has therefore ruled that it is not an absolute requirement that the disqualifying bias spring from an extrajudicial source, although the source of bias remains a relevant consideration." *Farkas v. Ellis*, 768 F. Supp. 476, 480 (S.D.N.Y. 1991) (citing *United States v. Coven,* 662 F.2d 162, 168 (2d Cir. 1981).

## ARGUMENT

**POINT I:    UNDER 455(b)(1), RECUSAL IS WARRANTED FOR JUDGE KAPLAN'S PERSONAL BIAS OR PREJUDICE AGAINST RICHARD LIEBOWITZ**

Section 455(b)(1) provides, in relevant part, that a judge shall disqualify herself

"[w]here [s]he has a personal bias or prejudice concerning a party . . ." 28 U.S.C. § 455(b)(1).

While the statute references "a party," judicial bias against an attorney may warrant

disqualification where it can "be shown that such a controversy would demonstrate bias for or

against the party itself." *Dembowski v. New Jersey Transit Rail Operations, Inc.*, 221 F. Supp.

2d 504, 511 (D.N.J. 2002).  A party may show the requisite bias where the court's hostility

against the party's attorney is "so virulent and of such magnitude that it prejudices the judge

against the attorney's client." *United States v. Ahmed,* 788 F.Supp. 196, 203 (S.D.N.Y.), *aff'd,*

980 F.2d 161 (2d Cir.1992); *see also In re Cooper*, 821 F.2d 833, 839 (1st Cir. 1987) ("It is

true that occasionally exceptional circumstances do arise where a judge's attitude toward a

particular attorney is so hostile that the judge's impartiality toward the client may reasonably

be questioned.").[3]

### A. THE DISTRICT COURT'S USE OF THE DEROGATORY LABEL "TROLL" TO STEREOTYPE MR. LIEBOWITZ (AND HIS CLIENT) EVIDENCES PERSONAL BIAS

Actual personal bias is demonstrated here on three grounds. First, judicial use of broad,

defamatory stereotypes to personally label an Officer of the Court clearly evinces *animus*.

Second, there can be no serious dispute that the term "troll" is highly pejorative and serves no

other function than to denigrate and stereotype.  Third, the term "copyright troll" is by no means a

well-settled legal term of art, particularly as applied here.

### (1) Affixing Broad, Defamatory Stereotypes to an Attorney (and His Entire Practice) Shows *Actual* Judicial Bias Which Warrants Disqualification

While it may be appropriate for a judge to express hostility towards counsel arising from

---

[3] *See, e.g., Bell v. Chandler,* 569 F.2d 556 (10th Cir.1978) (judge's disbarment of a United States Attorney and five Assistant United States Attorneys in earlier proceedings which had been procedurally deficient and wholly unjustified demonstrated unlikelihood that the United States could obtain a fair trial).

his conduct in the specific matter before the court, judicial officers should not be allowed to continuously propagate *ad hominen* invectives or broad-sweeping stereotypes about an individual attorney and his practice and, by extension, every client he represents. Federal courts recognize, for example, that use of racial stereotypes compromise "impartial decision-making":

> The judiciary, as an institution given a constitutional mandate to ensure equality and fairness in the affairs of our country when called on to act in litigated cases, must remain ever vigilant in its responsibility. **The obvious difficulty with prejudice in a judicial context is that it prevents the impartial decision-making that both the Sixth Amendment and fundamental fair play require.** A racially or religiously biased individual harbors certain negative stereotypes which, despite his protestations to the contrary, may well prevent him or her from making decisions based solely on the facts and law that our jury system requires.

*United States v. Heller*, 785 F.2d 1524, 1527 (11th Cir. 1986) (boldface added). The same logic holds for *any* stereotype, whether racial or otherwise. In the judicial context, use of negative stereotypes by a judge, a party, or member of the jury all tend to compromise the process because once a stereotype has been invoked, it is reasonable to conclude that any decisions rendered thereafter will be tainted by that stereotype and, thus, will not be based solely on the facts of the case.

**(2)   The Term "Troll" is Highly Pejorative in Nature and Demonstrates the Court's Virulent Hostility Against Liebowitz and His Clients**

*(a)   Common Definitions of the Word "Troll" All Imply Evil or Malfeasance*

Google's primary definition of the word "troll" states:

1. a mythical, cave-dwelling being depicted in folklore as either a giant or a dwarf, typically having a very ugly appearance. *Synonyms*: goblin, hobgoblin, Halfling, demon, monster, bugaboo, ogre. "the storybook trolls who live under the bridge."

According to theseaurus.com, synonyms of the word "troll" (or words related to troll) include *demon, goblin, monster, ogre, devil, savage, fiend, brute, barbarian, villain, beast,*

*gremlin* and *Satan*. See http://www.thesaurus.com/browse/troll?s=t. The aforementioned list includes some of the most, if not THE most, derogatory words in the entire English language.

In the Internet Age, the word "troll" has been used to describe those who post inflammatory or inappropriate messages or comments on the Internet (especially a message board) for the purpose of upsetting other users and provoking a response. *See* https://en.wikipedia.org/wiki/Internet_troll.

> ### (b) Given its Highly Prejudicial Nature, Courts Routinely Exclude Use of the Word "Troll" in Judicial Proceedings

Courts routinely exclude testimony and argument that attempt to use the "copyright troll" or "patent troll" stereotype on grounds that it is highly prejudicial. *See, e.g., Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-CV-22134-UU, 2016 WL 5942525, at \*1 (S.D. Fla. May 31, 2016) ("The Court finds that the use of the term 'copyright troll,' as defined and used by both parties, is simply not relevant to the issues in this case. Even if this phrase was relevant, the Court agrees with Plaintiff that the use of this phrase carries a negative connotation, and the prejudicial use of this phrase would outweigh any probative value."); *accord HTC Corp. v. Tech. Props. Ltd.*, No. 5- 08-cv-00882, 2013 WL 4782598, at \*4 (N.D. Cal. Sept. 6, 2013) (excluding the use of the phrase "patent troll" because of the "derogatory characterization"); *Rembrant Wireless Techs., L.P. v. Samsung Elec. Co.*, No. 2:13-CV-213-JRG-RSP, 2015 WL 627430, at \*1 (E.D. Tex. Jan. 31, 2015) (excluding terms such as "patent troll" and "pirate," but allowing the introduction of evidence that plaintiff does not manufacture or sell its own products in the field); *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 WL 82052, at \*1 (D. De. Jan. 6, 2015) (excluding the use of the phrase "patent troll," but allowing evidence that plaintiff does not practice the patents-in-suit).

**(3)     The Term "Copyright Troll" is NOT a Well-Settled Legal Term of Art and Does Not Apply To Officers of the Court Who Litigate Cases on the Merits**

In response to this recusal motion, the District Court may find that its use of the word "troll" to describe Mr. Liebowitz is somehow consistent with judicial precedent. But there's no precedent to support the District Court. What precedent does exist for application of the "copyright troll" label applies to plaintiff-pornographers who target John Doe defendants and then abuses the discovery process to reveal their identities as a means to humiliate them into settlement. *See Malibu Media, LLC v. Doe,* No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015).

In *Malibu Media, LLC v. Doe*, Judge Hellerstein became the first judicial officer to invoke a definition from a 2015 IOWA LAW REVIEW article by Matthew Sag entitled *Copyright Trolling, An Empirical Study,* 100 Iowa L.Rev. 1105, 1108 (2015), which roughly defined "copyright trolls" as "plaintiffs who are 'more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service. The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." 2015 WL 4092417, at *2.[4]

---

[4] This is the definition that was ultimately seized upon by Hon. Denise L. Cote in her trio of Feb.-March 2018 decisions where she became the first judge to stereotype Mr. Liebowitz a "copyright troll." *See McDermott v. Monday Monday, LLC,* No. 17CV9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018) ("Plaintiff's counsel, Richard Liebowitz, is a known copyright 'troll,' filing over 500 cases in this district alone in the past twenty-four months."); *Steeger v. JMS Cleaning Servs. LLC,* No. 17CV8013(DLC), 2018WL 1136113, at *1 (S.D.N.Y. Feb. 28, 2018) ( "Paul Steeger filed this copyright action. He is represented by Richard Liebowitz, who has been labelled a copyright "troll.""); *Reynolds v. Hearst Commc'ns, Inc.,* No. 17CV6720(DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018), *reconsideration denied*, No. 17CV6720(DLC), 2018 WL 1602867 (S.D.N.Y. Mar. 29, 2018) ("Mr. Liebowitz has filed over 500 cases in this district in the past twenty-four months. He has been labelled a copyright "troll.").

But the Iowa Law Review definition only refers to plaintiffs, not lawyers. Moreover, even if read literally, this definition could easily apply to *any* copyright holder of *any* photograph, whose copyright is generally valued at less than $50,000. According to this academic definition, just about any individual who seeks to enforce a single copyrighted work in their photograph would be defined as a "troll." That can't be right.

Indeed, Judge Hellerstein invoked the Iowa Law Review's definition of "copyright troll" to address the abusive litigation practices of a particular plaintiff, Malibu Media, LLC which is: (a) a company; (b) in the pornography business; (c) targeting anonymous John Does; (d) taking advantage of court-ordered discovery "to break the veil of anonymity that separates IP addresses from the account information of actual human beings"; and (e) using the acquired information to quickly negotiate settlements on mass scale without any intention of taking the case to trial.

In short, according to Judge Hellerstein's application of the Iowa Law Review's definition of "copyright troll," the "plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does . . . Malibu's motive is to use the federal courts only to obtain identifying information in order to coerce fast settlements." *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *3 (S.D.N.Y. July 6, 2015) (citation omitted).

None of the factors identified by Judge Hellerstein, as they pertained to Malibu Media, LLC, apply to Richard Liebowitz, who represents world-class celebrity photographers and working-class photojournalists, virtually all of whom are living, breathing human beings who actively contribute to the Progress of the useful Arts.

Unlike the pornographer-plaintiffs, Liebowitz's efforts have largely been met with success in terms of judgments <u>on the merits</u>.  For example, Liebowitz has obtained judgments of liability for copyright infringement in *Sands v. CBS Interactive, Inc.,* 18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) (summary judgment); *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368 (S.D.N.Y. 2019) (bench trial); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018) (summary judgment); *Chicoineau v. Bonnier Corp.,* No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) (summary judgment); and *Goodman v. Universal Beauty Prod. Inc.,* No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar. 9, 2018) (summary judgment).

Liebowitz has also helped develop key judicial precedent in U.S. copyright law through defeating motions to dismiss on Rule 12(b)(6).  *See, e.g., Myeress v. BuzzFeed Inc*., No. 18-CV-2365 (VSB), 2019 WL 1004184, at *1 (S.D.N.Y. Mar. 1, 2019) (denying motion to dismiss based on Safe Harbor defense under DMCA); *Hirsch v. Complex Media, Inc.,* No. 18 CIV. 5488 (CM), 2018 WL 6985227, at *1 (S.D.N.Y. Dec. 10, 2018) (denying motion to dismiss based on defenses of fair use and *de minimis* copying); *Hirsch v. CBS Broad. Inc.,* No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *1 (S.D.N.Y. Aug. 4, 2017) (denying motion to dismiss infringement claim and DMCA claim under section 1202(b) on grounds of *de minimis* copying and fair use); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659 (S.D.N.Y. 2017) (denying motion to dismiss DMCA claim for removal of copyright management information); *see also Ferdman v. CBS Interactive Inc.,* 342 F. Supp. 3d 515 (S.D.N.Y. 2018) (dismissing fair use defense on summary judgment with respect to seven photographs).

Thus, the public record substantially refutes any notion that Mr. Liebowitz files lawsuits to "extort" settlements.  Indeed, the Defendant will not be able to cite any other law firm in the United States, Am 100 or otherwise, that has had more success on the adjudicated

merits than Liebowitz Law Firm, PLLC in the last three years.

    Finally, Judge Kaplan's view that the sheer number of cases filed somehow justifies the "troll" stereotype cannot be supported at law or by logic.  Magistrate Judge Peck had properly rejected a defendant's characterization of Liebowitz or his client as "copyright troll" because "without specifics regarding the respective merits of these cases, filing volume does not necessarily signal an improper motivation in this case by counsel, let alone by Janik." *Janik v. SMG Media, Inc.*, No. 16CIV7308JGKAJP, 2018 WL 345111, at *14 (S.D.N.Y. Jan. 10, 2018). Exactly.

    Impartial judicial officers are to adjudicate matters based on the individual parties and facts presented on a case-by-case basis. Here, Judge Kaplan's invocation of the "troll" stereotype to defame Mr. Liebowitz, without any justification save for the number of cases filed, failed to consider whether Mr. Liebowitz's clients are "authors" (as that term was understood by the Founding Fathers, *see* Const., Art. I, Sec. 8, Clause 8), and whether the defendant in those cases had actually violated federal law. By relying on broad-sweeping stereotypes and defamatory labels to justify its extraordinarily adverse rulings, the Court has revealed a deep-seated personal bias against Liebowitz that renders a fair and impartial ruling in this case impossible. Accordingly, as explained further below, recusal is warranted.

**B. Judge Kaplan's Antagonism Against Mr. Liebowitz Stemming From A Generalized Disdain For His Entire Practice, Results In Actual Bias Against Sands, Thereby Rendering A Fair Hearing Impossible**

    The problem with using the phrase "copyright troll" to label Mr. Liebowitz is that such stereotype is automatically imputed to every client he represents, who are the actual owners and authors of the copyrighted works.

    Here, by labeling Mr. Liebowitz a "copyright troll" in <u>this</u> proceeding, the Court has not

only reinforced its own personal *animus* against Mr. Liebowitz, but it has also revealed hostility towards Mr. Sands himself as the copyright owner of the photograph in question. If Mr. Liebowitz is a troll according to Judge Kaplan, then it must follow that Sands is also a troll.  Indeed, the narrative conveyed by the Court is that Mr. Sands has no right to be enforcing his copyrights against Bauer because Sands' copyright is of modest economic value. Given the Court's use of this prejudicial label, a reasonable person informed of the facts would perceive a significant risk that the Court will resolve this case on a basis other than the merits – which is exactly what has happened.

**POINT II:     UNDER 455(a), THE DISTRICT SHOULD BE RECUSED FOR THE APPEARANCE OF IMPARTIALITY**

Under § 455(a), "recusal is not limited to cases of actual bias; rather, the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir.2000); *see also ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107–08 (2d Cir.2012) ("The question, as we have put it, is whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" (*quoting United States v. Carlton*, 534 F.3d 97, 100 (2d Cir.2008)).

Here, for all the same reasons set forth in Point I, *supra*, the District Court should recuse because even if use of the word "troll" to label Mr. Liebowitz does not show an actual or personal bias, an informed observer could reasonably question the judge's impartiality solely based on the District Court's unjustified use of this negative stereotype.

17

## <u>CONCLUSION</u>

Based on the foregoing, the District Court should GRANT Plaintiff's motion to recuse

U.S.D.J. Kaplan and the matter should be re-assigned to another Article III judicial officer for a full

and fair adjudication on the merits of Sands' Copyright Act claim.


Dated: October 29, 2019

<div style="margin-left: 50%;">

Respectfully submitted,

**s/richardliebowitz/**

Richard Liebowitz

LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580
(516) 233-1660

*Counsel for Plaintiff Steve Sands*

</div>